UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JAMES VAN DE VELDE,           :
         Plaintiff,          :
                  :
                  :    CIVIL NO. 3:01cv02296 (RNC)
VS.                 :
                  :
MELVIN WEARING, BRIAN SULLIVAN, :
THOMAS TROCCHIO, EDWARD KENDALL, :
ESTATE OF ANTHONY DILULLO, by Lisa :
Bull DiLullo, Legal Representative, :
JOHN DOES, RICHARD LEVIN, :
LINDA LORIMER, RICHARD BRODHEAD, :
THOMAS CONROY, and JAMES PERROTTI, :
         Defendants.          :

## MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

David T. Grudberg, ct01186
JACOBS, GRUDBERG, BELT & DOW, P.C.
350 Orange St.
P.O. Box 606
New Haven, CT 06503
Ph.:(203) 772-3100
Fax:(203) 772-1691
Email: dgrudberg@jacobslaw.com

James I. Meyerson, ct24660
396 Broadway - Suite 601
New York, New York 10013
Ph.:(212) 226-3310
Fax: (212) 219-9412
Email: jimeyerson@yahoo.com

Attorneys for Plaintiff James Van de Velde

# TABLE OF CONTENTS

PAGE:

INTRODUCTION.................................................................................... 1

BACKGROUND AND GENERAL LEGAL STANDARDS..................................... 3

ARGUMENT........................................................................................ 4

I.     Introduction and Overview.................................................................... 4

A.    What Is A 'Suspect'?........................................................................ 6

II.    Plaintiff Has Pleaded A Violation Of
His Right to Equal Protection of the Laws.............................................. 7

A.    General Legal Standards Relating To Equal Protection Claim................. 8

     1.    Improper Motive Need Not Be Alleged......................................... 8

     2.    Defendants' Actions May Be Subject To Higher Scrutiny............... 9

B.    Defendants Violated Plaintiff's Equal Protection Rights By Naming
Him, And Only Him, As A Suspect In The Jovin Murder Investigation....... 11

III.   Plaintiff Has Adequately Pleaded Violations of His Right To
Privacy and Liberty, His Substantive Due Process Rights,
And His Fourth Amendment Rights............................................................ 14

A.    Relevant Legal Principles.......................................................... 15

     1.    Privacy Under The Fourth Amendment........................................ 15

     2.    Other Constitutionally Protected Privacy Interests.......................... 19

     3.    Substantive Due Process/Liberty Interests..................................... 20

B.    The Complaint Establishes Violations Of The Constitutional Rights
At Issue.................................................................................. 22

1.  Plaintiff's Person And Name Were Effectively Seized Without
    Probable Cause, In Violation Of The Fourth Amendment .......................... 22

2.  Plaintiff Has Adequately Pleaded "Stigma Plus"
    Under Paul v. Davis And Its Progeny............................................................ 25

3.  Plaintiff Has Adequately Pleaded A Violation Of
    His Substantive Due Process Privacy Rights.............................................. 28

IV.  THE COMPLAINT ADEQUATELY PLEADS
     A PROCEDURAL DUE PROCESS VIOLATION........................................ 30

V.   THE COMPLAINT ADEQUATELY PLEADS VIOLATIONS OF
     STATE LAW............................................................................................... 31

Conclusion.......................................................................................................... 33

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JAMES VAN DE VELDE,
        Plaintiff,

                                 CIVIL NO. 3:01cv02296 (RNC)

VS.

MELVIN WEARING, BRIAN SULLIVAN,
THOMAS TROCCHIO, EDWARD KENDALL,
ESTATE OF ANTHONY DILULLO, by Lisa      NOVEMBER 19, 2003
Bull DiLullo, Legal Representative,
JOHN DOES, RICHARD LEVIN,
LINDA LORIMER, RICHARD BRODHEAD,
THOMAS CONROY, and JAMES PERROTTI,
        Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

    Plaintiff James Van de Velde respectfully submits this memorandum of law in

opposition to the Motion to Dismiss the amended complaint in this matter filed by

defendants Richard Levin, Linda Lorimer, Richard Brodhead, Thomas Conroy and James

Perrotti (collectively, "the Yale defendants").[1]

## INTRODUCTION

    The Yale defendants seek to have this case dismissed at the pleading stage, before

any discovery has been conducted, on the basis that plaintiff cannot prevail under any

conceivable view of the facts, or under any of the legal theories pleaded in the amended

complaint ("the complaint").  According to them, plaintiff's main complaint is that "the New

Haven Police Department and the Yale Defendants publicly revealed that the police

---

[1]  Defendants Melvin Wearing, Brian Sullivan, Thomas Trocchio, Edward Kendall and the
Estate of Anthony Dilullo ("the New Haven defendants") have already answered the
amended complaint.  They have moved for judgment on the pleadings pursuant to Fed. R.
Civ. P. 12(c), and have also moved to adopt the memorandum of law filed by the Yale
defendants.

1

considered Van de Velde . . . one suspect among many in the murder of one of his students."  Defendants' Memorandum in Support of Motion to Dismiss ("Def. Mem.") at 1. They claim "the law does not prohibit police from identifying a suspect in the course of a criminal investigation, even if that identification is . . . misguided."  Id.

Plaintiff views the issues in the case much differently.  In our view, the question at the core of this case is whether state actors[2] can (1) leak the name of an individual to the media as the "prime suspect" in a notorious murder; (2) single out the same person and formally name him as a suspect in the murder, while preserving the confidentiality of other similarly situated "suspects"; (3) as a result, cause national and international media attention to focus on that individual, as the only named lead suspect irretrievably linked with the still-unsolved murder; (4) cause grievous damage to the individual as a result, including economic loss, career devastation, emotional damage, and alteration of employment status; and (5) do so without regard to any legal standard, such as "probable cause" -- all without running afoul of rights guaranteed under the United States Constitution.

James Van de Velde has pleaded all of the facts noted above in support of his claim that the defendants' treatment of him in connection with the Suzanne Jovin murder investigation violated his constitutional rights.  Nevertheless, the Yale defendants contend that the case must be dismissed now, and that the facts set forth in the complaint could never be give rise to legal liability.  They address a variety of constitutional claims in their motion, each of which is addressed separately below.  The ultimate conclusion, however, is that plaintiff's constitutional rights <u>are</u> implicated by the defendants' conduct, and he has

---

[2]  The Yale defendants do not dispute, for purposes of their motion, that they are state actors, as alleged in the complaint.  Def. Mem. at 8 & n.3.

2

pleaded viable claims under several constitutional theories.  This action thus should be allowed to proceed.

## BACKGROUND AND GENERAL LEGAL STANDARDS

The allegations of the complaint are summarized, at least in part, in defendant's memorandum.  Def. Mem. at 2-7.  Given this summary and the space limitations of this memorandum, we will not recite the complaint paragraph-by-paragraph here.  The core factual claims that lie at the heart of plaintiff's complaint -- and which amply support a conclusion that this case should be allowed to continue -- are set out above, in the introduction.  We will refer to specific allegations of the complaint as appropriate during the course of our argument.

