UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES VAN DE VELDE,<br>        Plaintiff,<br><br>v.<br><br>MELVIN WEARING, BRIAN SULLIVAN,<br>THOMAS TROCCHIO, EDWARD KENDALL,<br>ESTATE OF ANTHONY DILULLO, by Lisa<br>Bull DiLullo, Legal Representative, JOHN DOES,<br>RICHARD LEVIN, LINDA LORIMER,<br>RICHARD BRODHEAD, THOMAS CONROY,<br>and JAMES PERROTTI,<br>        Defendants. | Civil No. 3:01cv02296 (RNC) |

**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

                              William J. Doyle (ct04190)
                              Aaron S. Bayer (ct12725)
                              Kenneth D. Heath (ct23659)
                              WIGGIN & DANA LLP
                              One Century Tower
                              P.O. Box 1832
                              New Haven, CT 06508-1832
                              Tel: (203) 498-4400
                              Fax: (203) 782-2889
                              E-mail: wdoyle@wiggin.com

                              *Attorneys for Defendants Richard Levin,*
                              *Linda Lorimer, Richard Brodhead, Thomas*
                              *Conroy, and James Perrotti*

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................. ii

I.     INTRODUCTION ........................................................................................................1
II.    VAN DE VELDE FAILS TO STATE AN EQUAL PROTECTION CLAIM ....................2
III.   VAN DE VELDE FAILS TO STATE A FOURTH AMENDMENT CLAIM...................5
IV.    VAN DE VELDE FAILS TO STATE A PRIVACY CLAIM ...........................................6
V.     VAN DE VELDE FAILS TO STATE A DUE PROCESS CLAIM .................................7
VI.    VAN DE VELDE STATES NO CLAIMS UNDER CONNECTICUT LAW...................9
VII.   CONCLUSION............................................................................................................10

# **TABLE OF AUTHORITIES**

## **CASES**

*Adams v. Adkins*, 1998 WL 111632 (N.D. Ill. Mar. 6, 1998) ................................................. 10

*Ayeni v. Mottola*, 35 F.3d 680 (2d Cir. 1994) ................................................................... 5, 6

*Baker v. Carr*, 369 U.S. 186 (1962) ...................................................................................... 4

*Barry v. City of New York*, 712 F.2d 1554 (2d Cir. 1983) .................................................... 6

*Barstow v. Shea*, 196 F. Supp. 2d 141 (D. Conn. 2002) ...................................................... 5

*Bryan v. City of Madison*, 213 F.3d 267 (5th Cir. 2000) ...................................................... 4

*Caldarola v. County of Westchester*, 343 F.3d 570 (2d Cir. 2003) ................................... 5, 6

*Clark v. Township of Falls*, 890 F.2d 611 (3d Cir. 1989) ................................................... 10

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ......................................................... 6

*Doe v. Department of Public Safety*, 271 F.3d 38 (2d Cir. 2001) ..................................... 8, 9

*Ehrlich v. Town of Glastonbury*, 348 F.3d 48 (2d Cir. 2003) .............................................. 2

*Fields v. Durham*, 909 F.2d 94 (4th Cir. 1990) ................................................................... 8

*Giordano v. City of New York*, 274 F.3d 740 (2d Cir. 2001) ....................................... 3, 4, 5

*Estate of Gomez v. Larson*, 1999 WL 417819 (Conn. Super. Ct. June 8, 1999) .............. 7, 8

*Gonzalez v. Leonard*, 497 F. Supp. 1058 (D. Conn. 1980) .................................................. 7

*Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494 (2d Cir. 2001) ........................... 4, 5

*Hernandez v. Keane*, 341 F.3d 137 (2d Cir. 2003) .............................................................. 1

*Hilton v. City of Wheeling*, 209 F.3d 1005 (7th Cir. 2000) .................................................. 4

*Kadrmas v. Dickinson Public Schools*, 487 U.S. 450 (1988) .............................................. 4

*Lauro v. Charles*, 219 F.3d 202 (2d Cir. 2000) ................................................................ 5, 6

*Padilla v. Harris*, 2002 WL 750856 (D. Conn. Apr. 24, 2002) ............................................ 5

*Paul v. Davis*, 424 U.S. 693 (1976) ..................................................................... 5, 6, 7

*Payne v. Huntington Union Free School District*, 219 F. Supp. 2d 273 (E.D.N.Y. 2002) ............................................................................................................. 4, 5

*Plyler v. Doe*, 457 U.S. 202 (1982) ........................................................................ 3, 4

