UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES VAN DE VELDE,<br>    Plaintiff,<br><br>VS.<br><br>MELVIN WEARING, BRIAN SULLIVAN,<br>THOMAS TROCCHIO, EDWARD KENDALL,<br>ESTATE OF ANTHONY DILULLO, by Lisa<br>Bull DiLullo, Legal Representative,<br>JOHN DOES, RICHARD LEVIN,<br>LINDA LORIMER, RICHARD BRODHEAD,<br>THOMAS CONROY, and JAMES PERROTTI,<br>    Defendants. | CIVIL NO. 3:01cv02296 (RNC)<br><br><br><br>APRIL 1, 2004 |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF MOTION FOR RECONSIDERATION**

**Introduction**

    Plaintiff James Van de Velde respectfully submits this memorandum in support of his motion, pursuant to D. Conn. L. Civ. R. 7(c), for reconsideration of the Court's Ruling and Order filed March 15, 2004 (hereinafter "Court Mem."), granting the motion to dismiss filed by defendants Richard Levin, Linda Lorimer, Richard Brodhead, Thomas Conroy, and James Perrotti ("the Yale defendants"), and the motion for judgment on the pleadings filed by defendants Melvin Wearing, Brian Sullivan, Thomas Trocchio, Edward Kendall and Estate of Anthony DiLullo ("the New Haven defendants"). For the reasons we discuss below, we believe the Court overlooked significant portions of plaintiff's complaint, as well as relevant legal authority, in reaching its decision. We also believe that, in dismissing without prejudice state law claims that were also pleaded against the defendants, the Court overlooked the alternative basis for subject matter jurisdiction with respect to those claims,

and thus should not have dismissed those claims without addressing the merits of the arguments raised.

I.      Factual Allegations

The Court in its opinion acknowledges the fundamental rule, applicable to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), that all allegations in a complaint must be assumed to be true, and plaintiff must be given the benefit of all reasonable inferences.  Grant v. Wallingford Board of Education, 69 F.3d 669, 673 (2d Cir. 1995); Court Mem. at 3.  In plaintiff's view, however, the Court failed to apply this bedrock principle here, and instead either misread key portions of the Amended Complaint dated April 15, 2003 (hereinafter "Complaint") or drew inferences against the plaintiff and in favor of the moving parties.  As a result, plaintiff submits, the Court's decision was based on an overly narrow and incorrect reading of the Complaint.

The clearest and, we believe, most critical error is in the Court's description of the one of the key factual events in the Complaint, and the watershed event in plaintiff's life -- the leaking of his name as the "prime suspect" in the Jovin murder, and the ensuing crush of negative publicity that permanently altered his life.  In its summary of the facts alleged, the Court states:

> On or before December 9, 1998, one or more of the New Haven defendants, along with one or more of the Yale defendants, disclosed to the news media that a "male Yale teacher" was the "lead suspect" in the murder.  The media guessed that plaintiff was the suspect, and the ensuing wave of publicity produced intense public scrutiny of his background and personal life.

Court Mem. at 2.

The allegations of the Complaint, we submit, cannot support such a benign and passive role for the defendants in the havoc wreaked on plaintiff's life.  Summarized broadly, the Complaint alleges (1) that the New Haven defendants and Yale defendants

collaborated closely in the investigation of the murder (Court Mem. at 2) and shared information about the progress of the investigation; (2) that all defendants had a strong desire and motive to show progress and in the murder investigation, either by apprehending a perpetrator or demonstrating significant progress toward identifying a responsible party, in order to quell public fear, show that the murder was not an act of random violence, and avoid negative publicity for the City and University (Complaint, ¶¶ 44-49, 53-54, 79); (3) that the defendants, acting in concert, caused plaintiff's <u>name</u> to be leaked to the media as the "prime suspect" in the crime, which resulted in plaintiff being publicly identified and irreparably linked with the crime.  Plaintiff does <u>not</u> allege, as the Court concluded, that the defendants leaked only the fact that a "male Yale teacher" was the "lead suspect"; plaintiff alleges that his name was leaked.