The standards to be applied when considering a motion under Rule 12(b)(6) are well settled, but bear emphasis here.  A court should not dismiss a complaint at the pleadings stage "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 335 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).  This fundamental principle is applied especially strictly in civil rights and constitutional litigation.  See Spencer v. Casavilla, 903 F.2d 17 (2d Cir. 1990); Escalera v. New York Housing Authority, 425 F.2d 853, 857 (2d Cir.), cert. denied, 400 U.S. 853 (1970); Holmes v. New York Housing Authority, 398 F.2d 262, 265 (2d Cir. 1968); Cerbone v. County of Westchester, 508 F. Supp. 780, 783 (S.D.N.Y. 1981).  "The issue is whether plaintiff[], as claimant, [is] entitled to offer evidence to support its claim, not whether [it] ultimately will prevail."  Gavlak v. Town of Somers, 2003 WL 21382469 (D. Conn.)(Goettel, J.).

In deciding a motion to dismiss, all of the allegations in the complaint are accepted as true, Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998), and all

3

reasonable inferences are drawn in the plaintiff's favor.  Grant v. Wallingford Board of Education, 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  The same standard applies to motions for judgment on the pleadings pursuant to Rule 12(c).  Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 125-26 (2d Cir. 2001) (standards for granting Rule 12(c) motion are same as for granting Rule 12(b)(6) motion; court must accept allegations in complaint as true and draw all inferences in non-moving party's favor, and dismiss case only if satisfied that complaint cannot state any set of facts that would entitle plaintiff to relief).

## ARGUMENT

### I.   Introduction and Overview

The first count of the complaint alleges a violation of 42 U.S.C. § 1983.  Plaintiff alleges, in a single count, that defendants' conduct violated numerous constitutional rights secured to him under the United States Constitution.  Complaint, ¶ 169.  Specifically, plaintiff claims that defendants have violated (1) his right to equal protection of the laws, under the Fourteenth Amendment; (2) his right to privacy under the Fourth and Fourteenth Amendments; (3) his rights to procedural and substantive due process, under the Fourteenth Amendment; and (4) his right to be free from unreasonable searches and seizures, under the Fourth and Fourteenth Amendments.[3]  Id.

Defendants have moved under Rule 12(b)(6), challenging the sufficiency of the Section 1983 claim.  Of course, if any one of the constitutional theories is viable and adequately pleaded, defendants' motion must be denied.  Therefore, defendants

---

[3]   To the extent the first count of the complaint alleges independent violations of the Connecticut Constitution, plaintiff does not rely on those allegations in defending against defendants' motion to dismiss.

necessarily attack all the constitutional theories alleged, arguing that the law and the pleaded facts preclude any relief.

The defense arguments are addressed separately below.  In general, they are based on either incorrect or misleading characterizations of plaintiff's claims.  Some overlook relevant circuit precedent squarely supporting the constitutional rights plaintiff alleges were wrongly infringed.  We address each in detail in the argument that follows, but our claims may be summarized briefly:

Equal protection of the laws - Plaintiff is one of a "pool" of at least 10 suspects, by defendants' own admission.  Yet only plaintiff has been publicly labeled a suspect by the defendants; the others have remained anonymous.  Only plaintiff has been thrust into a scathing media spotlight, labeled by defendants' as the "prime" suspect in a notorious murder.  The equal protection clause forbids such differential treatment of similarly situated individuals, no matter what level of legal scrutiny is applied to defendants' classifications.

Substantive due process right to privacy and liberty - Plaintiff has substantive due process rights to both privacy and liberty arising from the Fourth and Fourteenth Amendments.  The right to privacy has evolved over more than a century of constitutional jurisprudence; the protection most applicable here is one of the core components of that right -- the right to be let alone from unreasonable governmental intrusion.  Liberty rights may be vindicated so long as the alleged violation is accompanied by what has come to be described as "stigma plus."  Plaintiff has adequately pleaded the required "stigma plus", as his employment status was altered as a result of uniquely governmental actions.  Likewise, defendants' actions have thrust him into the public light as the suspect in a notorious murder, irreparably damaging his right to be let alone, in a zone free of governmental intrusion.

<u>Fourth Amendment right to be free from unreasonable search and seizure</u> - The Fourth Amendment encompasses not just seizures of people or tangible things, but also seizure of intangibles.  The focus of defendants' argument Fourth Amendment argument -- on various physical seizures of tangible items or evidence (Def. Br. at 30) -- is thus based on a misunderstanding of plaintiff's claim.  Plaintiff alleges that, in targeting him as the lone named suspect, or "prime" suspect, in the Jovin murder investigation, and thereby causing widespread and lasting publicity forever linking him with the commission of that crime and tarring his good name, defendants have effectively and constructively arrested plaintiff, and seized his name and person.  These intangible seizures are cognizable under current Fourth Amendment law.

<u>Right to procedural due process</u> - The implication of the various constitutional rights discussed above, such as the rights to liberty, property, or freedom from unreasonable seizure, triggers procedural rights, most often stated in general terms as notice and a right to be heard.  Courts sometimes disagree whether pre- or post-deprivation process is "due." Here, however, plaintiff has alleged that defendants have acted without giving him <u>any</u> process, and without applying any procedural safeguard, such as the probable cause or reasonable suspicion  standards, before subjecting him to a de facto murder charge.

## A.    <u>What Is A 'Suspect'?</u>

Before addressing the particulars of defendants' arguments, one other issue of broad importance bears discussion:  What does it mean when state actors designate someone as a "suspect" in a high-profile criminal investigation.  This question is most relevant, because a common thread running through defendants' arguments is that Van de Velde <u>was</u> a "suspect;" that any public statement by the Yale defendants merely stated that 'fact', which was true; and consequently that no conceivable liability can flow from such a

public labeling of a private individual, even if he is not and never is charged with a crime, and even if there is no evidence to support such 'suspicion'. The fatal flaw in this beguilingly simple argument, upon which defendants repeatedly fall back, is that the term 'suspect' has no established meaning. Under defendants' view, it is enough if a member of law enforcement forms an opinion -- without regard to <u>any</u> legal standard -- that someone is a 'suspect'; they believe truth then cloaks any public branding of the individual with that label, even if there is no evidence to support it, and even if it has the capacity to wreak enormous damage -- as plaintiff has alleged here. In this situation, however, so-called "truth" is an empty vessel, as without standards merely saying someone is a "suspect" makes it "true". Our position here is that state actors may not single out an individual as plaintiff was targeted here, and brand him the "prime suspect" in a notorious murder, absent evidence that would rise to the level of probable cause.

## II.    Plaintiff Has Pleaded A Violation Of His Right to Equal Protection of the Laws

Plaintiff alleges that the defendants violated his rights under the Equal Protection Clause by singling him out among an otherwise-anonymous "pool" of suspects -- first by leaking his name as the supposed "prime suspect" in the Jovin murder, then by publicly announcing him as a suspect in the same crime -- while keeping secret the identities of other members of the suspect "pool." Defendants seek to dismiss this claim, which they characterize as a 'class of one' equal protection claim, on two primary grounds: (1) Van de Velde has failed to establish that defendants acted with malice, and (2) because any discriminatory treatment was rationally related to a legitimate purpose. Def. Mem. at 23-27. Defendants' arguments rest on a mistaken reading of the applicable law, and a mischaracterization of the complaint. They should be rejected.

**A.    General Legal Standards Relating To Equal Protection Claim**

    **1.    Improper Motive Need Not Be Alleged**

The courts have recognized successful equal protection claims "brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (citing Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923) and Allegheny Pittsburgh Coal Co. v. Commission of Webster County, 488 U.S. 336 (1989).

Defendants contend that, to prevail at this stage on his equal protection claim, plaintiff must allege (1) that he was treated differently as compared to others who were similarly situated, (2) that his selective treatment was intentional, and (3) that the selective treatment was based on some impermissible consideration, or malicious or bad faith intent to injure a person. Def. Mem. at 23, citing Giordano v. City of New York, 274 F.3d 740, 750-51 (2d Cir. 2001). Defendants urge this Court to apply what they characterize as the "traditional Second Circuit standard" and require plaintiff to allege that they have acted with an improper motive.