*Roe v. Wade*, 410 U.S. 113 (1973) ............................................................................ 3

*Schultz v. Newsweek, Inc.*, 481 F. Supp. 881 (E.D. Mich. 1979), *aff'd*, 668 F.2d 911 (6th Cir. 1982) ................................................................................................ 7

*Siegert v. Gilley*, 500 U.S. 226 (1991) .................................................................... 5, 9

*Soo Line R.R. Co. v. St. Louis Southwestern Railway Co.*, 125 F.3d 481 (7th Cir. 1995) .................................................................................................................... 1

*Strutner v. Dispatch Printing Co.*, 442 N.E.2d 129 (Ohio Ct. App. 1982) ............ 7, 9

*Tuchman v. Connecticut*, 185 F. Supp. 2d 169 (D. Conn. 2002) ............................. 5

*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994) ..................................................... 8, 9

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ......................................... 4, 5

*Whitaker v. Hayes Construction Co.*, 167 F. Supp. 2d 251 (D. Conn. 2001) ......... 10

*Wright v. Smith*, 21 F.3d 496 (2d Cir. 1994) ............................................................. 1

**STATUTES**

42 U.S.C. § 1983 .............................................................................................. *passim*

Richard Levin, Linda Lorimer, Richard Brodhead, Thomas Conroy and James Perrotti ("the Yale Defendants") offer this Memorandum in support of their Motion to Dismiss Plaintiff James Van de Velde's Amended Complaint, and in reply to his November 19, 2003 Opposition.

## I. INTRODUCTION

When the haze of rhetoric in Van de Velde's Opposition is cleared away, the central facts of the case, as he pleads them, remain the same, as does the inevitable conclusion they lead to — that the Yale University leaders sued by Van de Velde acted understandably, reasonably and responsibly. They cooperated with the New Haven police's investigation of the murder of a Yale student, relieved Van de Velde of his teaching duties when he was identified by the police as a suspect, and, in response to repeated inquiries, issued a public statement truthfully explaining their actions and expressly stating their belief that Van de Velde was "innocent of any wrongdoing." Yale Br. Exh. A. While Van de Velde seeks to paint a more sinister picture, his attempts are belied by his own Complaint.[1] It is hard to fathom what Yale could have done differently, and inconceivable that the Yale Defendants' actions were constitutional violations.

---

[1] Van de Velde repeatedly claims that the Yale Defendants leaked his name to the press in December 1998, Opp. at 3, 13, 26, but his sole supporting allegation is that *unnamed* "city and university sources" told the press that an *unidentified* Yale teacher was a lead suspect in the Jovin case, Compl. ¶ 69 & Exh. 2. Possible Yale sources number in the thousands, and Van de Velde pleads no facts to support his notion that the individual Yale Defendants made these purported statements. He thus provides no basis for holding them liable under § 1983. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (absent personal involvement in subordinates' conduct, supervisor is not liable under § 1983); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (no liability under § 1983 merely because defendant holds position of authority).

In addition, Van de Velde alleges facts that made him an obvious and legitimate subject for police investigation: that he had a close relationship with Jovin, that he saw her shortly before her death, and that her body was found near his home, Compl. ¶¶ 56-57, 59, 63 & Exh. 4; *see Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1995) (plaintiff is bound by his allegations). Based on these facts, which no reasonable observer could question at the time, Yale officials acted responsibly and lawfully, removing from the classroom a teacher who might be involved in a student's killing while publicly assuming his innocence and maintaining his faculty post for the rest of his contract.

In an effort to circumvent these core facts and the conclusion that Yale acted responsibly, Van de Velde's Opposition offers a smorgasbord of constitutional principles, thrown together with broadbrush characterizations of the case law, in hopes that the Court will not carefully analyze the law underlying each of his claims.[2] He thus conflates his equal protection and substantive due process claims in an effort to disguise his inability to satisfy traditional equal protection principles, and recasts his Fourth Amendment claim to encompass the "seizure" of his "good name," an allegation missing from his Complaint and contrary to established law. To uphold any of his claims would require the Court to depart from established constitutional standards and make new law, an invitation this Court should decline.[3]

## II.   VAN DE VELDE FAILS TO STATE AN EQUAL PROTECTION CLAIM.

At bottom, Van de Velde's equal protection claim is simply this: that he was identified as a member of the "pool" of suspects while the other pool members remained anonymous. Opp. at 5. Van de Velde, however, has made no allegations that: (1) the Yale Defendants knew who any of the other suspects were; (2) any of the other suspects were faculty members or other Yale employees who had regular contact with students; or (3) the Yale Defendants, knowing there were others similarly situated, acted only with respect to Van de Velde – i.e., removing him from