These facts are set out in Section E of the Complaint, ¶¶ 55-79, which is headed "December 1998 - Plaintiff's Name is Leaked as The 'Prime Suspect'".  Plaintiff was interrogated by the New Haven police on the evening of December 8, 1998.  Complaint, ¶¶ 61-65.  The next morning, a front-page article ran in the <u>New Haven Register</u> stating that a "Yale educator" who taught Ms. Jovin was the "lead suspect" in the brutal killing and had twice been questioned about the murder.  Complaint, ¶ 66.  Although his name was not used in the newspaper article, there is no doubt that plaintiff's name had been leaked to the media, and that they knew his identity.  The Complaint alleges that the statement that Van de Velde had twice been questioned by the police, and was the "lead suspect", could only have come, directly or indirectly, from one or more of the New Haven defendants.  Complaint, ¶ 67. Indeed, the Complaint alleges that defendant Wearing acknowledged that the police could be blamed for the identification of plaintiff as the murder suspect, and that this was "not a good thing."  Complaint, ¶¶ 68, 137.  The Complaint further alleges that one

or more of the Yale defendants was a source for the December 9, 1998 Register article. Complaint, ¶¶ 69-70. The media did not have to guess at plaintiff's name or identity -- they had it as a result of the leaks from the defendants. Plaintiff was ambushed the morning of December 9th by news media, while on the way to his dentist's office, and questioned whether he was the "lead suspect" mentioned in that morning's newspaper. Complaint, ¶ 72. It is reasonable to infer from the sequence of events pleaded -- if indeed inferences are necessary -- that the defendants leaked plaintiff's name to the media and caused him to be targeted as the "lead suspect" in the notorious homicide.

Plaintiff believes these facts are more than adequately pleaded in the Complaint. If there is any doubt, however, plaintiff respectfully requests the right to re-plead in order to fill in whatever gaps the Court believes must be filled in. Plaintiff does not allege, as the Court perceived, either that the defendants leaked facts about an anonymous "Yale teacher", or that the subsequent storm of publicity resulted from good guesswork by the media. Plaintiff alleges that defendants leaked his name and supposed "lead suspect" status to the media, and set in motion a sequence of events that would inevitably cause him to be tarred as the "Jovin murder suspect." Plaintiff further alleges that the defendants did so in order to make it appear that the individual responsible for the crime had been identified, which furthered their own strong interest in avoiding negative publicity and quickly solving the crime.

II.    Equal Protection Claim

The Court rejects plaintiff's claim of an equal protection violation on two distinct grounds. As to the Yale defendants, the Court found the claim insufficient "because there is no allegation that any of them ever knew the name of any other suspects in the Jovin case." The Court concluded that the claim against the New Haven defendants was

"insufficient because there is no allegation that they were ever asked to confirm the identity of any other suspect."  Court Mem. at 4.

This conclusion, we submit, is also flawed and based on a mis-reading of the Complaint.  The Court acknowledges that plaintiff must allege "facts showing that the defendant treated him differently from similarly situated persons and had no rational basis for doing so."  Court Mem. at 3-4.  As noted in our initial memorandum in opposition to defendants' motion, see Def. Mem. at 12-14, plaintiff was a member of a group of similarly situated individuals -- the so-called "pool of suspects" -- yet only his name was singled out and leaked to the media by the defendants as the alleged "lead suspect" in the case.  The actions summarized in Section I above with respect to plaintiff are dramatically different than the treatment afforded all other members of the suspect "pool."  These facts, standing alone, are sufficient to make out an equal protection violation.

Plaintiff actually alleges that his equal protection rights were violated in two different respects by the defendants:  (1) by leaking his name to the media as the "lead suspect" in the Jovin murder, and causing him to be singled out for treatment different than any other "suspect"; and (2) by repeatedly identifying plaintiff, and only plaintiff, publicly as a "suspect" in the murder while refusing to identify any other members of an admittedly large pool.  Contrary to the Court's conclusion, the Complaint does allege that the New Haven defendants were asked to confirm the identity of other suspects.  Defendant Wearing, in a series of public statements after the murder, continued to identify plaintiff and only plaintiff as a suspect in the murder.  In several public statements, he confirmed that many others were in a "pool" with the plaintiff, but refused to identify any other suspects.  See, e.g., Complaint, ¶ 119 (alleging that defendant Wearing stated plaintiff has not been ruled out of pool of suspects but "refused to identify any other suspects")(citing to Exhibit 5 - June 29,

1999 New Haven Register article; "Police declined to identify any other suspects", at p.2); Complaint, ¶ 122 (at one-year anniversary press conference, defendant Wearing admitted that ten people remained in the suspect pool, reaffirmed that Van de Velde was a suspect, but "again refused to identify any of the other individuals in the "suspect" pool with the plaintiff"); Complaint, ¶ 134 (at press conference announcing reward, defendant Wearing reiterated that plaintiff was a suspect in the Jovin homicide, and "acknowledged that other unnamed suspects . . . "could have had the opportunity" to commit the murder, but refused to identify any of those individuals).