As defendants acknowledge in their memorandum, however, it is questionable in light of the Supreme Court's Willowbrook decision whether malice is a required element of a viable equal protection claim. Def. Mem. at 24. Under Willowbrook, a plaintiff is required to show intentional disparate treatment and "irrational and wholly arbitrary acts", but not malice. Willowbrook, 528 U.S. at 564, 120 S. Ct. 1073, 1075. Indeed, in Willowbrook the Supreme Court held sufficient a complaint alleging differential treatment that was "'irrational and wholly arbitrary'"; it found these allegations, "quite apart from the Village's subjective motivation," sufficient to state a claim for relief. Id. The Court's opinion suggests that

subjective "ill will" may be an alternative, but certainly not a required, theory under which an equal protection complaint may be sustained.

In urging this Court to follow the "traditional" circuit standard, defendants stress that the Second Circuit has "declined to decide" whether "malice" is required to make a class-of-one claim (id. at 23).   Defendants neglect to mention, however, that in the post-Willowbrook cases, the Second Circuit has permitted plaintiffs to demonstrate arbitrariness as a separate alternative to malice and then found other deficiencies in plaintiff's claim. See  Harlen Assocs. v. Incorporated Village of Mineoala, 273 F.3d 494, 500 (2d Cir. 2001) (plaintiff "would be required to show either that there was no rational basis for the unequal treatment received [citation omitted], or that the denial of the application was motivated by animus.")(emphasis added); Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001)("assuming, without deciding" that Olech removed the malice requirement, plaintiff still failed to demonstrate intentional disparate treatment); see also Payne v. Huntington Union Free School District, 219 F. Supp.2d 273, 277 (E.D.N.Y. 2002)(selective enforcement claim; court interprets Willowbrook and ensuing Second Circuit precedent as requiring equal protection plaintiff to show either no rational basis or bad animus).[4]  As noted above, this alternative approach is entirely consistent with the Willowbrook decision.

Accordingly, plaintiff need not allege an improper motive to make out a viable equal protection claim.

---

[4]    Defendants cite Judge Arterton's decision in Padilla v. Harris, 2002 WL 750856 (D. Conn. Apr. 24, 2002) as a further example of post-Willowbrook authority suggesting that malice is not a required element to be pleaded.  We also call the Court's attention to Barstow v. Shea, 196 F.Supp.2d 141, 148 (D. Conn. 2002)(Arterton, J.) and Tuchman v. Connecticut, 185 F.Supp.2d 169, 173 (D. Conn. 2002) (Hall, J.).

2.    **Defendants' Actions May Be Subject To Higher Scrutiny**

Defendants argue in the alternative that, even if plaintiff need not plead malice, his equal protection claim fails if the discriminatory treatment at issue was rationally related to a legitimate government purpose. Def. Mem. at 26-27. This claim is bottomed on an assumption that plaintiff's claim would be subject only to "rational basis" review. Plaintiff believes that this assumption is not necessarily supportable in the law, and that a higher level of scrutiny may apply. Ultimately, the Court need not decide this issue at this stage, for plaintiff has adequately pleaded an equal protection violation that cannot be justified even under the rational basis standard. If a higher level of scrutiny is applied, however, defendants' actions are impossible to defend.

The claim for a higher level of scrutiny springs from the nature of the rights plaintiff alleges were violated. Government actions that create suspect classifications or which implicate fundamental constitutional rights typically are subject to strict scrutiny. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439-40 (1985); McDonald v. Board of Elections Commission of Chicago, 394 U.S. 802, 807 (1969); Harper v. State Board of Elections, 393 U.S. 663, 668 (1966). As we discuss below, plaintiff alleges that the same actions which give rise to the equal protection claim also violated, inter alia, his personal right of privacy, which is "fundamental" and "implicit in the concept of ordered liberty", Roe v. Wade, 410 U.S. 113, 152 (1973). See also J. P. v. DeSanti, 653 F. 2d 1080, 1090 (6th Cir. 1981); Shirshekan v. Hurst, 669 F. Supp. 238, 240 (C.D. Ill. 1987). If, as alleged, plaintiff's fundamental rights are implicated, defendants' actions may be subject to the more exacting strict scrutiny standard.

Alternatively, this Court might find that defendants' actions, if not subject to strict scrutiny, may nevertheless have to satisfy "intermediate scrutiny" review. The courts have

applied this level of scrutiny where government actions affect important rights, but not fundamental constitutional rights, are implicated.  See Taylor v. I.R.S., 915 F. Supp. 1015, 1023 (N.D. Iowa 1996)(right to financial privacy);  U.S. v. Coleman, 166 F.3rd 428 (2nd Cir. 1999) (noting that "intermediate" scrutiny triggered even where there is an "important, though not constitutional, right"); Pyler v. Doe, 457 U.S. 202 (1982) (court found that, notwithstanding the absence of a pure "fundamental" right, nonetheless, something more than a rational basis analysis should be applied in assessing whether the state's justification for denial of education to the children of undocumented aliens passed constitutional muster).

We do not believe the Court need determine at this stage of the case whether defendants' actions underlying the equal protection claim are subject to heightened scrutiny.  We merely highlight this issue for the Court because defendants make no effort to justify their conduct under any elevated standard of review.  This fact, coupled with the uncertainty about what standard is appropriate, may provide an independent reason for denying the defense motion.  In any event, as we discuss below, the facts alleged make a viable equal protection violation even if the rational basis test is found to apply.

**B.    Defendants Violated Plaintiff's Equal Protection Rights By Naming Him, And Only Him, As A Suspect In The Jovin Murder Investigation**

"The constitutional guarantee of equal protection does not forbid all classifications, but rather 'keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Nicholas v. Tucker, 114 F.3d 17, 19 (2d Cir. 1997) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)), cert. denied, 523 U.S. 1126 (1998).  Under the rational basis standard, in order to justify differential treatment of similarly situated individuals, the state actors must establish a rational justification for the different treatment.

See San Antonio School District v. Rodriguez, 411 U.S. 1, 55 (1973); see also McGinnis v. Royster, 410 U.S. 263, 270 (1973); Dandridge v. Williams, 397 U.S. 471, 485 (1970). Defendants' action "must be reasonable, not arbitrary . . . so that all persons similarly circumstanced shall be treated alike." F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415(1920) (emphasis added); see also Butts v. Nichols, 381 F. Supp 573, 579 (S.D. Iowa 1974) (following Royster).

Here, plaintiff has adequately pleaded intentional differential treatment, which was either irrational and arbitrary or motivated by malice. Plaintiff is one of a group of people "who are in all relevant respects alike," Nicholas, 117 F.3d at 19 -- the "pool of suspects" in the Jovin murder. From the very outset of the murder investigation, defendants worked in concert, "shoulder to shoulder", seeking a quick solution to the crime, in part to protect the image of Yale and New Haven. Complaint, ¶¶ 43-49, 53-54. As part of the investigation, defendants assembled a "pool of suspects"; as of December 1999 at least 10 people remained in this pool. Complaint, ¶¶ 90-92, 122. Defendants' treatment of plaintiff differs dramatically, however, from their treatment of any other persons in the "pool." First, in December 1998, defendants caused plaintiff's to be leaked to local media as the "lead suspect" in the Jovin murder; this leak effectively caused Van de Velde to be identified as the "prime suspect" in the crime. Complaint ¶¶ 61-72, 78. Later, in January 1999, the defendants, acting in concert, officially announced that plaintiff was among a "pool of suspects" in the murder; this statement was issued by the Yale defendants in connection with the cancellation of plaintiff's classes, and confirmed by the New Haven defendants. Complaint, ¶¶ 80-95.