---

[2] Van de Velde wrongly suggests that if just *one* of his § 1983 allegations states a claim, the Court must uphold *all* of them. Opp. at 4 ("[I]f any one of the constitutional theories is . . . adequately pleaded, defendants' motion must be denied."); *id.* at 29 (if Fourth Amendment privacy claim is valid, Court need not consider Fourteenth Amendment privacy claim); *id.* at 30 (Court "need not wrestle with . . . procedural due process" if it accepts other claims). Van de Velde may prefer that the Court not examine his individual claims in depth, but that is exactly what the Court must do since he alleges them as independent violations of § 1983. Compl. ¶ 169. Those claims that do not pass muster – and none of them do – must be dismissed.

[3] Because each of his constitutional claims involves, at a minimum, a substantial expansion of existing law, the Yale Defendants – assuming they are proved to be state actors – will clearly be entitled to qualified immunity, which protects state officials from suit unless their actions violate "clearly established rights" under existing law, of which an "objectively reasonable official would have known." *Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 54 (2d Cir. 2003).

the classroom and responding truthfully to inquiries about his status. Indeed, it is inconceivable that there could have been another suspect similarly situated to Van de Velde: He himself has pleaded that Jovin's body was found near his home and that he saw her on the day of her death, and offered exhibits suggesting that he had a close relationship with her. *See supra* note 1. With no allegations of differential treatment, he has no equal protection claim against the Yale Defendants. *Giordano v. City of New York*, 274 F.3d 740, 751-52 (2d Cir. 2001) (plaintiff must show intentional discrimination).

Even assuming there were allegations of intentional discrimination by the Yale Defendants, Van de Velde belongs to no suspect class and thus alleges a "class of one" selective treatment claim, which requires a showing of "malicious or bad faith intent to injure a person." *Id.* at 751. Under the circumstances alleged in the Complaint, the conduct of the Yale Defendants could not possibly be construed as malicious. Recognizing that he cannot meet this standard, Van de Velde seeks to evade it, by suggesting that the Court perhaps could apply a higher level of scrutiny or, in the alternative, that recent case law has eliminated the "malice" requirement. Neither circumvention is accurate.

As to the first, Van de Velde suggests that "fundamental rights" may be at stake and tentatively asserts that the defendants' conduct "may" need to survive intermediate or even strict scrutiny. Opp. at 10-11 (citing, *inter alia*, *Roe v. Wade*, 410 U.S. 113 (1973)). All but one of his cited cases concern substantive due process and the right to privacy, *not* discrimination, and the standard of review in those cases is thus irrelevant. The sole equal protection case cited in this portion of his brief, *Plyler v. Doe*, 457 U.S. 202 (1982), concerned a statutory classification denying public education to the children of illegal aliens – circumstances entirely unlike Van de Velde's "class of one" claim. Moreover, although *Plyler* is an intermediate scrutiny case in that

3

it required the statute to further a substantial interest, the Supreme Court has expressly limited *Plyler*'s holding to its "unique" facts involving a potential underclass based on alienage, and otherwise has limited intermediate scrutiny to classifications based on gender or illegitimacy. *Kadrmas v. Dickinson Public Schs.*, 487 U.S. 450, 459 (1988). No case supports the radical contention that, merely because Van de Valde has thrown privacy and substantive due process allegations into his Complaint, the standards governing those claims somehow supplant the "well developed and familiar" standards for equal protection, *Baker v. Carr*, 369 U.S. 186, 226 (1962), which do not grant heightened scrutiny to plaintiffs in Van de Velde's position.

As to the "malice" requirement for a "class of one" claim, Van de Velde argues that it no longer applies after *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam). Opp. at 8-9 & n.4.[4] Two circuit courts have correctly held to the contrary, recognizing that *Olech* did not broaden the Equal Protection Clause to cover mere unexplained differential treatment by the state. *Bryan v. City of Madison*, 213 F.3d 267, 277 n.17 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001); *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000), *cert. denied*, 531 U.S. 1080 (2001). Van de Velde cites two Second Circuit decisions for the proposition that mere irrationality is a sufficient alternative to malice. Opp. at 9 (citing *Giordano*, 274 F.3d at 751; *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 500 (2d Cir. 2001)). These cases held nothing of the sort, for they *expressly* declined to address the impact of *Olech*. *Giordano*, 274 F.3d at 751 (issue irrelevant as plaintiff could not show intentional discrimination); *Harlen*, 273 F.3d at 500 (issue irrelevant as plaintiff could prove neither malice nor irrationality).[5] For the

---

[4] Unlike Van de Velde, the *Olech* plaintiff in fact had alleged malice, see 528 U.S. at 565-66 (Breyer, J., concurring), making it unlikely that *Olech* implicitly eliminated the requirement.