 As noted, we believe an allegation that the New Haven defendants were asked to name other suspects is irrelevant to the viability of the equal protection claim, because only plaintiff's name was leaked to the media in December 1998; only plaintiff was publicly identified in January 1999; and there were and continued to be other members of the suspect "pool." To the extent the Court believes such an allegation is necessary, however, the Complaint more than adequately pleads that the defendants were asked, and refused, to name other suspects. If the Court believes this is not adequately pleaded, we request the opportunity to re-plead to remedy whatever shortcomings the Court perceives.

 Turning to the Yale defendants, it is irrelevant whether they knew the names of any other suspects. As we have indicated, the Complaint alleges concerted action by all defendants in singling plaintiff out, and leaking his name to the media from among a pool of otherwise anonymous suspects as the "lead suspect" in the murder. This differential treatment, coupled with the fact that there was a pool of similarly situated suspects, as the Court recognizes for purposes of ruling on the defense motions (Court Mem. at 4), is sufficient standing alone to make out an equal protection claim. However, if an allegation that the Yale defendants were aware of other suspects is necessary, we believe it may be

reasonably inferred from the Complaint.  The Complaint clearly alleges concerted action among the Yale defendants and the New Haven defendants, from the outset of the Jovin murder investigation.  Complaint, ¶¶26, 49, 51-53, 85-88, 107-115.  They were working "shoulder to shoulder" as a joint law enforcement task force.  Id. at ¶¶ 51, 53.  The collaboration continued into January 1999 and beyond.  Complaint, ¶ 54.  Defendant Lorimer, acting for the Yale defendants, was actively, regularly, and continuously in communication with the New Haven Police Department, including the New Haven defendants, about the Jovin murder investigation.  The New Haven defendants shared information about the murder investigation, and about plaintiff's status in the investigation, that was not shared with the general public.  Complaint, ¶¶ 83-85.  In April 1999, defendant Lorimer stated she had regular conversations with the New Haven police during the initial investigation, and at that point still spoke with them several times a week.  Complaint, ¶ 115.

Based on these factual allegations, plaintiff submits that a reasonable inference may be drawn that the non-public information shared with the Yale defendants regarding the Jovin investigation included the identity of other members of the "suspect" pool.

III.   Right to Privacy

In rejecting plaintiff's claim that his right to privacy was violated, the Court relied on Paul v. Davis, 424 U.S. 693 (1976), and Rosenberg v. Martin, 478 F.2d 520 (2d Cir. 1973).  Court Mem. at 4.  Both are clearly distinguishable and in no way undermine plaintiff's claim here.  In Paul, at the time of the alleged wrongful disclosure there was a public document indicating that the plaintiff in fact had been arrested for a shoplifting crime.  In Rosenberg, the plaintiff had been charged with murder and was a fugitive from justice.  The law enforcement conduct in both cases resulted in the disputed public disclosures.  Here, by

contrast, plaintiff had not been charged with any crime, and there was no basis to charge him. In Rosenberg, the court of appeals (Friendly, J.) stressed that though to that point the right to privacy had been confined to intimate personal matters, "[t]his is not to say that no conduct of police officers toward a suspected criminal, even a murderer, may ever constitute a violation of a constitutional right to privacy." Rosenberg, 478 F.2d at 525.

Indeed, the right to privacy has been expanded to include matters of both confidentiality and personal autonomy. As to confidentiality, the disclosure of bank records has been held protected under the right to privacy. Barry v. City of New York, 712 F.2d 1554 (2d Cir.), cert. denied, 464 U.S. 1017 (1983). As noted in our initial memorandum, it is difficult to understand how government intrusion on someone's bank or financial records would trigger constitutional privacy scrutiny, but government branding of an innocent person as a suspect in a high-profile murder investigation would not. Def. Mem. at 29-31. The Court did not address this alternate branch of constitutional privacy jurisprudence in its decision.

Finally, in deciding the sufficiency of plaintiff's privacy claim, the Court treated it as essentially alike with a Fourteenth Amendment substantive due process violation. Court Mem. at 5 n.3. Plaintiff submits that they are distinct constitutional violations. Substantive due process protects an individual against outrageous governmental conduct, without regard to whether the so-called right to privacy under Roe v. Wade, 410 U.S. 113 (1973) and its progeny. E.g., Rochin v. California, 342 U.S. 165 (1952).