At the same time they were causing Van de Velde to be singled out as the "prime suspect" in a notorious crime -- and causing incredible havoc in his life -- defendants were

12

treating the other members of the suspect "pool" quite differently.  No other member of that pool was identified in January 1999.  No other member of the pool was identified in December 1999.  No other member of the pool has ever been identified.  Complaint, ¶¶ 97, 122.  By contrast, the defendants have specifically announced that others who had contact with Ms. Jovin were not and are not "suspects" in the crime.  Complaint ¶ 98.  Plaintiff alleges that there was and is no rational basis for the defendants to have singled out plaintiff for such differential treatment.  Complaint, ¶ 99.  Defendants' characterize this assertion as "conclusory," Def. Mem. at 26-27, but as the preceding discussion demonstrates it is amply supported by the underlying facts.

Defendants other proffered justifications for its grossly differential treatment ring hollow, and are based on an overly narrow view of the complaint.  For instance, defendants point to the fact that Yale's statement identifying Van de Velde as a murder suspect was made in response to inquiries about the cancellation of his Spring 1999 classes.  Def. Mem. at 27, Complaint, ¶ 91.  One may fairly presume that the Yale defendants could have responded to media inquiries (if they felt compelled to respond at all) without publicly singling out Van de Velde a suspect in a violent murder.

Defendants' further justification is especially ironic and circular; they justify their January 1999 announcement by stressing that plaintiff had already been identified as the "prime suspect" in the case, and that the police had requested information from the public about him.  Def. Mem. at 27; Complaint, ¶¶ 79, 74.  This argument blithely overlooks defendants' active role in causing plaintiff to be identified, and thrust into a brutal public spotlight, in December 1998 as the "prime suspect" in the case.  It is circular reasoning indeed for defendants to rely on earlier wrongful conduct in attempting to justify later such conduct.  Indeed, but for defendants role in causing plaintiff to be publicly identified as the

prime murder suspect in December 1998, there likely would have been no media inquiries about the cancellation of his classes (and perhaps no cancellation either) in January 1999.

Finally, even if the court accepts the defense argument that malice must be pleaded, plaintiff has clearly met that standard as well.  Drawing all inferences in plaintiff's favor, as the Court must on this motion, the complaint alleges that defendants caused Van de Velde's name to be leaked as the "prime suspect" in December 1998; did so with knowledge that there was no evidence that plaintiff was responsible for the murder; did so in order to create an appearance that the crime was close to being solved, and to quell public fear and further their own interest; and further singled out Van de Velde as a suspect in January 1999, as part of the same course of conduct.  Complaint, ¶¶ 43-49, 59-79, 82-85, 89-99.  Further, after January 1999 they continued to label plaintiff as a "suspect" and engage in other activity insinuating plaintiff's guilt, while continuing to preserve the anonymity of other "pool" members.  Complaint, ¶¶ 116-39, 146-56.  This conduct easily satisfies any established standard of irrationality, arbitrariness, or malice.  See, e.g., Esmail v. Macrane, 53 F.3d 176 (7th Cir. 1995) (sustaining validity of equal protection claim where unequal treatment alleged to be result of deliberate plan by municipal official)

### III. Plaintiff Has Adequately Pleaded Violations of His Right To Privacy and Liberty, His Substantive Due Process Rights, And His Fourth Amendment Rights

Plaintiff further alleges that defendants have deprived him of his right to be free from unreasonable searches and seizures, under the Fourth and Fourteenth Amendments, his right to privacy under those amendments, and his substantive due process rights under the Fourteenth Amendment.  Complaint, ¶ 169 (b),(c),(d).  These claims are bottomed on constitutional notions of liberty and privacy arising under the amendments at issue. Because these rights on which plaintiff relies are significantly intertwined, we discuss them

together under the general umbrella of liberty and privacy.  We first address the general law relating to privacy, liberty, and substantive due process.  We then address the defense assertions that plaintiff has failed to plead viable claims for violations of these legal rights.

A.    **Relevant Legal Principles**

   1.    **Privacy Under The Fourth Amendment**

Ever since 1890, when Louis Brandeis, then in private practice, co-authored an article with his law partner, Samuel D. Warren, in the Harvard Law Review entitled "The Right to Privacy", the concept of "privacy" has been a paramount and significant point of consideration in the American jurisprudential discourse.  See S. Warren and L. Brandeis, "The Right to Privacy", 4 Harvard L. Rev. 193 (1890).

Brandeis later elaborated on his views about the concept of privacy in the context of the Fourth Amendment in a criminal case.  See Olmstead v. United States, 277 U.S. 438, 471 (1927) ( Brandeis, J., dissenting).  The "right to privacy" is grounded in "[t]he right to be let alone [which is] the right most valued by civilized men." Id. at 478 (Brandeis, J., dissenting).  Brandeis, however, envisioned a right of privacy not limited to the criminal law arena.  In 1890 he described privacy within and under the concept "of the right to life":

   "That the individual shall have full protection in person and in property is a principle as old as the common law; but it has been found necessary from time to time to define anew the exact nature and extent of such protection. Political, social, and economic changes entail the recognition of new rights, and the common law, in its eternal youth, grows to meet the demands of society.  Thus, in very early times, the law gave a remedy only for physical interference with life and property, for trespasses vi et armis.  Then the 'right to life' served only to protect the subject from battery in its various forms; liberty meant freedom from actual restraint; and the right to property secured to the individual his lands and his cattle.   Later, there came a recognition of man's spiritual nature, of his feelings and his intellect.  Gradually the scope of these legal rights broadened; and now the right to life has come to mean the right to enjoy life, -- the right to be let alone; and the right to liberty secures the exercise of extensive civil privileges; and the term 'property' has grown to comprise every form of possession--intangible, as well as tangible."

15

"The Right to Privacy", supra, 4 Harvard L. Rev. 193.

This right to one's "self" has been expressed throughout our constitutional jurisprudence as a right to be let alone in some basic way. See, e.g., Public Utilities Commission v. Pollak, 343 U.S. 451, 467 (1952)(Douglas, J., dissenting) ("[t]he right to be let alone is indeed the beginning of all freedom"); Time, Inc. v. Hill, 385 U.S. 374, 412 (1967) (the right to privacy is one of the "great and important values in our society . . . which [is] also fundamental and entitled to this Court's careful respect and protection") (Fortas, J., dissenting); Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 491 (1975) (privacy interests are "plainly rooted in the traditions and significant concerns of our society"). See also Ayeni v. Mottola, 35 F. 3rd 680, 685 (2nd Cir. 1994) (discussing the Fourth Amendment right to privacy and the right to be left alone); Wilson v. Schnettler, 365 U.S. 381, 394 (1961) (discussing the right to remain anonymous within the context of the larger body politic of which he or she is simply one private citizen) (Douglas, J., dissenting). In 1967, the Supreme Court in essence came full circle from its privacy analysis in Olmstead.  In Katz v. United States, 389 U.S. 347 (1967), the court rejected the majority analysis in Olmstead and adopted the broader privacy principles articulated in Justice Brandeis's Olmstead dissent as the proper touchstone for Fourth Amendment analysis. Since Katz, the primary focus of Fourth Amendment jurisprudence has been on the fundamental right of privacy, and what privacy rights society recognizes and protects, rather than on strict property rights.