[5] Van de Velde's additional proffered authorities do not support the proposition that *Olech* eliminated the "malice" requirement. *See Payne v. Huntington Union Free Sch. Dist.*, 219 F. Supp. 2d 273, 278 (E.D.N.Y. 2002) ("This Court need not reconcile [*Olech*] with lower court

reasons set forth in the Yale Defendants' opening brief, Yale Br. at 24-26, the Second Circuit's longstanding malice requirement remains in effect.

Here, of course, Van de Velde's complaint does not describe either irrational conduct or the type of arbitrary, malicious abuse of power by the state that would satisfy any of the equal protection standards that would apply to his claim. On the contrary, it reflects a concerted effort by Yale to support Van de Velde publicly, while taking necessary steps to remove him from the classroom during the investigation. *See supra* Part I. Like the *Harlen* plaintiffs, Van de Velde fails to state a claim regardless of *Olech*.

### III. VAN DE VELDE FAILS TO STATE A FOURTH AMENDMENT CLAIM.

Conceding that no defendant actually committed an unconstitutional search or seizure, Van de Velde again muddies the constitutional waters by arguing that the Yale Defendants "constructively arrested" him by "seizing his name" and "irreparably smear[ing] his good reputation." Opp. at 6, 23; *see id.* at 22-25. But Van de Velde also concedes – as he must – that mere reputational harm does not implicate § 1983. Opp. at 21 (citing, *inter alia*, *Paul v. Davis*, 424 U.S. 693, 701 (1976)); *see Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991). Van de Velde thus cannot bootstrap his reputational damages into a Fourth Amendment claim.

Moreover, Van de Velde misconstrues Second Circuit authority. Opp. at 16-19, 23-24 (citing *Caldarola v. County of Westchester*, 343 F.3d 570 (2d Cir. 2003); *Lauro v. Charles*, 219 F.3d 202 (2d Cir. 2000); *Ayeni v. Mottola*, 35 F.3d 680 (2d Cir. 1994)). These cases involved the

---

decisions trying to make sense of that case" because plaintiff established neither irrationality nor malice); *Barstow v. Shea*, 196 F. Supp. 2d 141 (D. Conn. 2002) (following *Giordano* without discussion); *Tuchman v. Connecticut*, 185 F. Supp. 2d 169, 173 (D. Conn. 2002) (issue irrelevant because plaintiffs had not alleged irrationality or malice). Neither these decisions nor those noted by the Yale Defendants, Yale Br. at 24 & Exh. E (citing *Padilla v. Harris*, 2002 WL 750856 (D. Conn. Apr. 24, 2002), supports Van de Velde's expansive reading of *Olech*.

*scope* of *actual* searches and seizures, not "constructive arrests" and "name seizures" – new Fourth Amendment claims cut from whole cloth. While the Fourth Amendment may cover seizures of "intangibles" such as video images, neither these cases nor any others cover truthful statements to the press identifying an existing suspect.[6] If Van de Velde can state a claim on these facts, *any* public statement regarding a criminal suspect, by the police or cooperating private parties, would become a constitutionally cognizable "arrest." As the Supreme Court held in rejecting such claims under the Fourteenth Amendment, no case or policy consideration supports such an expansion of the Fourth Amendment. *See Paul v. Davis*, 424 U.S. at 698-99 ("It is hard to perceive any logical stopping place to such a line of reasoning.").

### IV. VAN DE VELDE FAILS TO STATE A PRIVACY CLAIM.

Because Van de Velde cannot state a claim for an unconstitutional search or seizure, his privacy claim can arise solely under the Fourteenth Amendment.[7] Van de Velde argues that his claim is "perhaps clearest" under that Amendment's "confidentiality" protections,[8] attempting to expand protections for *financial* records into privacy guarantees for suspects in high-profile murder cases. Opp. at 29 (citing *Barry v. City of New York*, 712 F.2d 1554 (2d Cir. 1983)). But he ignores the authorities holding that reports on police investigations – including the names of

---

[6] *See Ayeni*, 35 F.3d at 686 (police exceeded scope of otherwise valid search warrant by physically bringing news crew into home without court permission or legitimate purpose); *Lauro*, 219 F.3d at 212-13 (police exacerbated otherwise lawful seizure by taking arrestee on televised, staged perp walk, but *expressly* declining to rule that the videotaping itself was a seizure); *Caldarola*, 343 F.3d at 576 (upholding videotaping of actual arrest because it was not staged and had legitimate purpose).