IV.     Procedural Due Process

The Court addressed plaintiff's "stigma plus" claim, under Paul v. Davis and its progeny, as a question of procedural due process. Court Mem. at 5. In our initial memorandum, we analyzed this question as an issue of liberty interest under the

Fourteenth Amendment. Def. Mem. at 25-28. The Court found that plaintiff had not adequately alleged a change in status that would qualify as "stigma-plus." Court Mem. at 5.

In order to satisfy this test, there must be (1) stigma, (2) "some tangible injury or material alteration of legal right or status", and (3) "an indicium of governmental involvement unique to the government's public role." Doe v. Lee, 271 F.3d 38, 56, 64 (2d Cir. 2001), rev'd on other grounds sub nom Department of Public Safety v. Doe, 123 S. Ct. 1169 (2003). As the Court noted in its decision, plaintiff alleges certain changes to his legal rights or status. Court Mem. at 5 n.3; Complaint, ¶¶ 89, 163-64. This allegation, we submit, is sufficient to meet the requirement of a "material alteration of legal right or status." In addition, the governmental involvement here related to the law enforcement function, and thus was unique to the government's public role. Thus, all of the necessary elements of a "stigma plus" claim identified in Doe were pleaded here.

V.    Fourth Amendment Seizure

The Court's analysis of our Fourth Amendment unlawful seizure claim was bottomed on authority defining when an individual is physically seized. Court Mem. at 5-6 (citing Michigan v. Chestnut, 466 U.S. 567 (1988)). The Court did not explicitly address the claim of constructive seizure or seizure of intangibles, which are also recognized under the Fourth Amendment. In our initial memorandum, we discussed the series of Second Circuit cases, beginning with Ayeni v. Mottola, 35 F.3d 680 (2d Cir. 1994), setting out the contours of these rights under the Fourth Amendment. Def. Mem. at 16-19. The Court read these cases, especially Lauro v. Charles, 219 F.3d 202, 212 (2d Cir. 2000), as standing only for the proposition that the Fourth Amendment shields arrestees from conduct that aggravates the intrusion associated with an arrest. Court Mem. at 6 n.4. Plaintiff submits that, when

the unique facts pleaded here are considered in light of <u>Ayeni</u> and the subsequent Second Circuit authority, they are sufficient to make out a claim of constructive seizure of plaintiff's person and good name.

VI.     <u>State Law Claims</u>

Finally, plaintiff respectfully submits that the Court erred in its handling of the state law claims asserted in the Complaint. The Court acted based on an apparent understanding that they were merely pendent to plaintiff's federal claims under 42 U.S.C. § 1983. However, plaintiff also alleged diversity of citizenship as an alternate basis for federal jurisdiction, in addition to the supplemental jurisdiction of the Court. Complaint, ¶¶ 8, 11, 12, 27. Plaintiff resides in Virginia, all defendants (at the time suit was brought) resided in Connecticut, and the amount in controversy exceeds $100,000.00. Accordingly, plaintiff believes that the Court may not decline to exercise jurisdiction under these circumstances, and should address the arguments raised by the defendants as to the state law claims.

THE PLAINTIFF
JAMES VAN DE VELDE

By_____
David T. Grudberg, ct01186
JACOBS, GRUDBERG, BELT & DOW, P.C.
350 Orange St.
P.O. Box 606
New Haven, CT 06503
Ph.:(203) 772-3100
Fax:(203) 772-1691
Email: dgrudberg@jacobslaw.com

James I. Meyerson
396 Broadway - Suite 601
New York, New York 10013
Ph.:(212) 226-3310

His Attorneys

## CERTIFICATION

     I hereby certify that a copy of the foregoing was mailed first class, postage prepaid on April 1, 2004 to:

Martin S. Echter, Esq.
Deputy Corporation Counsel
165 Church St. - 4th Fl.
New Haven, CT 06510

Stephen P. Fogerty, Esq.
Robert A. Rhodes, Esq.
Halloran & Sage LLP
315 Post Road West
Westport, CT 06880

William J. Doyle, Esq.
Kenneth D. Heath, Esq.
Wiggin & Dana
One Century Tower
New Haven, CT 06510

                                                                       David T. Grudberg