A series of recent Second Circuit cases makes clear that the privacy rights protected under the Fourth Amendment may be broad indeed, and include the seizure of "intangibles" as well as of persons or physical property.  For instance, in Ayeni v. Mottola, 35 F. 3rd 680, 686 (2nd Cir. 1994), the court considered the potential constitutional liability of a

government agent who had invited a camera crew to follow him and fellow agents inside a home while they executed a valid warrant. The Court held that "the Fourth Amendment's prohibition on unreasonable searches forbade [Secret Service agent] Mottola's action in bringing the CBS camera crew into Ayeni's home." Id. Even as persons subject to a lawful search of their home, those individuals maintained some privacy rights under the Fourth Amendment. See also Wilson v. Layne, 526 U.S. 603, 621-13 (1999)(bringing reporters into home during valid search violated Fourth Amendment).

The Ayeni decision involved entry into a private home – conduct typically at the core of the Fourth Amendment. In Lauro v. City of New York, 39 F.Supp.2d 351 (S.D.N.Y. 1999), the district court was called upon to consider the Fourth Amendment implications of what is commonly known in law enforcement circle as a "perp walk" (parading arrested and alleged "perpetrators" in front of the media cameras so as to record their photos). This case thus presented unique Fourth Amendment issues beyond those normally raised relating to the home, frisking, or wiretapping. The court concluded that the "perp walk" violated the arrested criminal suspect's right to privacy under the Fourth Amendment. The court found that "[t]he perp walk that plaintiff was required to perform was even more humiliating and damaging to his personal dignity than the stop and frisk discussed in Terry v. Ohio [392 U.S. 1 (1968)]." Lauro, 39 F.Supp.2d at 363 (S.D.N.Y. 1999), aff'd, 219 F.3rd 202 (2nd Cir. 2000).

On appeal, the Second Circuit affirmed the trial court's ruling. It rejected the argument that the conduct at issue did not even implicate the Fourth Amendment. Noting the oft-cited principle from Katz that "the Fourth Amendment protects people, not places," and reviewing its prior decision in Ayeni, the court of appeals found that the privacy interests implicated in that case went beyond the home, and included the obtaining of

17

broadcast images in a humiliating setting. Lauro, 219 F.3d at 211. The court found that even persons in lawful police custody continue to enjoy some Fourth Amendment, and concluded that the amendment "shields arrestees from police conduct that unreasonably aggravates the intrusion on privacy properly occasioned by the initial seizure." Id. at 212. Distinguishing the line of authority permitting the government to obtain photographs or voice exemplars from an individual without meeting Fourth Amendment standards, the court neatly captured the essence of the plaintiff's complaint: "that he was displayed to the world, against his will, in handcuffs, and in a posture connoting guilt." Id. at 212 n.7.

The Second Circuit revisited this issue most recently in Caldarola v. County of Westchester, 343 F.3d 570 (2d Cir. 2003). The Caldarola case, like Lauro, involved the constitutionality of coordinated arrests, in which suspects' arrests were videotaped, and the tapes later disseminated to the media for broadcast. These facts were held insufficient to support liability; the court distinguished Lauro on the basis that it involved a staged "perp walk", held solely for the media. The court did, however, find that a Fourth Amendment seizure had occurred when a videotape was made of the plaintiff's image. The court stressed that "[t]he Fourth Amendment seizure has long encompassed the seizure of intangibles as well as tangibles." Caldarola, 343 F.3d at 574 (emphasis added). The court reasoned that, under the circumstances of the case, the plaintiff's reasonable expectation of privacy was minimal. Id. at 575.

The conclusion that may fairly be drawn from these authorities is that the Fourth Amendment is an elastic principle. Notions of privacy have evolved over the years as technology has advanced. Seizures of "intangibles," which might have been impossible a century ago, now implicate the constitution. An individual has a protected "privacy interest in not being 'displayed to the world, against his will, in handcuffs, and in a posture

connoting guilt.'" <u>Caldarola</u>, 343 F.3d at 575 (quoting <u>Lauro</u>, 219 F.3d at 211, 212 n.7).  As we discuss below, we believe plaintiff James Van de Velde had a protected privacy interest in not having his name and image announced to the world as the "prime suspect" in a notorious murder, in the absence of any evidence of guilt, but in a manner that strongly suggested guilt.  The Fourth Amendment was implicated by the seizure of an intangible -- plaintiff's good name -- under circumstances that amounted to a constructive arrest.

2.    **<u>Other Constitutionally Protected Privacy Interests</u>**

The Fourteenth Amendment affords privacy protections beyond those arising from the Fourth Amendment's proscription of unreasonable searches and seizures.  These rights guarantee an individual a zone of autonomy free from governmental intrusion, and protect the confidentiality of certain information relating to the individual.

The autonomy element of the right to privacy is generally defined in reference to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'"  <u>See</u> <u>J.P. v. DeSanti</u>, 653 F.2d 1080, 1090 (6th Cir. 1981)(quoting <u>Roe v. Wade</u>, 410 U.S. 113, 152 (1973)).  The Supreme Court has described this privacy interest as "independence in making certain kinds of important decisions." <u>Whalen v. Roe</u>, 429 U.S. 589, 599 (1977).  <u>See also</u> <u>Barry v. City of New York</u>, 712 F.2d 1554, 1558 -59 (2d Cir.), <u>cert</u>. <u>denied</u>, 464 U.S. 1017 (1983).

The so-called "confidentiality" branch of the right to privacy ensures that "privacy of personal matters is a protected interest." <u>Barry</u>, 712 F.2d at 1559.  <u>See also</u> <u>Whalen v. Roe</u>, 429 U.S. at 599 (constitutional right to privacy includes "the individual interest in avoiding disclosure of personal matters"); <u>Nixon v. Administrator of General Services</u>, 433 U.S. 425, 458 (1977); <u>Shirshekan v. Hurst</u>, 669 F. Supp. 238, 240 (C.D. Illinois 1987) (interpreting <u>Whalen</u> and <u>Nixon</u> as recognizing "a privacy interest which does relate to

19

government disclosure of personal matters, presumably founded in the Fourteenth Amendment protection of personal liberty . . . ").  The right has been held to protect medical privacy, Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994), as well as financial information, Barry, 712 F.2d at 1559-62.  See also Powell v. Schriver, 175 F.3d 107 (2d Cir. 1999)(privacy of sexual information).

When this aspect of the right to privacy is implicated, courts have applied so-called "intermediate scrutiny" in determining whether the governmental intrusion at issue is permissible.  Barry, 712 F.2d at 1559 (applying intermediate scrutiny in reviewing constitutionality of potential infringements of right to financial privacy).  See also Taylor v. I.R.S., 915 F. Supp. 1015, 1023 (N.D. Iowa 1996) (following Barry; applying intermediate level review); Eisenbud v. Suffolk County,  841 F.2d 42, 45-46 (2nd Cir. 1988).

As we discuss below, we believe the intrusion on plaintiff's confidentiality, or zone of autonomy, resulting from defendants' branding of him as the Jovin murder "prime suspect" is at least as worthy of constitutional protection as, for instance, his financial records.