[7] Van de Velde makes much of the supposed "elasticity" of Fourth Amendment privacy rights, Opp. at 15-19, but he does not dispute that they apply only to searches or seizures, *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998).

[8] The Fourteenth Amendment's "autonomy" protections are limited to personal choices regarding marriage, procreation and family relationships, *Barry*, 712 F.2d at 1559, and Van de Velde does not even attempt to justify such a claim, *see* Opp. at 29 (asserting without elaboration that his "allegations are sufficient even if viewed under the so-called autonomy branch").

6

possibly innocent suspects – are matters of legitimate public interest. *E.g., Gonzalez v. Leonard*, 497 F. Supp. 1058, 1070 (D. Conn. 1980) ("[T]he right of privacy . . . does not extend to the protection of an individual's reputation from unfavorable publicity, prompted by the actions of law enforcement officials, which falsely places him in a bad light.") (citing *Paul v. Davis*, 424 U.S. at 713); *Schultz v. Newsweek, Inc.*, 481 F. Supp. 881, 887 (E.D. Mich. 1979) (that police identify a suspect "is itself a fact within the public interest"), *aff'd*, 668 F.2d 911 (6th Cir. 1982); *Strutner v. Dispatch Printing Co.*, 442 N.E.2d 129, 133 (Ohio Ct. App. 1982) ("[I]t is a legitimate concern to the public to know the name of a person who is being questioned as a suspect in a vicious rape-murder . . . ."). He also ignores his own allegations concerning the intense public interest in the Jovin case. *E.g.*, Compl. ¶¶ 43-44. His privacy claim thus contravenes existing law, his own alleged facts, and common sense.

V.     **VAN DE VELDE FAILS TO STATE A DUE PROCESS CLAIM.**

Van de Velde has identified no cognizable deprivation of right or interest for either his procedural or substantive due process claim. He expressly bases his procedural due process claim upon his other allegations of constitutional violations, Opp. at 29, and partially ties his substantive due process claim to his Fourteenth Amendment privacy claim, *id.* at 30. Since his underlying allegations state no constitutional claims, these due process claims also fail.

That leaves Van de Velde to contend that his due process claims derive from the "stigma" of his identification as a suspect,[9] which he concedes cannot state a claim by itself. Opp. at 25

---

[9] Van de Velde argues that "suspect" has "no established meaning" and therefore cannot be used publicly without probable cause. Opp. at 7; *id.* at 26-28. Of course, if "suspect" has no meaning, its use cannot possibly cause the harm Van de Velde alleges. Van de Velde's real argument must be that truthfully reporting a suspect's name is tantamount to calling him an actual criminal. *Id.* at 27 (claiming defendants' actions implied "substantial evidence of his guilt"). But Yale's statement did not imply Van de Velde's guilt; it expressly presumed he was "innocent of any wrongdoing." Yale Br. Exh. A; *see Estate of Gomez v. Larson*, 1999 WL 417819, at *6 (Conn.

7

("[S]tigmatizing conduct must be accompanied by some tangible injury or material alteration of legal right or status."). Van de Velde cites *Doe v. Dep't of Public Safety*, 271 F.3d 38, 56 (2d Cir. 2001), as restating this "stigma plus" requirement to mean that there must be "an indicium of material governmental involvement unique to the government's public role that distinguishes his or her claim from a traditional state-law defamation suit." *See* Opp. at 21.

While he correctly quotes *Doe*, Van de Velde does not satisfy its requirements. He argues that he meets the "plus" requirement because *"the awesome machinery of the state"* – apparently in the form of a Yale press release presuming his innocence – has been brought down upon him. *Id.* at 26 (emphasis added). Van de Velde, however, must allege that the Yale Defendants themselves caused some additional material deprivation, *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994), which he fails to do. Van de Velde claims in his brief, Opp. at 25, that his "employment at Yale was altered for a period of time, then terminated" – a factual averment that is neither accurate nor in his Complaint. Yale cancelled Van de Velde's classes for the spring of 1999,[10] but he remained on the faculty until his contract expired, suffered no loss of status, and was never "terminated."