### 3.    Substantive Due Process/Liberty Interests

The Due Process Clause of the Fourteenth Amendment also affords plaintiff a constitutionally-protected liberty interest.  This interest is implicated by governmental action that affects, or imposes a stigma upon, an individual's name and reputation.  Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S. Ct. 507, 27 L. Ed. 2d 515, 519 (1971) (noting that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential "); Birnbaum v. Trussel, 371 F. 2d 672, 679 (2d Cir. 1966) (removal from position under charges of racial bias "brands" person in a way which injured career as a physician in both private and public practice).

This Court addressed the question of protected liberty interests in <u>Doe v. Lee</u>, 132 F.Supp.2d 57 (D. Conn.), <u>aff'd</u>, 271 F.3d 38 (2d Cir. 2001), <u>rev'd on other grounds sub nom Department of Public Safety v. Doe</u>, 123 S. Ct. 1160 (2003). In <u>Doe</u>, the Court stated that "[d]amage to reputation, without more, is insufficient to establish a liberty interest protected by the Due Process Clause. The stigmatizing conduct must be accompanied by some tangible injury or material alteration of legal right or status." <u>Id</u>. at 64. The Court relied on the Supreme Court's decision in <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976).[5]

Since the Supreme Court's decision in <u>Paul v. Davis</u>, the courts have grappled with the question of what additional, or "plus," factors will suffice to create an actionable liberty interest. <u>E.g.</u>, <u>Valmonte v. Bane</u>, 18 F.3d 992 (2d Cir. 1994); <u>Doe v. Department of Public Safety</u>, 271 F.3d at 50-51. In the circuit's decision in <u>Doe</u>, the court reviewed at length the history and evolution of the "stigma plus" standard. 271 F.3d at 47-56. After discussing numerous precedents, including its own decision in <u>McClary v. O'Hare</u>, 786 F.2d 83 (2d Cir. 1986), the court concluded:

> <u>McClary</u> thus held that a plaintiff pleads a deprivation of an interest protected by substantive due process only when he or she demonstrates some state action that distinguishes the allegation from an ordinary tort claim. On similar reasoning, we hold that a plaintiff establishes a 'plus' factor for purposes of the <u>Paul v. Davis</u> 'stigma plus' test only if he or she points to an indicium of material government involvement unique to the government's public role that distinguishes his or her claim from a traditional state-law defamation suit.

<u>Doe</u>, 271 F.2d at 56.

---

[5]   In <u>Doe</u>, the Court was presented with a procedural, rather than substantive, due process claim. There is significant overlap between the two claims, since both require a plaintiff to establish the existence of a protected constitutional right or interest. The significant distinction is that substantive violations "do not depend upon the adequacy of any pre- or post-deprivation remedies," and substantive due process violations "are 'complete as soon as the prohibited action is taken.'" <u>Doe</u>, 271 F.3d at 55 (quoting <u>McClary v. O'Hare</u>, 786 F.2d 83 (2d Cir. 1986)).

Although the Supreme Court ultimately reversed in <u>Doe</u>, its ruling does not affect this aspect of the court of appeals' decision. The Supreme Court stressed that it was addressing only a claim of procedural, not substantive, due process. <u>Doe</u>, 123 S. Ct. at 1164-65. It concluded that the procedural remedy sought by the litigants was an unnecessary exercise in light of Connecticut's Megan's law statute, and stressed that any challenge "'must ultimately be analyzed' in terms of substantive, not procedural, due process." <u>Id</u>. at 1165 (quoting <u>Michael H. v. Gerald D.</u>, 491 U.S. 110, 120 (1989)(Stevens, J. concurring)). Because no such claim was before the Court, it did not reach the substantive due process issue. <u>Id</u>.

Under the circuit's decision in <u>Doe</u>, it seems that a plaintiff must adequately allege three elements: "stigma", "plus", and some "government involvement unique to the government's public role." As we discuss below, the complaint clearly establishes all of these requisite elements.

**B.    <u>The Complaint Establishes Violations Of The Constitutional Rights At Issue</u>**

**1.    <u>Plaintiff's Person And Name Were Effectively Seized Without Probable Cause, In Violation Of The Fourth Amendment</u>**

Defendants seek dismissal of plaintiff's claim under the Fourth Amendment on two grounds: (1) that plaintiff does not allege any unreasonable searches, and (2) that plaintiff does not allege a seizure under the Fourth Amendment. Def. Mem. at 30-33. Their arguments focus only on searches of plaintiff's vehicle, Complaint, ¶ 64; the collection of a DNA sample from Van de Velde, Complaint, ¶ 142; and a search near plaintiff's home by a group of metal detector enthusiasts, Complaint, ¶¶ 149-51. Their arguments are without merit, as they rest on a fundamental misunderstanding of plaintiff's claim and the rights implicated under the Fourth Amendment.

Here, plaintiff has alleged a course of conduct by defendants that has devastated his life, altered his employment status and career, irreparably smeared his good reputation, and cemented him in the public eye as the suspect in a notorious unsolved murder.  E.g., Complaint, ¶ 106, 157-66.  Though he has not been charged or arrested, the result of defendants' conduct has been a de facto murder charge against plaintiff.  He has been constructively arrested, and his good name seized.  The effect of defendants' conduct is illustrated by public comments of students after plaintiff was identified as a suspect: one spoke of a general sense that Van de Velde was guilty, even without proof; another noted the suspicion that would follow him wherever he goes; others expressed unwillingness to register for a class with a professor who had been named a murder suspect, as it was not worth the risk.  Complaint, ¶¶ 165-66.  In short, plaintiff has been restrained in his ability to live fully and freely.

Under Ayeni, Lauro, and Caldarola, it is clear that a physical seizure need not take place for the Fourth Amendment to be implicated.  The court in Caldarola recognized an individual's "privacy interest in not being 'displayed to the world, against his will, in handcuffs, and in a posture connoting guilt.'"  Caldarola, 343 F.3d at 575 (quoting Lauro, 219 F.3d at 211, 212 n.7).  Here, Van de Velde has not been placed in handcuffs, but he has most assuredly been "displayed to the world . . . in a posture connoting guilt."  Further, he has been displayed in this fashion in order to further defendants' collective interest in making it appear they had solved the Jovin murder -- even in the absence of any evidence implicating plaintiff.

23

The impact on plaintiff has been exacerbated, of course, by modern technology[6] --
the broad reach of the media, and the ease with which damaging information may now
rocket around the globe on the internet.  The capacity for such lightning-quick destruction of
an individual's identity must be weighed in determining what expectations of privacy society
is prepared to recognize as reasonable -- just as the ability to wiretap a telephone so as to
eavesdrop on private conversations affected the Supreme Court's Fourth Amendment
analysis in Katz.  In Lauro, the court found that a lawfully charged and arrested criminal
"suspect" nevertheless had a constitutionally protected privacy interest in not having his
likeness seized on tape and broadcast to the world.  Surely plaintiff, who has been branded
a "suspect" in the absence of probable cause or even reasonable suspicion, enjoys a
similar privacy right shielding him from being publicly tarred as a "prime suspect" in the
Jovin murder.  At minimum, there is sufficient question on this score that the case should
not be dismissed at the pleading stage.[7]

Plaintiff has alleged that the defendants lacked probable cause, or even reasonable
suspicion, to believe that he was responsible for the Jovin murder.  Complaint, ¶ 77.  Thus,
if plaintiff has adequately pleaded a constitutionally-recognized search or seizure, it cannot
pass muster under the Fourth Amendment.  There is no question that an arrest without
probable cause violates the Fourth Amendment.  E.g., Decker v. Campus, 981 F. Supp.