Van de Velde also claims that his job status with the U.S. Naval Reserves "was altered," Opp. at 25; Compl. ¶ 163, a purported change having nothing to do with the Yale Defendants and belied by his allegation that he still holds the rank of Lieutenant Commander, *id.* ¶ 34. By

---

Super. Ct. June 8, 1999) (attached as Exh. H) (defamation by innuendo arises only where speaker omits material facts that would change statement's tone). In any event, defamation by innuendo cannot support a § 1983 claim. *See Paul v. Davis*, 424 U.S. at 709-10.

[10] Employees have no property interest in particular job responsibilities. *See Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990) ("The constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services."); *see also* Compl. Exh. 14 (comments from Van de Velde's counsel conceding that "from a legal point of view, Yale can change whatever classes the school wants to alter").

way of comparison, in *Valmonte*, the statute requiring the plaintiff to be listed as a potential child abuser also required employers to check the register and justify hiring a listed person. The court held that *"by operation of law*, her potential employers will be informed specifically about her inclusion on the Central Register and will therefore choose not to hire her," and this material deprivation constituted the required "plus" factor. 18 F.3d at 1001-02 (emphasis added). Here, Van de Velde was merely identified as a suspect by the Yale Defendants, and no action by them compelled the U.S. Government to "alter" his status as a reservist. Such an alteration, to the extent it occurred, did not result from "government involvement unique to the government's public role." *Doe*, 271 F.3d at 56; *see Siegert*, 500 U.S. at 228-29, 234 (loss of government job due to bad reputation does not make out cognizable deprivation). Van de Velde cannot satisfy the "plus" requirement and thus states no due process claim.

## VI.   VAN DE VELDE STATES NO CLAIMS UNDER CONNECTICUT LAW.

Van de Velde expressly disavows his allegations based on the Connecticut Constitution, conceding that § 1983 does not extend to state law. Opp. at 4 n.3. And he only half-heartedly attempts to save his Connecticut statutory claims, by again asserting that the Yale Defendants maliciously *stated* "that he was guilty of the Jovin murder," *id.* at 31, when his own pleadings show that Yale expressly stated the contrary. The Yale defendants did nothing more than acknowledge the truth that Van de Velde was a suspect. Nothing they said or did cast Van de Velde in a false light, s*ee Strutner*, 442 N.E.2d at 134-35 (even if individual is "erroneously suspected," identifying actual suspect as such is not a false statement), or could ever be construed as extreme or outrageous for purposes of an emotional distress claim, *see supra* Part

I.[11]  To allow Van de Velde to proceed, on a claim that Connecticut already regards with skepticism, *see Whitaker v. Hayes Constr. Co.*, 167 F. Supp. 2d 251, 255 (D. Conn. 2001) (emotional distress claims are disfavored), will leave schools with no viable responses when teachers are suspected of crimes against their students. The Court should therefore dismiss both his statutory claims.

### VII. CONCLUSION

For the reasons set forth above and in their July 31, 2003 Memorandum, the Court should dismiss all of Van de Velde's claims against the Yale Defendants.

DEFENDANTS
RICHARD LEVIN, LINDA LORIMER,
RICHARD BRODHEAD, THOMAS CONROY,
AND JAMES PERROTTI

By: _____
William J. Doyle (ct04190)
Aaron S. Bayer (ct12725)
Kenneth D. Heath (ct23659)
Wiggin & Dana LLP
One Century Tower
P. O. Box 1832
New Haven, CT  06508-1832
Tel:  (203) 498-4308
Fax:  (203) 789-2889
email:  wdoyle@wiggin.com
Their Attorneys

---

[11] Van de Velde's attempts to distinguish *Adams v. Adkins*, 1998 WL 111632 (N.D. Ill. Mar. 6, 1998) (Yale Br. Exh. C), and *Clark v. Township of Falls*, 890 F.2d 611 (3d Cir. 1989), miss the mark. That *Adams* involved a "ponderous" claim hardly distinguishes it from Van de Velde's 40-page complaint. In any event, *Adams* clearly holds that a defendant does not intentionally inflict emotional distress by identifying the plaintiff as a suspect, even where the defendant knows the plaintiff is innocent. 1998 WL 11632, at *6. Similarly, while *Clark* concerns a post-trial motion rather than a motion to dismiss, it nevertheless holds, *as a matter of law*, that a knowingly false public accusation of criminal conduct is not extreme or outrageous conduct. 890 F.2d at 624. Given that holding, Van de Velde's allegations cannot possibly state an emotional distress claim.