---

[6]    In his prescient and influential law review article on privacy, Brandeis wrote: "Lord
Cottenham stated that a man 'is entitled to be protected in the exclusive use and enjoyment
of that which is exclusively his.'"  "The Right To Privacy", supra, 4 Harv. L. Rev. at 205.  It is
difficult to imagine anything more exclusively belonging to an individual than his name.
Though this discussion of privacy rights is more than a century old, its analysis is fresh and
insightful.

[7]    Even Caldarola, in which the circuit ultimately found that the arrestee's privacy rights
were outweighed by the state's legitimate interest in filming and broadcasting his arrest,
was decided at the summary judgment stage, rather than on a Rule 12(b)(6) motion.
Caldarola, 343 F.3d at 571.

851, 857 (S.D.N.Y. 1997).  Further, where an individual is arrested without a warrant, the burden falls on law enforcement to establish that their actions were supported by probable cause.  Flores v. City of Mount Vernon, 41 F.Supp.2d 439, 442-43 (S.D.N.Y. 1999).

**2.    Plaintiff Has Adequately Pleaded "Stigma Plus"
          Under Paul v. Davis And Its Progeny**

Defendants also dispute that plaintiff has pleaded a legally sufficient substantive due process/liberty claim.  Def. Mem. at 11-22.  Defendants' discussion focuses more on procedural than substantive due process, but the gravamen of their argument is that plaintiff has not identified any substantive constitutional right that was infringed by defendants' conduct.  Defendants argue (1) that they made no false statements about plaintiff, (2) that plaintiff's claim must be rejected for public policy reasons, (3) that Van de Velde suffered no alteration of his rights or status, and (4) that the Due Process Clause does not reach any of plaintiff's substantive liberty interests.  Def. Mem. at 11-22.  These arguments are likewise without merit.

Under Doe, plaintiff must allege stigma, "plus", and some government involvement unique to the government's public role.  As to the stigma factor, even the defendants cannot dispute the reputational damage suffered by plaintiff as a result of his identification as the "prime suspect" in the Jovin murder.

Regarding the "plus" factor requirement, plaintiff has alleged that as a result of the defendants' conduct his employment at Yale was altered for a period of time, then terminated.  Complaint, ¶¶ 89, 163.  His job status with a governmental entity, the United States Naval Reserves, was altered as well.  Complaint, ¶ 163.  These changes satisfy the requirement of a "material alteration of legal right or status."  Doe, 132 F.Supp.2d at 64.

Plaintiff also meets the third factor -- government involvement unique to the government's public role.  The investigation of a crime such as murder is uniquely a governmental function.  Here, of course, the New Haven defendants were working "shoulder to shoulder" with one or more of the Yale defendants as part of a joint task force attempting to solve the Jovin homicide.  What plaintiff alleges here is no mere defamatory comment, actionable in federal court simply because of the fortuity of having been uttered by a state actor.  This is the prospective concern underlying the Paul v. Davis decision -- that routine state-law tort defamation cases would be federalized.  See, Doe, 271 F.3d at 53-54; see also Siegert v. Gilley, 500 U.S. 226, 234 (1991) (distinguishing state law and constitutional actions).  Instead, plaintiff claims that as the result of a concerted effort, the awesome machinery of the state has been brought down upon him -- by the leaking of his name as the "prime suspect", by the subsequent public statement to that effect, by the inexplicable differential treatment to which he has been subjected, and by ongoing conduct reinforcing the perception of him as the person responsible for, though not charged in, the murder.

Defendants' argument is based principally on their contention that whatever was said was true -- that plaintiff was in fact a "suspect" in the Jovin murder investigation.  Because this "fact" was true, they argue, they cannot possibly be liable for anything that was done to plaintiff.  This argument, like defendants' equal protection arguments, is based on a narrow and highly sanitized view of their alleged conduct.  Defendants focus only on the January 1999 public statement, and ignore their role in causing Van de Velde's identity to be leaked as the "prime suspect" in December 1998.  Defendants also overlook their concerted effort with the New Haven defendants in offering up plaintiff as the suspect, which furthered their mutual interest in showing progress, suggesting the crime was effectively solved, and

26

undercutting the potential for negative publicity flowing from a crime of random violence.
Taken together, the message conveyed regarding the plaintiff -- and which gives rise to this
lawsuit -- is that plaintiff was most likely guilty of the murder, or that there was substantial
evidence of his guilt.[8]  That statement was not true, as we have alleged.  If defendants'
actions had been as benign as they suggest, there would have been little or no damage to
plaintiff, and likely no lawsuit.

As to the issue of "truth," as noted in our introduction, this is a meaningless concept
where the legality of the "suspect" label is at issue.  The term "suspect", though used
frequently, is not a term of art in the law; there is no legal standard that must be met before
one can be considered a "suspect."  Under defendants' view of the facts, a subjective belief
on the part of law enforcement -- no matter how baseless or ill-intentioned -- absolves
anyone of responsibility for publicly branding someone a suspect.  Where the label has the
capacity to wreak enormous damage, as this case painfully illustrates, a merely subjective
belief cannot justify the public branding.  State actors must be held to a higher standard
when they go beyond any private belief they may harbor, and act publicly in a way that has
the capacity to destroy lives.  We believe the appropriate standard for public disclosure

---

[8]  Defendants point with pride to the fact that their public statement in January 1999
included a qualifier that Yale presumed Van de Velde to be innocent.  Def. Mem. at 14;
Complaint, ¶ 91.  This language offers cold comfort, for at that point defendants had
already set in motion the second media frenzy within a month, swirling around plaintiff and
the fact that he was possibly responsible for the brutal murder of a student.  The machinery
was already in motion, and the damage had been done.
The Yale defendants also note their hiring of a private investigator, and increasing of the
reward money, as acts supposedly at odds with the theory that they identified Van de Velde
as the killer of Suzanne Jovin.  Def. Mem. at 14.  This argument is puzzling, as the cited
actions could equally be viewed as attempts to gather sufficient evidence to arrest the
plaintiff, whom they had already effectively named as the "prime suspect."  At minimum,
they cannot be deemed communications that proclaimed plaintiff's innocence.

under these circumstances is "probable cause."  The Court need not decide that issue now, however; our point is merely to demonstrate the emptiness of defendants' "truth" defense.

Defendants' public policy contentions are similarly misguided.  Def. Mem. at 15-16. Defendants cite the interest in apprising the public about the progress of a criminal investigation.  This interest, even if accepted, does not compel law enforcement to single out individuals and brand them in the manner plaintiff here was targeted.  It is likewise possible to advise the public on the progress of an investigation without targeting specific individuals.[9]  Further examples defendants cite, such as the need for "10 Most Wanted" lists and broadcasts designed to help apprehend fugitives, have no application here.  Def. Mem. at 15.  See, e.g., Rosenberg v. Martin, 478 F.2d 520, 524 (2d Cir. 1973)(not an invasion of privacy rights to publish name where individual was a fugitive wanted for arrest in on murder charges).  In such cases, where someone is a fugitive from justice, there has already been a demonstration of probable cause, and either the issuance of a valid warrant authorizing the deprivation of the individual's liberty, or evidence that would support an arrest.  Where an individual has been shown to have been involved in a crime, he or she logically would have lesser rights with regard to public statements about the crime.

In sum, plaintiff has pleaded all necessary elements of a liberty claim under Paul v. Davis.

**3.    Plaintiff Has Adequately Pleaded A Violation Of
       His Substantive Due Process Privacy Rights**

Defendants argue further that plaintiff has not alleged a viable claim for violation of his privacy rights under the Fourteenth Amendment.  Specifically, they argue that plaintiff

---

[9]    Indeed, if defendants were truly motivated to inform the public about the detailed progress of their investigation, they would open their investigative files to the public.  They have not done so, of course; this would, in plaintiff's view, bolster his allegations regarding the lack of any evidence against him.

has not demonstrated a violation of either his "autonomy" or "confidentiality" rights.  Def. Mem. at 27-30.

As a threshold matter, the Court need not reach this argument if it concludes plaintiff has adequately pleaded a Fourth Amendment violation.  In Lauro, the court of appeals noted that "where a claim can be characterized as a violation of the Fourth Amendment, it should be analyzed as such, and not as a substantive due process claim."  Lauro, 219 F.3d at 209.  For the reasons stated in Section B(1) above, we therefore believe the Court need not address this issue,

Even if the privacy issue is reached, however, plaintiff submits that he has sufficiently alleged a Fourteenth Amendment privacy deprivation.  The claim is perhaps clearest under the so-called "confidentiality" branch of privacy jurisprudence.  As noted above, this body of law affords constitutional protection to the "privacy of personal matters." Barry v. City of New York, 712 F.2d at 1559.  It is difficult to understand how, for instance, government intrusion on someone's bank or financial records would trigger constitutional privacy scrutiny, id. at 1559-62, but government branding of an innocent person as a suspect in a high-profile murder investigation would not.  The principle underlying the "confidentiality" line of cases seems to be a concern that aspects of an individual's (finances, health, sexual issues) not be intruded upon by the government absent substantial justification.  Here, as a result of defendants' conduct, all aspects of plaintiff's life were put under a microscope, and he was placed in a destructive media spotlight.  The interest in preserving one's privacy, and avoiding such public scrutiny, is inherent in the constitutional notion of a right to privacy.

Likewise, plaintiff's allegations are sufficient even if viewed under the so-called autonomy branch.  Defendants cite to a variety of cases involving procreation and family

issues. Def. Mem. at 28. At the root of the substantive due process right to privacy, however, is the right to be let alone -- the right to be free from unreasonable governmental intrusions into one's life. See, e.g., Ayeni, 35 F.3d at 685. Based on the facts alleged here, plaintiff has established an unreasonable governmental intrusion into his life.

## IV.    THE COMPLAINT ADEQUATELY PLEADS A PROCEDURAL DUE PROCESS VIOLATION

Defendants, as noted, also attack plaintiff's procedural due process claim. Their attack focuses principally, if not exclusively, on the existence of the rights plaintiff claims were deprived, rather than on the adequacy of any procedure followed in connection with the deprivation of those rights. Def. Mem. at 11-19.

We have discussed at length above the reasons why, in our view, the complaint adequately pleads violations of numerous constitutional rights. If the court accepts these arguments, it need not wrestle with the procedural due process issue, or the question of what process was "due" in connection with the alleged deprivation. Cf. Doe, 132 F.Supp.2d at 66-67 (considering "what process is due" to individuals on Connecticut's sex offender registry). Quite simply, Van de Velde was afforded absolutely no process. He was not given notice and an opportunity to be heard before the defendants proclaimed him a suspect, or leaked his name as the "prime suspect" in the case. The information supporting -- or, as we have alleged, not supporting -- the labeling of plaintiff was not scrutinized under a probable cause or reasonable suspicion standard. Individuals charged with crimes are afforded a panoply of procedures in which they may try to vindicate their rights. Here, plaintiff has been given none. Defendants have repeatedly labeled plaintiff a suspect in a notorious murder, without giving him a forum in which to challenge the state's action.

## V.    THE COMPLAINT ADEQUATELY PLEADS VIOLATIONS OF STATE LAW

Defendants final attack is upon plaintiff's state law claims -- for Invasion of Privacy by False Light, and Intentional Infliction of Emotional Distress.  Def. Mem. at 35-40.  The claims proffered by defendants in support of their attack have already been addressed earlier in this memorandum.

Thus, defendants claim that they made no false statements about plaintiff, and thus cannot be liable for invasion of privacy by false light.  As we have discussed in Section III(B)(2) above, plaintiff has in fact pleaded false statements by the defendants -- that he was guilty of the Jovin murder.  Defendants conduct in December 1998, January 1999, and later has cemented a perception in the public eye that plaintiff is responsible for the Jovin murder.  Defendants' actions may not be viewed as narrowly as their argument would suggest.

Likewise, defendants' claim that they have not been alleged to have acted with malice is similarly without merit.  As we discussed in the context of the equal protection claim, the complaint, read as a whole and drawing all inferences in plaintiff's favor, alleges that defendants caused Van de Velde's name to be leaked as the "prime suspect" in December 1998; did so with knowledge that there was no evidence that plaintiff was responsible for the murder; did so in order to create an appearance that the crime was close to being solved, and to quell public fear and further their own interest; and further singled out Van de Velde as a suspect in January 1999, as part of the same course of conduct.  Complaint, ¶¶ 43-49, 59-79, 82-85, 89-99.  Further, after January 1999 they continued to label plaintiff as a "suspect" and engage in other activity insinuating plaintiff's guilt, while continuing to preserve the anonymity of other "pool" members.  Complaint, ¶¶ 116-39, 146-56.  This conduct easily supports a finding of malice.

31

The same allegations would also support a finding of "extreme and outrageous conduct," as is required under the claim for intentional infliction of emotional distress. Def. Mem. at 38-40. In urging dismissal of this count, defendants rely heavily on <u>Adams v. Adkins</u>, 1998 WL 111632 (N.D. Ill. 1998), an unpublished decision from the Northern District of Illinois considering the sufficiency of a twice-dismissed, "ponderous and unwieldy" pro se complaint. <u>Id</u>. at *3. The case is not binding, and is clearly distinguishable; for instance, the defendants had affirmatively announced that the plaintiff was not a suspect in the crime at issue. The other case cited by the defense, <u>Clark v. Township of Falls</u>, 890 F.2d 611 (3d Cir. 1989), concerned post-trial motions, and certainly cannot support defendants' effort to have this Court determine at the pleadings whether the conduct at issue is "extreme and outrageous." In short, the motion to dismiss this count should also be denied.

## **Conclusion**

For the reasons stated, the Yale defendants' motion to dismiss should be denied in all respects.  For the same reasons, the motion for judgment on the pleadings filed by the New Haven defendants should also be denied.

Dated: New Haven, Connecticut
       November 19, 2003

THE PLAINTIFF
JAMES VAN DE VELDE

By _____

David T. Grudberg, ct01180
JACOBS, GRUDBERG, BELT & DOW, P.C.
350 Orange St.
P.O. Box 606
New Haven, CT  06503
Ph.:(203) 772-3100
Fax:(203) 772-1691
Email: dgrudberg@jacobslaw.com

James I. Meyerson, ct24660
396 Broadway - Suite 601
New York, New York 10013
Ph.:(212) 226-3310
Fax: (212) 219-9412
Email: jimeyerson@yahoo.com

His Attorneys

<u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was mailed first class, postage prepaid on November 19, 2003 to:

Martin S. Echter, Esq.
Deputy Corporation Counsel
165 Church St. - 4th Fl.
New Haven, CT 06510

Stephen P. Fogerty, Esq.
Robert A. Rhodes, Esq.
Halloran & Sage LLP
315 Post Road West
Westport, CT 06880

William J. Doyle, Esq.
Kenneth D. Heath, Esq.
Wiggin & Dana
One Century Tower
New Haven, CT  06510

David T. Grudberg