# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JAMES VAN DE VELDE,
           Plaintiff,

v.

MELVIN WEARING, BRIAN SULLIVAN,
THOMAS TROCCHIO, EDWARD KENDALL,
ESTATE OF ANTHONY DILULLO, by Lisa
Bull DiLullo, Legal Representative, JOHN DOES,
RICHARD LEVIN, LINDA LORIMER,
RICHARD BRODHEAD, THOMAS CONROY,
and JAMES PERROTTI,
           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil No. 3:01cv02296 (RNC)

## MEMORANDUM IN SUPPORT OF THE YALE DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Aaron S. Bayer (ct 12725)
Kenneth D. Heath (ct 23659)
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Tel: (203) 498-4400
Fax: (203) 782-2889
E-mail: kheath@wiggin.com

*Attorneys for Defendants Richard Levin,
Linda Lorimer, Richard Brodhead, Thomas
Conroy, and James Perrotti*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ............................................................ 1

STATEMENT OF THE CASE............................................................... 2

    A.  The Murder of Suzanne Jovin ................................................. 2

    B.  Yale's Response ....................................................................... 3

    C.  The Police Response ............................................................... 4

    D.  Van de Velde's Alleged Injuries ............................................ 5

    E.  Van de Velde's Lawsuit .......................................................... 6

        1.  Van de Velde's First Amended Complaint ...................... 6

        2.  The Court's Order Dismissing the First Amended Complaint.............................. 6

        3.  Subsequent Proceedings and the Second Amended Complaint ................. 7

STANDARD OF REVIEW ................................................................... 8

ARGUMENT ....................................................................................... 10

    I.   VAN DE VELDE CANNOT STATE A PROCEDURAL DUE PROCESS CLAIM............................ 12

        A.  The Yale Defendants Made No False Statements About Van de Velde. ................... 13

        B.  Van de Velde Suffered No Tangible Alteration in His Rights or Status.................... 16

        C.  The Court Should Reject Van de Velde's Claim as a Matter of Public Policy.......... 21

    II.  VAN DE VELDE HAS NO SUBSTANTIVE DUE PROCESS CLAIM..................... 22

        A.  Van de Velde Has No Possible Liberty Interest Warranting Protection. .................. 22

        B.  The Yale Defendants' Actions Did Not "Shock the Conscience." ............................ 23

    III.  VAN DE VELDE FAILS TO STATE AN EQUAL PROTECTION CLAIM. ............. 25

    IV.  VAN DE VELDE FAILS TO STATE A PRIVACY CLAIM. ................................. 28

    V.  VAN DE VELDE FAILS TO STATE A FOURTH AMENDMENT CLAIM.............. 30

A.  The Complaint Alleges No Unreasonable Searches...................................................30

B.  The Complaint Fails to Allege a Seizure Under the Fourth Amendment. ................31

C.  Van de Velde Has No "Constructive Arrest" or "Name Seizure" Claim..................32

VI.  VAN DE VELDE HAS NO CONNECTICUT CONSTITUTIONAL CLAIMS...........33

VII. THE COURT SHOULD DISMISS VAN DE VELDE'S COMMON-LAW
CLAIMS. ...................................................................................................................33

A.  Van de Velde Cannot State a Claim for False Light Invasion of Privacy.................34

1.  The Defendants Made No False Statements About Van de Velde. ......................34

2.  Van de Velde's Allegations Negate the Required Element of Malice..................35

B.  Van de Velde Cannot State a Claim Against the Yale Defendants for Intentional
Infliction of Emotional Distress. ...........................................................................36

1.  The Yale Defendants' Alleged Conduct Was Not Outrageous. ...........................37

2.  Van de Velde's Emotional Distress Claim Is Speculative....................................40

CONCLUSION..................................................................................................................40

# TABLE OF AUTHORITIES

## CASES

PAGE

*Adams v. Adkins*, 1998 WL 111632 (N.D. Ill. Mar. 6, 1998) ............................................25, 38, 39

*Alvarado v. KOB-TV, LLC*, 493 F.3d 1210 (10th Cir. 2007)............................................................39

*Anemone v. Metropolitan Transit Authority*, 410 F. Supp. 2d 255 (S.D.N.Y. 2006) ....................19

*Appleton v. Board of Education*, 757 A.2d 1059 (Conn. 2000)................................................36, 37

*Ayeni v. Mottola*, 35 F.3d 680 (2d Cir. 1994) ..............................................................................32

*Baker v. Howard*, 419 F.2d 376 (9th Cir. 1969) ..........................................................................29

*Barry v. City of New York*, 712 F.2d 1554 (2d Cir. 1983) ......................................................28, 29

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ..........................................................8, 9

*Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008).....................................................................24

*Bizzarro  v. Miranda*, 394 F.3d 82 (2d Cir. 2005) ......................................................................25

*Breithaupt v. Abram*, 352 U.S. 432 (1957) ................................................................................24

*Bryan v. City of Madison*, 213 F.3d 267 (5th Cir. 2000) .............................................................26

*Caldarola v. County of Westchester*, 343 F.3d 570 (2d Cir. 2003) ..............................................32

*California v. Greenwood*, 486 U.S. 35 (1988)..............................................................................30

*Charles W. v. Maul*, 214 F.3d 350 (2d Cir. 2000) ......................................................................10

*Chesna v. Department of Defense*, 850 F. Supp. 110 (D. Conn. 1994) ..........................................20

*Clark v. Township of Falls*, 890 F.2d 611 (3d Cir. 1989)......................................................38, 39

*Collins v. Harker Heights*, 503 U.S. 115 (1992) ........................................................................23

*Connolly v. McCall*, 254 F.3d 36 (2d Cir. 2001) ........................................................................27

*Cook v. Apple*, 145 Fed. Appx. 700 (2d Cir. 2005) ................................................................32, 33

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)......................................................23, 24, 28

*Daniels v. Williams*, 474 U.S. 327 (1986) .................................................................24

*DeLaurentis v. City of New Haven*, 597 A.2d 807 (Conn. 1991) .....................................37

*DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989) ...............24

*Doe v. Cheney*, 885 F.2d 898 (D.C. Cir. 1989).............................................................20

*Doe v. City of New York*, 15 F.3d 264 (2d Cir. 1994).....................................................28

*Doe v. Department of Public Safety*, 271 F.3d 38 (2d Cir. 2001), *rev'd on other grounds*, 538 U.S. 1 (2003).................................................................................13, 18

*Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990) ......................................................20

*Eagle v. Morgan*, 88 F.3d 620 (8th Cir. 1996) .............................................................28

*Ehrlich v. Town of Glastonbury*, 348 F.3d 48 (2d Cir. 2003)...........................................12

*Eisenstadt v. Baird*, 405 U.S. 438 (1972) ...................................................................23

*Engquist v. Oregon Department of Agriculture*, No. 07-474 (U.S. June 9, 2008) ........................25

*Florida v. Bostick*, 501 U.S. 429 (1991) ....................................................................31

*Florida v. Jimeno*, 500 U.S. 248 (1991) ....................................................................30

*Florida v. Royer*, 460 U.S. 491 (1983) ......................................................................31

*Franco v. Yale University*, 161 F. Supp. 2d 133 (D. Conn. 2001)................................37, 38

*Giordano v. City of New York*, 274 F.3d 740 (2d Cir. 2001).............................................25

*Goldstein v. Pataki*, 516 F.3d 50 (2d Cir. 2008), *petition for cert. filed on other grounds*, 76 U.S.L.W. 3540 (U.S. Mar. 31, 2008) (No. 07-1247)..........................9, 37, 38, 40

*Gonzalez v. Leonard*, 497 F. Supp. 1058 (D. Conn. 1980)...............................................29

*Goodrich v. Waterbury Republican-American, Inc.*, 448 A.2d 1317 (Conn. 1982)...............34, 35

*Gravitt v. Brown*, 74 Fed. Appx. 700 (9th Cir. 2003)....................................................15

*Grigorenko v. Pauls*, 297 F. Supp. 2d 446 (D. Conn. 2003) ...........................................36

*Griswold v. Connecticut*, 381 U.S. 479 (1965)............................................................23

*Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC,*
298 F.3d 136 (2d Cir. 2002)........................................................................................2

*Hagler v. Democrat-News, Inc.*, 699 S.W.2d 96 (Mo. Ct. App. 1985) .........................21

*Harlen Associates v. Incorporated Village of Mineola*, 273 F.3d 494 (2d Cir. 2001) .................26

*Heller v. Doe*, 509 U.S. 312 (1993) ..............................................................................26

*Hill v. Department of Air Force*, 844 F.2d 1407 (10th Cir. 1988)..................................20

*Hilton v. City of Wheeling*, 209 F.3d 1005 (7th Cir. 2000).....................................25, 26

*Huff v. West Haven Board of Education*, 10 F. Supp. 2d 117 (D. Conn. 1998) ...........37

*ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219 (2d Cir. 2001) .....................8

*In re Initial Public Offering Seurities Litigation*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003) .............9

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007), *cert. granted on other grounds sub. nom.*
*Ashcroft v. Iqbal*, 76 U.S.L.W. 3417 (U.S. June 16, 2008) (No. 07-1015) ........9, 40

*Jamil v. Secretary, Department of Defense*, 910 F.2d 1203 (4th Cir. 1990) ................20

*Jonap v. Silver*, 474 A.2d 800 (Conn. App. Ct. 1984).................................................34

*Knapp v. Hanson*, 183 F.3d 786 (8th Cir. 1999).........................................................27

*Lauro v. Charles*, 219 F.3d 202 (2d Cir. 2000) ..........................................................32

*Lehnhausen v. Lake Shore Automobile Parts Co.*, 410 U.S. 356 (1973).......................26

*Loving v. Virginia*, 388 U.S. 1 (1967).........................................................................23

*Malek v. Haun*, 26 F.3d 1013 (10th Cir. 1994)...........................................................33

*Martin v. Griffin*, 2000 WL 872464 (Conn. Super. Ct. June 13, 2000).........................15

*Meador v. New Times*, 1995 U.S. Dist. LEXIS 11021 (D. Ariz. Aug. 2, 1995)...........15

*Michael H. v. Gerald D.*, 491 U.S. 110 (1989)............................................................22

*Minnesota v. Carter*, 525 U.S. 83 (1998) ...................................................................30

*Morrissey v. Yale University*, 844 A.2d 853 (Conn. 2004)...........................................37

*Neilson v. D'Angelis*, 409 F.3d 100 (2d Cir. 2005) .................................................27

*Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147 (2d Cir. 2003) ...................................................................9

*Olivia v. Town of Woodbury*, 281 F. Supp. 2d 674 (S.D.N.Y. 2003) .......................32

*Padilla v. Harris*, 2002 WL 750856 (D. Conn. Apr. 24, 2002) ...............................26

*Paul v. Davis*, 424 U.S. 693 (1976) ................................................................. *passim*

*Pierce v. Society of Sisters*, 268 U.S. 510 (1925) ...................................................23

*Pilarczyk v. Morrison-Knudsen Corp.*, 965 F. Supp. 311 (N.D.N.Y. 1997), *aff'd*, 162 F.3d 1148 (2d Cir. 1998) ....................................................................34

*Powell v. Schriver*, 175 F.3d 107 (2d Cir. 1999) ...................................................29

*Powers v. Coe*, 728 F.2d 97 (2d Cir. 1984) ...........................................................33

*Reaves v. Hartford Courant Co.*, 2003 WL 1090699 (Conn. Super. Ct. Feb. 28, 2003)..............35

*Robinson v. Department of Homeland Security*, 498 F.3d 1361 (Fed. Cir. 2007)........................20

*Rodriguez v. United States*, 878 F. Supp. 20 (S.D.N.Y. 1995) .................................31

*Rosenberg v. Martin*, 478 F.2d 520 (2d Cir. 1973)............................................21, 23

*Sadallah v. City of Utica*, 383 F.3d 34 (2d Cir. 2004) .......................................16, 17

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) .................................................30

*Schultz v. Newsweek, Inc.*, 481 F. Supp. 881 (E.D. Mich. 1979), *aff'd*, 668 F.2d 911 (6th Cir. 1982)...........................................................................21

*Siegert v. Gilley*, 500 U.S. 226 (1991) ........................................................... *passim*

*Skinner v. Oklahoma*, 316 U.S. 535 (1942) ...........................................................23

*Smith v. Coughlin*, 727 F. Supp. 834 (S.D.N.Y. 1989) .........................................23

*Smith v. Garretto*, 147 F.3d 91 (2d Cir. 1998).................................................13, 14

*Snyder v. Cedar*, 2006 WL 539130 (Conn. Super. Ct. Feb. 16, 2006) .....................39

*Soo Line Railroad Co. v. St. Louis Southwestern Railway Co.*, 125 F.3d 481 (7th Cir. 1997) ............................................................................................................9, 14, 36

*Spetalieri v. Kavanaugh*, 36 F. Supp. 2d 92 (N.D.N.Y. 1998) ........................................29

*Stehney v. Perry*, 101 F.3d 925 (3d Cir. 1996) ...............................................................20

*Stoianoff v. Commissioner of Motor Vehicles*, 107 F. Supp. 2d 439 (S.D.N.Y. 2000), *aff'd*, 12 Fed. Appx. 33 (2d Cir. 2001) ........................................................................29

*Strutner v. Dispatch Printing Co.*, 442 N.E.2d 129 (Ohio Ct. App. 1982)..............21, 35

*Taylor v. Rodriguez*, 238 F.3d 188 (2d Cir. 2001)..........................................................12

*Terry v. Ohio*, 392 U.S. 1 (1968) ....................................................................................23

*Time, Inc. v. Hill*, 385 U.S. 374 (1967) ..........................................................................35

*Tracy v. New Milford Public Schools*, 922 A.2d 280 (Conn. App. Ct. 2007) ................37

*United States v. Lee*, 916 F.2d 814 (2d Cir. 1990)..........................................................31

*United States v. Mendenhall*, 446 U.S. 544 (1980) .........................................................31

*United States v. Williams*, 219 F. Supp. 2d 346 (W.D.N.Y. 2002)..................................30

*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994) .........................................................17, 18

*Vega-Rodriguez v. Puerto Rico Telephone Co.*, 110 F.3d 174 (1st Cir. 1997)................29

*Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005)................................................................19, 20

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ..............................................25, 26

*Washington v. Glucksberg*, 521 U.S. 702 (1997) .......................................................22, 23

*Weinstein v. Albright*, 261 F.3d 127 (2d Cir. 2001)........................................................27

*Whalen v. Roe*, 429 U.S. 589 (1977)...............................................................................28

*Whitaker v. Haynes Construction Co.*, 167 F. Supp. 2d 251 (D. Conn. 2001)........36, 37, 40

*Wigfall v. Society National Bank*, 669 N.E.2d 313 (Ohio Ct. App. 1995).......................39

*Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir. 1995)..................................................26

*Zavatsky v. Anderson*, 130 F. Supp. 2d 349 (D. Conn. 2001)........................................................27

**STATUTES**

42 U.S.C. § 1983 ................................................................................................................ *passim*

Defendants Richard Levin, Linda Lorimer, Richard Brodhead, Thomas Conroy and James Perrotti ("the Yale Defendants") submit this memorandum in support of their Motion to Dismiss plaintiff James Van de Velde's Second Amended Complaint.

## PRELIMINARY STATEMENT

This is the second time that this Court will review Van de Velde's complaint for its legal sufficiency—the Court having once concluded, correctly, that Van de Velde's collection of constitutional causes of action against the Yale Defendants failed to state a claim. The Court has granted Van de Velde the extraordinary opportunity to replead his claims, but he has not changed the gravamen of his lawsuit: The New Haven Police Department and the Yale Defendants publicly revealed that the police considered Van de Velde, a Yale lecturer, a suspect in the murder of one of his students. The police never accused Van de Velde of the crime and indeed cautioned that they had not solved the murder and were investigating multiple suspects. The Yale Defendants echoed these statements and said that they presumed Van de Velde was innocent. But Van de Velde *was* a suspect, and the defendants publicly revealed that fact. Nothing in the Constitution or the common law supports a cause of action based on this conduct.

Moreover, there are no new facts in Van de Velde's Second Amended Complaint that warrant a departure from the Court's earlier ruling dismissing his federal claims. Nor are there facts to support Van de Velde's state-law claims, which the Court also should dismiss with prejudice. The law on Van de Velde's claims has not changed in his favor—on the contrary, recent changes to federal pleading standards have made it more difficult for plaintiffs like Van de Velde to pursue the novel and implausible claims asserted here. Thus, even assuming that all the allegations in Van de Velde's Complaint are true, the Complaint fails to state a claim upon which relief can be granted and must be dismissed, with prejudice, under Federal Rule 12(b)(6).

## STATEMENT OF THE CASE

The critical facts in Van de Velde's Second Amended Complaint remain the same as those pleaded in his original complaint, with the exception of certain new allegations regarding Van de Velde's status with the United States Navy Reserves. This statement is based on Van de Velde's Second Amended Complaint and its accompanying exhibits.[1]

### A.      The Murder of Suzanne Jovin

In August 1998, Yale hired Van de Velde for a one-year term as a lecturer in the Political Science Department. ¶ 38. In the fall of 1998, senior Suzanne Jovin enrolled in one of Van de Velde's classes. ¶ 57. Van de Velde also was her thesis advisor, and on December 4, 1998 Jovin met with him to give him her most recent draft. ¶ 57. Hours later, Jovin was found murdered approximately one-half mile from Van de Velde's home. ¶¶ 40-41, 56.

New Haven police began investigating immediately. On December 7, they met with Van de Velde and asked for copies of Jovin's thesis and a note she had written to accompany her latest draft. ¶ 57. The next day, the police asked to meet with Van de Velde again. He willingly accompanied them to police headquarters and "voluntarily submitted" to questioning, ¶¶ 61, 63-65, and offered to let the police search his vehicle and home, to provide blood and DNA samples, and to take a polygraph examination. ¶ 64. The police searched his vehicle but declined his other offers. *Id.* Van de Velde later voluntarily provided a DNA sample to investigators. ¶ 145.

---

[1] Paragraph numbers refer to Van de Velde's Second Amended Complaint. The Yale Defendants assume his allegations are true for purposes of their Motion but reserve the right to contest his allegations should the Court rule that Van de Velde states any valid cause of action.

Numerical exhibit references are to the exhibits attached to Van de Velde's Second Amended Complaint. On a motion to dismiss, the Court can "consider documents that are . . . attached to the complaint as exhibits, or whose terms and effect are relied upon by the plaintiff in drafting the complaint." *Gryl ex rel. Shire Pharm. Group PLC v. Shire Pharm. Group PLC*, 298 F.3d 136, 140 (2d Cir. 2002). Since Van de Velde quotes and relies upon Yale's January 11, 1999 press release, ¶ 92, the Yale Defendants also refer to this document, attached as Exhibit A.

On December 9, the *New Haven Register* published a story in which police stated they had no suspects and "made a public plea for any information about the case." ¶ 67 & Exh. 2. The same story, however, reported that a "Yale educator" who taught Jovin was the "lead suspect" and that police twice had questioned a "Yale male teacher." ¶ 66. A previous article had identified Van de Velde as one of Jovin's teachers and also stated that, according to police, Jovin "knew her killer." ¶ 72. Thus, although the December 9 article did not name Van de Velde, it effectively identified him as the "prime suspect." *Id.* Subsequent events—including reporters asking Van de Velde about his possible involvement in the murder and news broadcasts soliciting information about him—confirmed his identification as a suspect. ¶¶ 73-74.

**B.    Yale's Response**

Yale felt a responsibility to Jovin and to her family, ¶ 47; Exh. 12, and wanted to help its students cope with her death and to provide a safe and secure environment, Exh. 10. With Jovin's murderer still at large, the prospect that other students might be vulnerable generated considerable anxiety in the Yale community. *E.g.*, Exh. 1; ¶ 43. Accordingly, Yale fully cooperated with the New Haven Police Department, the authority responsible for investigating the murder. ¶ 49. Yale offered its own police force to assist with the investigation, ¶¶ 51-53, and kept in close contact with the New Haven police, ¶¶ 83-86, 116. At some point during Yale's winter break, from mid-December 1998 through mid-January 1999, the police informed Yale that they considered Van de Velde to be among "a pool of suspects" in the murder. ¶ 91. The police also indicated that they would be questioning Yale students in the weeks to come. *Id.*

Knowing that the police suspected a Yale faculty member of murdering a student, and that Yale students soon would become part of the police investigation, Yale had to act. On January 10, 1999, defendant Richard Brodhead, Dean of Yale College, met with Van de Velde to explain that Yale had altered Van de Velde's responsibilities for the spring semester. ¶ 90. Van

3

de Velde would remain in his job and continue in his research responsibilities, but Yale had canceled his classes for the semester. *Id.*[2]  On January 11, in response to repeated inquiries, Yale issued a statement about this decision. ¶ 92.  Yale stated that while it presumed Van de Velde innocent of the Jovin murder, the New Haven police had told Yale that he was in the "pool of suspects." ¶ 92; Exh. A.  It was this information from the police, and the ensuing distractions that it presaged, that prompted Yale's decision to cancel Van de Velde's spring classes.  Exh. A.

Yale's January 11 statement, which expressly proclaimed belief in Van de Velde's innocence, was consistent with Yale's subsequent actions demonstrating its belief that the Jovin murder was unsolved.  In late 2000, after nearly two years in which the police had not solved the crime, Yale hired a private investigator to assist the police. ¶ 128.  Later, in March 2001, Yale and the New Haven police held a joint press conference, during which Yale offered an additional $100,000 reward for information about the crime.  ¶¶ 131-32.  Yale and the police also asked the public for any information about a previously unidentified vehicle spotted at the scene of Jovin's murder. ¶ 131.  By hiring an investigator and asking for public assistance, Yale demonstrated its desire to solve the Jovin murder and its belief that the police had yet to achieve that result.

C.    **The Police Response**

After Yale's January 11 statement, New Haven police publicly confirmed that Van de Velde was in their "pool of suspects." ¶ 96.  The police emphasized, however, that they had additional, unnamed suspects and that they were far from solving the crime.  ¶¶ 117-23, 135, 137.  Indeed, the police have stated "that the investigation has 'exhausted all avenues,' [and] that they have few if any leads, and little if any evidence identifying Ms. Jovin's killer." ¶ 143.

---

[2] It is difficult to fault Yale for taking this measured step.  In fact, it is hard to imagine any university, no matter how committed to the presumption of innocence, allowing a faculty member identified by police as a suspect in a student's murder to stay in the classroom during the investigation.

Thus, in April 1999, the police enlisted a group of metal detector operators to search for physical evidence near where Jovin's body was found. ¶¶ 153-56. Despite this search, the police later stated that their evidence implicated no particular suspect. Exh. 5. The police conceded that Van de Velde "ha[d] not been ruled out" as a suspect, but also stated that "[n]obody ha[d] been ruled out in the pool of suspects." ¶ 120 & Exh. 5; *see also* ¶ 121 & Exh. 6 (statement that Van de Velde was among "pool of suspects"); ¶ 137 (statement that there were other suspects). In a December 3, 1999 press conference, the police stated they were investigating ten individuals (including Van de Velde) and "[had] a long way to go" to solve the case. ¶¶ 122-24. In October 2001, local prosecutors announced that DNA evidence recovered from Jovin's body did not match Van de Velde's DNA sample. ¶¶ 144-46. Finally, in late 2007, local prosecutors announced that four retired detectives had assumed responsibility for the investigation, approaching the case "as if it were brand new" with "no person [as] a suspect in the crime, and everyone [as] a suspect in the crime." ¶ 148. Even at that announcement, however, reporters asked prosecutors about Van de Velde. *Id.*

More than nine years after Jovin's murder, her killer remains at large.

### D.     Van de Velde's Alleged Injuries

According to Van de Velde, the defendants' actions "triggered public speculation," continuing to this day, about whether he killed Suzanne Jovin. ¶ 76. His identification as a suspect led to unfavorable publicity and lost job opportunities, damage to his reputation, and emotional distress. ¶¶ 165-71. Specifically, he alleges that his "job status" at Yale and with the United States Navy Reserves "was altered." ¶ 167. Regarding the latter employer, Van de Velde alleges that the Navy, unbeknownst to him, refused to approve his requests for assignments outside the United States. ¶ 168. In addition, in 2002 the Navy terminated one of his

5

assignments after learning that he had been named as a suspect, and in 2003 he lost his security clearance, effectively ending his career as a naval intelligence officer. ¶ 170.

### E.    Van de Velde's Lawsuit

#### 1.    Van de Velde's First Amended Complaint

On December 7, 2001, Van de Velde initiated this action against the New Haven defendants; on April 15, 2003 he amended his suit to include claims against the Yale Defendants. In Count One of his First Amended Complaint, brought under 42 U.S.C. § 1983, Van de Velde alleged, without elaboration, that the defendants violated his rights to equal protection of the laws under the Fourteenth Amendment, to privacy under the Fourth and Fourteenth Amendments, to procedural and substantive due process under the Fourteenth Amendment, and to be free from unreasonable searches and seizures under the Fourth Amendment. In addition, Van de Velde sought to recover under § 1983 for violations of his rights under the Connecticut Constitution, though he later disclaimed that cause of action. Opp. at 4 n.3.[3] In Counts Two and Three, Van de Velde brought claims under Connecticut common law, alleging that the defendants invaded his privacy by placing him in a false light before the public and committed the tort of intentional infliction of emotional distress.

#### 2.    The Court's Order Dismissing the First Amended Complaint

On July 31, 2003, the Yale Defendants moved to dismiss Van de Velde's suit as failing to state a claim. The New Haven defendants then sought judgment on the pleadings, adopting the Yale Defendants' arguments. On March 15, 2004, the Court granted both motions ("Ruling").

In its Ruling, the Court dismissed Van de Velde's federal-law claims with prejudice. On his equal protection claim, the Court held that he failed to state a claim because, as to the Yale

---

[3] This brief will refer to the Yale Defendants' July 31, 2003 opening brief for their first motion to dismiss ("Yale 12(b)(6) Br.") and to Van de Velde's Nov. 19, 2003 brief in opposition ("Opp.").

Defendants, he had not alleged that they knew the names of other suspects (and thus could not establish differential treatment) and, as to the New Haven defendants, had not alleged that they were ever asked to confirm the identity of other suspects. Ruling at 4. The Court also rejected Van de Velde's "essentially alike" substantive due process and privacy claims based on settled case law that there is no right to confidentiality regarding one's status as a suspect in a criminal investigation. *Id.* The Court further rejected Van de Velde's procedural due process claim on the ground that Van de Velde had failed to allege a tangible alteration in his status apart from harm to his reputation, holding that any adverse actions taken by the Navy Reserves as a result of the harm done to Van de Velde's reputation could not support a cause of action against the defendants. *Id.* at 5 & n.3. Finally, the Court rejected Van de Velde's claim under the Fourth Amendment, finding that, while the Amendment shields arrestees from police conduct that aggravates the intrusion caused by an *actual* arrest, there was no authority for the proposition that simply naming a person as a suspect could violate the Fourth Amendment. *Id.* at 6 & n.4.

Having held that none of Van de Velde's federal claims could survive a motion to dismiss, the Court declined to exercise pendent jurisdiction over Van de Velde's common-law claims for false light invasion of privacy and intentional infliction of emotional distress. *Id.* at 6. Viewing these claims as of particular concern to the Connecticut courts, the Court dismissed these claims without prejudice to Van de Velde's refiling them in state court. *Id.* at 7.

### 3. Subsequent Proceedings and the Second Amended Complaint

Thereafter, all parties moved to alter various aspects of the Court's ruling. Van de Velde moved for reconsideration of the Court's dismissal of his federal-law claims. The defendants, noting that Van de Velde had alleged diversity jurisdiction as a basis for his suit, argued that his state-law claims were properly before the Court and sought a ruling dismissing those claims with prejudice. The case remained in this posture until the parties' telephonic status conference of

April 3, 2008. At that time, the Court granted Van de Velde's motion for reconsideration and instructed that he should refile all his claims so as to put his "best foot forward," subject to the defendants' renewing their motions to dismiss.

On May 1, 2008, Van de Velde moved for leave to file his Second Amended Complaint, which by agreement of the parties became operative when no defendant objected to the proposed amendment by May 26, 2008. Despite this extraordinary opportunity, Van de Velde has not made a single change in his legal claims, and he has added no facts of legal significance. Thus, he continues to allege, without elaboration, that the defendants violated his rights to equal protection of the laws, to privacy, to procedural and substantive due process, and to be free from unreasonable searches and seizures. ¶ 176. And while Van de Velde previously disclaimed any theory of recovery under § 1983 based on his rights under the Connecticut Constitution, his Second Amended Complaint nevertheless repeats this allegation. ¶ 177. Finally, Van de Velde continues to purport to state Connecticut common-law claims for false light invasion of privacy, ¶¶ 179-80, and intentional infliction of emotional distress, ¶¶ 182-85.

Pursuant to Rule 12(b)(6), the Yale Defendants now move to dismiss Van de Velde's Second Amended Complaint in its entirety. Despite this Court's extraordinary grant of leave to refile his suit, Van de Velde still has failed to state any claim—based on federal or state law—upon which relief can be granted. The Court should dismiss all his claims with prejudice.

## STANDARD OF REVIEW

The Supreme Court altered the landscape of federal pleading requirements with its recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). To be sure, dismissal under Rule 12(b)(6) remains appropriate if "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 221 (2d Cir. 2001) (internal quotation marks and citations omitted). It is no longer the case,

however, that a complaint must survive a motion to dismiss unless there is "no set of facts" under which the plaintiff can recover. *Twombly*, 127 S. Ct. at 1969 (noting that "no set of facts" concept "has earned its retirement"). Instead, pleadings in this Circuit now fall under a stricter "plausibility" standard, whereby, to survive a motion to dismiss, a plaintiff must "amplify" the basic allegations of notice pleading where necessary to render his claim plausible. *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *cert. granted on other grounds sub. nom. Ashcroft v. Iqbal*, 76 U.S.L.W. 3417 (U.S. June 16, 2008) (No. 07-1015); *see Goldstein v. Pataki*, 516 F.3d 50, 58 (2d Cir. 2008) (dismissal appropriate where a plaintiff cannot provide factual allegations "sufficient to raise a right to relief above the speculative level"), *petition for cert. filed on other grounds*, 76 U.S.L.W. 3540 (U.S. Mar. 31, 2008) (No. 07-1247). While *Twombly*'s ultimate impact on pleading standards remains unclear, *Iqbal*, 490 F.3d at 155, a plaintiff's burden on a motion to dismiss is *at least as* great as before, and he cannot simply rely on conclusory allegations to support implausible claims, *id.* at 157-58.

Moreover, where a plaintiff does provide factual allegations, he is bound by those allegations. *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). A plaintiff thus "plead[s] himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts." *Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) (internal quotation marks and citation omitted); *see also Goldstein*, 516 F.3d at 58 (upholding 12(b)(6) dismissal where plaintiffs effectively conceded complete defense in their complaint). Even at the 12(b)(6) stage, a plaintiff cannot "controvert what it has already unequivocally told a court by the most formal and considered means possible." *Soo Line*, 125 F.3d at 483; *accord In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 324 (S.D.N.Y. 2003). Here, the very words of Van de Velde's Complaint demonstrate that he has no claim against the Yale Defendants.

# ARGUMENT

In granting Van de Velde's motion to reconsider, this Court stated that it was allowing him to replead his federal-law claims so that he could put his "best foot forward." In his Second Amended Complaint, however, Van de Velde merely has put the *same* foot forward. Apart from minor wording changes and allegations concerning more recent actions or statements by New Haven police, ¶¶ 140-41, 148-49, Van de Velde's latest complaint contains nothing new other than a more specific recitation of alleged changes to his status with the Navy Reserves, ¶¶ 168-70. There is, in short, *nothing* in the Second Amended Complaint to warrant a departure from the Court's earlier ruling dismissing Van de Velde's cause of action under 42 U.S.C. § 1983.[4]

1.      Van de Velde fails to state a claim for violation of *procedural due process*. Van de Velde must allege both that state actors made false statements about him that injured his reputation *and* that he suffered some tangible alteration of his rights or status under state law. He cannot meet this standard. First, Van de Velde again fails to allege that the defendants made any false statements about him. They stated that he was a suspect in the investigation, and, even as he argues that nothing ties him to Jovin's murder, he concedes that he was a suspect. Second, Van de Velde still has not alleged any constitutionally cognizable alteration in his rights or status. His injuries merely arise from harm to his reputation or—like his purported interest in maintaining his security clearance—fail to implicate the Due Process Clause at all. Third, as a matter of public policy, the defendants should not be held liable for revealing truthful information about an ongoing criminal investigation.

---

[4] To state a claim under § 1983, Van de Velde must properly allege that a state actor deprived him of a right protected by federal law. *Charles W. v. Maul*, 214 F.3d 350, 357 (2d Cir. 2000). For purposes of this Motion only, the Yale Defendants do not contest Van de Velde's allegation that they acted under color of state law within the meaning of § 1983; they expressly reserve the right to challenge this point in the future. Even with this assumption, however, Van de Velde has not alleged and cannot allege that the Yale Defendants violated any of his federal rights.

2.      Van de Velde's *substantive due process* claim also must fail.  The substantive component of the Due Process Clause prohibits states from infringing fundamental liberty interests.  Van de Velde previously has argued that he has a fundamental right not to be publicly identified as a suspect absent evidence that would satisfy probable-cause analysis.  As the Court has recognized, there is no such fundamental, longstanding right.  Van de Velde's claim also fails because the Yale's alleged actions—canceling his classes, and explaining its reasons why while professing a belief in his innocence—do not come close to "shocking the conscience."

3.      Van de Velde does not state an *equal protection* claim.  Van de Velde comprises a "class of one," and thus he must allege that the Yale Defendants acted with an impermissible motive.  He expressly pleads, however, that the Yale Defendants identified him in response to inquiries about the cancellation of his classes.  Even if Van de Velde only had to allege that Yale's actions had no rational basis, the need to explain this decision was a legitimate, rational reason for Yale to acknowledge that the police had identified Van de Velde as a suspect.  More fundamentally, as the Court has held, there is no basis for claiming that his unique situation was the same as that of other, unknown and unidentified suspects and that Yale somehow denied him equal protection by not treating them identically.

4.      Van de Velde has not alleged facts supporting a claim for deprivation of his *right to privacy*.  The constitutional right to privacy is limited to the right to make decisions on intimately personal matters or to protect highly personal information.  It does not protect an individual from publicity, prompted by the actions of law enforcement, that places him in an unfavorable light, including Van de Velde's status as a suspect in a criminal investigation.

5.      Van de Velde's claims of *unreasonable searches and seizures* under the Fourth Amendment also must fail.  Van de Velde has pleaded facts showing that all possible searches and seizures complied with the Fourth Amendment.  In previous briefing, Van de Velde has

11

argued that he was "constructively arrested" and that "his good name" was seized. As the Court already has held, there is no support in the Constitution or case law for these novel claims.[5]

The Court also should dismiss Van de Velde's remaining state-law Counts. His alleged violations, if any, of the *Connecticut Constitution* are not cognizable under § 1983 and, in any event, are legally equivalent to his federal claims. Van de Velde cannot state a common law claim for *false light* because the defendants did not make any false statements and because he has failed to allege that the defendants acted with malice. Finally, Van de Velde's claim for *intentional infliction of emotional distress* fails because, even accepting his allegations as true, as a matter of law the Yale Defendants' conduct was not outrageous, as Connecticut law requires.

## I.    VAN DE VELDE CANNOT STATE A PROCEDURAL DUE PROCESS CLAIM.

To state a procedural due process claim, Van de Velde must allege that the defendants deprived him of a constitutionally protected interest and that this deprivation occurred without due process of law. *Taylor v. Rodriguez*, 238 F.3d 188, 191 (2d Cir. 2001). Van de Velde's Second Amended Complaint contains no allegation that the Yale Defendants (or any defendant) denied him some procedure—reason enough for this Court to find that he has again failed to state a claim. But even if Van de Velde had properly alleged that he was denied some procedure, he still does not allege the deprivation of a constitutionally protected interest.

As set forth in the parties' previous briefing, Van de Velde's allegations implicate the "stigma plus" line of cases that began with *Paul v. Davis*, 424 U.S. 693 (1976). In *Paul*, the Supreme Court held that while damage to reputation might support a state-law claim for defamation, it does not become a constitutional violation merely because a state actor caused the

---

[5] Moreover, because Van de Velde's constitutional claims all substantially expand existing law, the Yale Defendants, if state actors, will have qualified immunity, which protects officials from suit unless their actions violate "clearly established rights" of which an "objectively reasonable official would have known." *Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 54 (2d Cir. 2003).

damage. *Id.* at 702; *see Siegert v. Gilley*, 500 U.S. 226, 233 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation."). Instead, a cause of action exists only if the plaintiff properly alleges that a state actor made false statements about him that injured his reputation ("stigma") *and* that he suffered some tangible alteration of his rights or status under state law ("plus"). *Paul*, 424 U.S. at 701-02, 710-12; *Doe v. Dep't of Public Safety*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds*, 538 U.S. 1 (2003).

Despite the opportunity to replead, Van de Velde still has failed to meet this standard.

**A.     The Yale Defendants Made No False Statements About Van de Velde.**

A plaintiff cannot maintain a due process action for harm to his reputation if the allegedly stigmatizing statements are true. As explained by the Second Circuit, "[t]he gravamen of 'stigma' as part of a due process violation is the making under color of law of a reputation-tarnishing statement that is *false.*" *Doe*, 271 F.3d at 47-48; *see also Smith v. Garretto*, 147 F.3d 91, 95 (2d Cir. 1998). In *Smith*, the plaintiff alleged that a prosecutor framed him on false criminal charges and notified the media about his arrest, all in retaliation for his exposing corruption and racism in a municipal agency. The Second Circuit held that the prosecutor was entitled to qualified immunity for publicly announcing the plaintiff's arrest because the plaintiff failed to allege the deprivation of any constitutional right. The fact that the allegedly defamatory statement was true—the plaintiff *was* arrested—defeated any constitutional claim: "The injury [plaintiff] endeavors to assert, presumably defamation, does not support a claimed violation of constitutional right where the stigmatizing information is true." *Id.*

Here, Van de Velde cannot allege the deprivation of a constitutionally protected right because the allegedly stigmatizing statements were all true. Indeed, Van de Velde does not contest that he was a suspect in the Jovin murder. As he repeatedly alleges, the police—the official authority responsible for investigating the Jovin murder—considered him a suspect.

*E.g.*, ¶¶ 91, 96, 117, 123. While Van de Velde contends that there was no basis for labeling him a suspect, ¶¶ 6, 77, his own allegations defeat this claim, for he alleges evidence that could make him a suspect: *e.g.*, his preexisting relationship with Jovin, ¶ 55, his meeting with Jovin on the day of her death, ¶¶ 57, 63, and his residence near where her body was found, ¶ 56; *see also Soo Line*, 125 F.3d at 483 (noting that a plaintiff is bound by his allegations). Moreover, the articles appended to his Complaint indicate he had a unique relationship with Jovin. *See* Exh. 4; Exh. 13. Van de Velde alleges this evidence does not link him to the crime, ¶ 77, but that determination is a judgment for the police to make and does not constitute a false statement.[6]

Van de Velde's claim is directly analogous to the plaintiff's claim in *Smith*. There, the plaintiff alleged that he should not have been arrested on bribery charges, yet this was irrelevant to whether he had a constitutional claim against a prosecutor for publicizing his arrest. The plaintiff could not sustain an action because the prosecutor's statement—that the plaintiff had been arrested—was true, *even if* the prosecutor had entrapped the plaintiff in retaliation for his efforts to publicize corruption and racism in a public agency. Similarly, that Van de Velde believes he should not have been a suspect in the Jovin murder is irrelevant to his claim against the defendants for publicly acknowledging that he *was* a suspect in the investigation. Just as in *Smith*, those statements were true, and thus they cannot support a due process claim.

Van de Velde is left to argue, then, that the Yale Defendants harmed his reputation by falsely identifying him as Jovin's killer. *E.g.*, ¶ 4. But, as Van de Velde himself alleges, the

---

[6] Van de Velde previously has sought to avoid the fact of his being a suspect by contesting the relevance of this fact, arguing that the term "suspect" has no established meaning because a law enforcement official can label someone a suspect without regard to any legal standard and without any supporting evidence. Opp. at 7. In light of the allegations in his Complaint, however, this argument has no force, as Van de Velde has offered evidence that could make him a suspect under any reasonable standard. That he disagrees with the police's judgment in this regard is not enough to support a constitutional claim.

defendants *never* said he committed the crime.  As a matter of common sense, a statement that an individual is a "suspect" in a crime, made in the course of an ongoing investigation, is not a statement that the person *in fact* committed the crime.  *See Gravitt v. Brown*, 74 Fed. Appx. 700, 705 (9th Cir. 2003) (affirming summary judgment in defamation action because "[defendant's] statement that [plaintiff] was a 'prime suspect' was not the same as saying that she actually committed the theft, so was not a false statement of fact"); *Meador v. New Times*, 1995 U.S. Dist. LEXIS 11021, at *14 (D. Ariz. Aug. 2, 1995) (accurate report that plaintiff was murder suspect "did not accuse the Plaintiff of murder; instead [it] noted that sheriff's officials considered him to be a suspect"); *id.* at *19-20 (again refusing to equate report with murder accusation: "Were this construction to succeed, newspapers would never report on any crime, for fear that identifying possible suspects would be legally identical to accusing them directly. The Defendants have not portrayed the Plaintiff as the murderer; they have portrayed him as a suspect."); *Martin v. Griffin*, 2000 WL 872464, at *14 (Conn. Super. Ct. June 13, 2000) (statement that individual was arrested for crime does not communicate he was guilty).[7]

Here, Yale expressly stated that it presumed Van de Velde innocent of Jovin's murder, ¶ 92; Exh. A, but the defendants' actions went well beyond this statement.  From the beginning, Yale and the police emphasized that the police had not yet solved the crime, thereby defeating any claim that they had identified Van de Velde, or anyone else, as responsible. *See supra* at 3-5.  For example, when Yale issued its January 11 statement to explain the cancellation of Van de Velde's classes, it noted that the police had identified Van de Velde as being but one person among a "pool of suspects."  ¶ 92; Exh. A.  Further, Yale's hiring a private investigator, offering an increased reward for information on the crime, and pleading with the public for assistance

---

[7] All unpublished decisions cited in this brief are attached as Exhibits.

with the investigation, all communicated that Yale believed the investigation was far from over, and thus preclude any suggestion that Yale identified Van de Velde as the killer. Similarly, the police repeatedly stated that they were investigating multiple suspects, that they had no leads in the investigation, and that they were still a long way from solving the crime; as of now, in the eyes of the police, "no person is a suspect, and everyone is a suspect." *See supra* at 5. These public statements and actions, which consistently emphasized that the investigation was ongoing and was focused on multiple suspects, simply did not identify Van de Velde as a murderer.

Because the Yale Defendants made no false statements about Van de Velde, he cannot allege stigma and cannot sustain a claim for the deprivation of any protected interest.

**B.      Van de Velde Suffered No Tangible Alteration in His Rights or Status.**

Van de Velde's procedural due process claim must fail for a second reason: his failure to allege, in addition to any stigmatizing statement by the Yale Defendants, a "plus" factor sufficient to qualify under the "stigma plus" line of cases. *E.g.*, *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) ("The state-imposed burden or alteration of status must be *in addition to* the stigmatizing statement.") (internal quotation marks and citation omitted). Van de Velde's claim fails because he suffered no tangible alteration of his rights or status by operation of law.

In *Paul*, the Supreme Court held that the plaintiff did not have a constitutional claim against police for circulating an allegedly defamatory flyer to local merchants identifying him as an active shoplifter. The Court held that any harm to the plaintiff's reputation, no matter how serious, "[did] not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law," where it did not "distinctly alter[] or extinguish[]" a "right or status previously recognized by state law." *Id.* at 711-12. In *Siegert*, the Supreme Court reaffirmed that holding, emphasizing that damages flowing merely from reputational harm cannot state a constitutional claim. There, the plaintiff left his job at a federal hospital and began working for an Army

16

hospital in West Germany. To become "credentialed" in the Army job, he asked his former employer for job performance information. When his former supervisor sent a defamatory letter to his new employer, the plaintiff was denied credentials and lost his job. 500 U.S. at 228-29. The plaintiff sued his former supervisor, but the Supreme Court rejected the claim:

> The statements contained in the letter would undoubtedly damage the reputation of one in [plaintiff's] position, and impair his future employment prospects. But the plaintiff in *Paul v. Davis* similarly alleged serious impairment of his future employment opportunities as well as other harm. Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But *so long as such damage flows from injury caused by the defendant to a plaintiff's reputation*, it may be recoverable under state tort law but is not recoverable [as a constitutional claim.]

*Id.* at 234 (emphasis added). Because the alleged injuries arose solely from the damage to the plaintiff's reputation, they did not state a claim for deprivation of a constitutional right. *See also Sadallah*, 383 F.3d at 38-39 (lost good will and customers are merely deleterious effects of defamation); *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994) (plaintiff does not state claim by alleging "impact that defamation might have on job prospects, or for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation").

Here, all of Van de Velde's allegations concern harms that are the "typical consequence of a bad reputation," *id.*, or are otherwise not constitutionally cognizable. Van de Velde alleges, for example, that he "lost, and continues to lose, employment opportunities," and has "suffered damage to his future earning capacity." ¶ 162. As the Court held in *Siegert*, this harm to employment opportunities is insufficient to state a claim. 500 U.S. at 234. He further alleges that he has received unfavorable publicity, that the resulting harm to his reputation has caused him "humiliation, disgrace, mental anguish, psychological trauma, and severe emotional distress," and that he was suspended from a graduate degree program at Quinnipiac University, a

private university. ¶¶ 161, 164. Again, these are the ordinary consequences of a bad reputation and do not state a claim for deprivation of due process. *Valmonte*, 18 F.3d at 1001.

Similarly, while Van de Velde alleges that his job status with Yale was "altered," ¶ 167, he does not identify the "right or status previously recognized by state law [that] was distinctly altered or extinguished," *Paul*, 424 U.S. at 711. Even if his job status with Yale was altered, Van de Velde does not plead that his prior job status was protected by law or even that the alteration resulted from some statutory mandate. *Cf. Valmonte*, 18 F.3d at 1001-02 (statutory impediment to future employment qualifies as plus factor); *Doe*, 271 F.3d at 57 (holding that "imposition on a person of a new set of legal duties that, if disregarded, subject him or her to felony prosecution" qualifies as plus factor). Without such allegations, Van de Velde's Complaint alleges nothing more than the consequences of a bad reputation.

While Van de Velde alleges that his status with the Navy Reserves was altered in various ways, ¶¶ 167-70, these too are simply the deleterious effects of damage to his reputation. Van de Velde alleges that, upon learning of his status as a suspect in the Jovin murder, the Navy stopped reassigning him for work outside the United States, ¶ 168, ended assignments for him at FBI headquarters and at the Defense Intelligence Agency, ¶¶ 169-70, and revoked his security clearance, thereby effectively ending his career as a naval intelligence officer, ¶ 170. Although he does not allege this fact, he appears to imply that, because the Navy is a government actor, its actions toward him suffice to establish the "plus" to go along with the stigma placed upon him by the Yale Defendants. But as with his allegations as to his Yale position, Van de Velde nowhere alleges that his status with the Navy was protected by law, or that the termination of his assignments or security clearance resulted "by operation of law." *See Valmonte*, 18 F.3d at 1001-02 (holding that it was the statutory requirement that potential employers check list of suspected child abusers that rendered listing a material deprivation of rights or status). And as in

*Siegert*, while the Navy may be a government employer, based on Van de Velde's allegations its actions resulted merely from the effects to Van de Velde's reputation and do not support a claim under § 1983. *See Siegert*, 500 U.S. at 234 (loss of job at Army hospital due to defamatory letter from former federal government supervisor held not to constitute a "plus" factor).

 *Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005), is not to the contrary.  In that case, the Second Circuit held that a complaint could survive a motion to dismiss where the plaintiff alleged that school board members made defamatory statements about her and another state actor—the school chancellor—removed her from office.  The court held that "perfect parity" in the origin of the stigma and the plus was not necessary so long as (1) "the stigma and plus would, to a reasonable observer, appear connected," and (2) "the actor imposing the plus adopted (explicitly or implicitly) those [stigmatizing] statements in doing so." *Id.* at 89.  There, board members had falsely accused the plaintiff of criminal activity and demanded her ouster, and the chancellor had acceded to that demand, expressly adopting the stigma in imposing the plus of her dismissal.  *Id.* at 90.  The court allowed the case against the chancellor to go forward—though it dismissed the claims against the board members who, although the authors of the stigma, were themselves powerless to remove the plaintiff from her position or to grant or deny her due process in doing so, and thus could not "be held legally liable for the alleged process failure." *Id.* at 93.

 Even if Van de Velde's alteration in status with the Navy Reserves were a cognizable harm, the Yale Defendants were powerless to impose that deprivation, could not provide or deny him due process in its imposition, and cannot be held liable for its occurrence. *Id.*; *accord Anemone v. Metro. Transit Auth.*, 410 F. Supp. 2d 255, 270 (S.D.N.Y. 2006) (where sources of stigma and plus were different officers of Authority, dismissing claim against source of stigma because he had no role in imposing plus).  But on the fundamental issue of whether Van de Velde has suffered a cognizable "plus," *Velez* does not alter this Court's original analysis that

Van de Velde has failed to state a claim. *Velez* stands for the proposition that separate state actors can together impose a stigma and plus when they act *as part of the same tort*. Here, Van de Velde alleges no conspiracy between the Yale Defendants and the Navy, only that the Navy, after learning of Van de Velde's status as a suspect, took certain actions adverse to him. As in *Siegert*, these are but the consequences of a bad reputation and do not state a stigma-plus claim.

Finally, as to the loss of Van de Velde's security clearance, which he contends effectively terminated his Reserve career, it is well-settled that no federal employee has a constitutionally recognized interest in a security clearance, *Robinson v. Dep't of Homeland Sec.*, 498 F.3d 1361, 1364-65 (Fed. Cir. 2007) ("We consistently have held that a federal employee does not have a liberty or property interest in access to classified information, and therefore the revocation of a security clearance does not implicate constitutional procedural due process concerns.") (citations omitted), or a job or career requiring a security clearance, *Chesna v. Dep't of Defense*, 850 F. Supp. 110, 118-19 (D. Conn. 1994) (rejecting claim that revocation of security clearance "unconstitutionally deprive[d plaintiff] of his job and his right to practice his chosen profession" because there is no "constitutionally protected interest in a security clearance"); *see Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990) ("If there is no protected interest in a security clearance, there is no liberty interest in employment requiring such clearance."). Indeed, "every court of appeals which has addressed the issue" has rejected claims like those Van de Velde appears to make here. *Stehney v. Perry*, 101 F.3d 925, 936 (3d Cir. 1996) (citing, *inter alia*, *Jamil v. Secretary, Dep't of Defense*, 910 F.2d 1203 (4th Cir. 1990); *Doe v. Cheney*, 885 F.2d 898 (D.C. Cir. 1989); *Hill v. Dep't of Air Force*, 844 F.2d 1407 (10th Cir. 1988)). Van de Velde's new allegations regarding his security clearance cannot support his claim.

**C.     The Court Should Reject Van de Velde's Claim as a Matter of Public Policy.**

That Van de Velde cannot state a claim for deprivation of a constitutionally protected interest is fully consistent with sound public policy, because public officials should not be held liable for releasing specific information about an ongoing criminal investigation. The public has a legitimate interest in knowing about the operation of police and other official bodies, and the fact that police have identified a suspect in a criminal investigation is thus a matter within the public interest. *See, e.g., Schultz v. Newsweek, Inc.*, 481 F. Supp. 881, 887 (E.D. Mich. 1979) ("The fact that law enforcement officials name someone as connected with an incident or as a suspect is by itself a fact within the public interest."), *aff'd*, 668 F.2d 911 (6th Cir. 1982); *Hagler v. Democrat-News, Inc.*, 699 S.W.2d 96, 99 (Mo. Ct. App. 1985) ("Where the operation of laws and activities of the police or other public bodies are involved, the matter is within the public interest."); *Strutner v. Dispatch Printing Co.*, 442 N.E.2d 129, 133 (Ohio Ct. App. 1982) ("Despite the possible harm to an innocent suspect, it is a legitimate concern to the public to know the name of a person who is being questioned as a suspect in a vicious rape-murder . . . .").

Aside from the public's interest in knowing whether public servants are making progress in an investigation, law enforcement officials themselves have legitimate reasons for releasing information about suspects in an investigation. Investigators release information to obtain public assistance in apprehending suspects (*e.g.*, the FBI's "10 Most Wanted"), or to obtain assistance in solving the crime. *See, e.g., Rosenberg v. Martin*, 478 F.2d 520, 524 (2d Cir. 1973) (recognizing public interest in release of information about fugitive suspects in order to secure their apprehension). Here, for example, the police repeatedly asked the public to contact them with information about the crime, and specifically asked the public to come forward with information about Van de Velde. *E.g.*, ¶¶ 75, 131-32; Exh. 2. Alternatively, law enforcement officials release information to assure the public that the crime is being investigated and quell

21

public fears. *See Paul*, 424 U.S. at 698. To allow a claim for damage to reputation based merely on the public identification of a suspect would force police to withhold information from the public, stifle public discussion and debate, and hinder law enforcement. *Id.* (noting that it would be surprising if individual could maintain due process action against police "who announce that they believe such person to be responsible for a particular crime in order to calm the fears of an aroused populace"). Thus, Van de Velde's claim based on the defendants' statements about the Jovin investigation fails as a matter of public policy.

In sum, because the defendants made no false statements, because he suffered no alteration of his rights under law, and because as a matter of public policy he cannot challenge statements about the investigation, Van de Velde cannot state a procedural due process claim.

## II.    VAN DE VELDE HAS NO SUBSTANTIVE DUE PROCESS CLAIM.

Van de Velde previously has argued that he had a substantive due process right not to be identified publicly as a suspect absent evidence that would give rise to probable cause. Opp. at 7. As the Court rightly recognized, there is no right to confidentiality regarding one's status as a suspect in a criminal investigation. Ruling at 4. Whether Van de Velde repeats his earlier arguments or asserts some new, heretofore unidentified fundamental liberty interest, under the facts he has pleaded the defendants did not infringe his right to substantive due process.

### A.    Van de Velde Has No Possible Liberty Interest Warranting Protection.

Under the doctrine of substantive due process, states may not infringe fundamental liberty interests unless their actions are narrowly tailored to serve a compelling state interest. *See Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). Only "fundamental" rights "deeply rooted in this Nation's history and tradition" qualify for such protection. *Id.* at 720-21; *see Michael H. v. Gerald D.*, 491 U.S. 110, 122, (1989) ("[W]e have insisted not merely that the interest denominated as a 'liberty' be 'fundamental' . . . , but also that it be an interest traditionally

protected by our society."). The asserted interest must be "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." *Glucksberg*, 521 U.S. at 721 (internal quotation marks and citation omitted). Under this stringent standard, only a handful of longstanding liberty interests have qualified as fundamental, such as the right to marry, *Loving v. Virginia*, 388 U.S. 1 (1967), to have and raise children, *Skinner v. Oklahoma*, 316 U.S. 535 (1942); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), and to marital privacy and the use of contraception, *Eisenstadt v. Baird*, 405 U.S. 438 (1972); *Griswold v. Connecticut*, 381 U.S. 479 (1965). "[B]ecause guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended," the expansion of substantive due process rights beyond these interests is disfavored. *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992).[8]

Under these precedents, the Court's ruling that there is no right to confidentiality as a criminal suspect is unquestionably correct. Ruling at 4 (citing *Paul*, 424 U.S. at 713 (disclosure of plaintiff's arrest implicates no fundamental right); *Rosenberg*, 478 F.2d at 524-25 (identifying plaintiff as murderer did not violate right to privacy); *Smith v. Coughlin*, 727 F. Supp. 834, 842-43 (S.D.N.Y. 1989) (disclosure that plaintiff was suspected of sexually abusing daughter did not violate right to privacy)). Although *arrests* or *detentions* must be supported by probable cause or reasonable suspicion, *see Terry v. Ohio*, 392 U.S. 1 (1968), there is no basis for concluding that the identification of suspects in a criminal investigation, without more, implicates a fundamental liberty interest. Van de Velde fails to state a substantive due process claim.

**B.      The Yale Defendants' Actions Did Not "Shock the Conscience."**

Even assuming that Van de Velde has some fundamental liberty interest at stake in this action, his allegations nevertheless defeat any claim that the Yale Defendants infringed that

---

[8] Liberty interests already implicated by other constitutional safeguards *cannot* support a substantive due process claim. *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).

interest.  Substantive due process only protects against the arbitrary and oppressive use of government power that "shocks the conscience." *Daniels v. Williams*, 474 U.S. 327, 331 (1986); *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998).  Even official conduct actionable under tort law does not give rise to a substantive due process claim unless it is so "'brutal' and 'offensive' that it [does] not comport with traditional ideas of fair play and decency." *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957).  Van de Velde cannot satisfy this standard.

As Van de Velde alleges, after he already had been "effectively identified" by the media as a suspect, the Yale Defendants cancelled his classes and announced that, while Yale presumed he was innocent, the New Haven police had identified him as a suspect in the Jovin murder.  Thereafter, Yale also made a concerted effort to solve the crime. *See supra* at 3-4.  Such actions, even if based on erroneous evidence as to Van de Velde's connection to the Jovin murder, do not shock the conscience.  As the Second Circuit recently noted, "no court has ever held a government official liable for denying substantive due process by issuing press releases or making public statements." *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008).  In *Benzman*, the Court upheld the dismissal of a substantive due process claim where it was alleged that the defendant knowingly issued a false statement that the air near the World Trade Center was safe to breathe shortly after September 11.  Given that holding, the Yale Defendants' conduct cannot be held to shock the conscience. *Id.* at 127 (noting that viable substantive due process claims rarely can be asserted against officials, facing unique circumstances, who must "make operational decisions in a context where they are were subject to competing considerations").[9]  Van de Velde's substantive due process claim must be dismissed.

---

[9] *See also County of Sacramento*, 523 U.S. at 854-55 (high-speed chase that killed escaping motorcyclist's passenger did not shock conscience, even if police recklessly disregarded risk of accident); *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197-203 (1989) (where father beat his child to point of brain damage, it did not shock conscience for county staff

### III.    VAN DE VELDE FAILS TO STATE AN EQUAL PROTECTION CLAIM.

Van de Velde alleges that the defendants denied him equal protection because there was no rational basis for identifying him while failing to identify the rest of the "pool of suspects." ¶ 100.  As the Court has recognized, Ruling at 3, Van de Velde purports to state a claim for a "class of one" equal protection violation.  The Second Circuit has required a class-of-one plaintiff to allege (1) that he was treated differently than others similarly situated, (2) that this selective treatment was intentional, and (3) that the "selective treatment was based on impermissible considerations such as . . . malicious or bad faith intent to injure a person." *Giordano v. City of New York*, 274 F.3d 740, 750-51 (2d Cir. 2001) (internal quotation marks and citation omitted).  Van de Velde cannot satisfy these requirements.

First, Van de Velde fails to allege that the Yale Defendants acted with an impermissible motive.  In past briefing, the parties have joined issue as to whether this "malice" requirement remains in effect after *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam).  *See* Yale 12(b)(6) Br. at 23-26.  *Olech* did not expressly eliminate the malice requirement—as Justice Breyer noted, 528 U.S. at 565 (Breyer, J., concurring), the requirement was not at issue because the *Olech* plaintiff had pleaded and proved malice.  It did note, however, that a plaintiff could proceed with a class-of-one claim if state action was "irrational and wholly arbitrary."  *Id.* at 565; *see Engquist v. Oregon Dep't of Agric.*, No. 07-474, slip. op. at 9 (U.S. June 9, 2008) (describing *Olech* as holding that complaint stated claim where it alleged differential treatment without rational basis).  *Olech* thus left the role of motive unclear, *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000), and the Second Circuit still has not resolved this issue, *see Bizzarro*

---

not to take custody of child even when informed child was being abused); *cf. Adams v. Adkins*, 1998 WL 111632 (N.D. Ill. Mar. 6, 1998) (in emotional distress context, it was not "extreme and outrageous" for police to identify plaintiff as robbery suspect, even where they had arrested another individual and knew of evidence exonerating plaintiff).

*v. Miranda*, 394 F.3d 82, 88 (2d Cir. 2005).  The Yale Defendants stand on their previous arguments that *Olech* did *not* eliminate the malice requirement.  *See Bryan v. City of Madison*, 213 F.3d 267, 277 n.17 (5th Cir. 2000); *Hilton*, 209 F.3d at 1008.  *But see Padilla v. Harris*, 2002 WL 750856 (D. Conn. Apr. 24, 2002) (declining to decide issue but allowing class-of-one complaint lacking malice allegation to survive motion to dismiss).  Any other rule would transform almost any government decision into a constitutional claim, as Justice Breyer implicitly recognized. *Olech*, 528 U.S. at 565 (Breyer, J., concurring) (noting that the decision did not "transform many ordinary violations of city or state law" into constitutional claims because the plaintiff, in fact, had proved illegitimate animus).

Here, Van de Velde alleges only that the defendants treated him differently from other suspects and that there was no rational basis for this treatment, ¶ 100, allegations that do not suffice to show malice. *Zahra v. Town of Southold*, 48 F.3d 674, 684 (2d Cir. 1995).  Moreover, the facts alleged in the Complaint demonstrate that the Yale Defendants did not maliciously identify Van de Velde as a suspect.  According to the Complaint, Yale identified Van de Velde in response to inquiries about the cancellation of his spring classes.  ¶ 92; Exh. A.  This does not reflect any impermissible motive; Van de Velde's equal protection claim must be dismissed.

Second, even if *Olech* did eliminate the "malice" requirement, a class-of-one plaintiff still must allege that there was no rational basis for the defendants' actions.  *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  Under rational-basis review, the court will uphold a decision "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 319-20 (1993) (quotation omitted).  The burden falls upon the party challenging the classification "'to negative *every conceivable basis* which might support it.'" *Id.* at 320 (emphasis added) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).  Indeed, a court may

dismiss an equal protection claim on a motion to dismiss if it finds even one reason that justifies the difference in treatment. *E.g., Weinstein v. Albright*, 261 F.3d 127, 139-42 (2d Cir. 2001); *Connolly v. McCall*, 254 F.3d 36, 42-43 (2d Cir. 2001) (per curiam) (noting that under rationality review, "it can be appropriate to dismiss an equal protection challenge on the pleadings and prior to discovery"); *Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir. 1999) (affirming 12(b)(6) dismissal where appellees identified a rational basis for the statute).

Here, Van de Velde's Complaint itself identifies rational reasons why the Yale Defendants identified Van de Velde as a suspect. According to the Complaint, Yale identified Van de Velde in response to repeated inquiries about why it had cancelled his classes. ¶ 92. Further, Van de Velde notes that, before January 11, 1999, he *already* had been identified as the "prime" suspect in the case, ¶ 72, and that the police specifically had asked the public to come forward with information about him, ¶ 75. Van de Velde thus has alleged facts demonstrating that the Yale Defendants had legitimate reasons for identifying him in their January 11 statement. The statement cannot violate the Equal Protection Clause. *See Zavatsky v. Anderson*, 130 F. Supp. 2d 349, 357 (D. Conn. 2001) ("A complaint's conclusory assertion that [a classification] is 'without rational basis' is insufficient to overcome [the presumption of rationality] where the justification for the policy is readily apparent.") (quotation omitted).

Third, Van de Velde's Complaint does not even establish differential treatment. In a class-of-one claim, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be *extremely high*." *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) (emphasis added); *see id.* at 105 (holding that comparators must be "*prima facie* identical"). As the Court recognized, Van de Velde's First Amended Complaint failed this standard, for he had not alleged that there were any other suspects of whom the Yale Defendants were even aware, much less that there were other suspects on Yale's faculty whose classes it did

not cancel and whom it did not identify.  Ruling at 4.[10]  His Second Amended Complaint suffers

the same flaw.  Absent an allegation that the Yale Defendants were even in a position to treat

"*prima facie* identical" suspects differently, Van de Velde's equal protection claim must fail.

## IV.    VAN DE VELDE FAILS TO STATE A PRIVACY CLAIM.

Van de Velde alleges that the defendants violated his right to privacy under the Fourth

and Fourteenth Amendments.  ¶ 176(b).  The Fourth Amendment only protects against invasions

of privacy in the form of governmental "searches and seizures," *County of Sacramento*, 523 U.S.

at 843, so the Court should dismiss his Fourth Amendment privacy claim for the same reasons

that it should dismiss his claims alleging unreasonable searches and seizures.  *See infra* Part V.

Van de Velde's Fourteenth Amendment privacy claims similarly require dismissal.  The

Fourteenth Amendment protects two different types of privacy interests.  First, it safeguards a

right to autonomy, the "interest in independence in making certain kinds of important decisions,"

*Whalen v. Roe*, 429 U.S. 589, 599-600 (1977), on "'matters relating to marriage, procreation,

contraception, family relationships, and child rearing and education,'" *Barry v. City of New York*,

712 F.2d 1554, 1559 (2d Cir. 1983) (quoting *Paul*, 424 U.S. at 713).  Van de Velde does not

allege—nor could he—that the defendants restricted his ability to make important life choices

about these matters, so he fails to state an autonomy claim.

Second, the Fourteenth Amendment protects confidentiality, the "individual interest in

avoiding disclosure of personal matters."  *Whalen*, 429 U.S. at 599-600.  This right extends only

to "highly personal matters representing the most intimate aspects of human affairs."  *Eagle v.

Morgan*, 88 F.3d 620, 625 (8th Cir. 1996).  The Second Circuit has found a right to

nondisclosure only with respect to medical information, *Doe v. City of New York*, 15 F.3d 264,

---

[10] Nor does he allege that there were other Yale faculty members who served as Jovin's advisor,
saw her on the day she died, or lived near where she was found.

267 (2d Cir. 1994), information regarding sexual matters, *Powell v. Schriver*, 175 F.3d 107, 111

(2d Cir. 1999), and, in some situations, financial information, *Barry*, 712 F.2d at 1559-64.

Courts have refused to extend the right to confidentiality beyond these contexts.  *Vega-Rodriguez*

*v. Puerto Rico Tel. Co.*, 110 F.3d 174, 183 (1st Cir. 1997) (noting the right to privacy has "not

extended beyond prohibiting profligate disclosure of medical, financial, and other intimately

personal data"); *see also Paul*, 424 U.S. at 712-14 (disclosure of an arrest); *Stoianoff v. Comm'r*

*of Motor Vehicles*, 107 F. Supp. 2d 439, 447 (S.D.N.Y. 2000) (social security number), *aff'd*, 12

Fed. Appx. 33 (2d Cir. 2001); *Spetalieri v. Kavanaugh*, 36 F. Supp. 2d 92, 108-109 (N.D.N.Y.

1998) (taped racially derogatory comments).

　　　As this Court has recognized, the right to confidentiality does *not* extend to one's status

as a suspect in a criminal investigation.  Ruling at 4.  In *Gonzalez v. Leonard*, 497 F. Supp. 1058

(D. Conn. 1980), the Court considered a claim that law enforcement invaded the plaintiff's

privacy by distributing false information about him.  The Court rejected this argument, reading

*Paul* to hold that the right to privacy "does not extend to the protection of an individual's

reputation from unfavorable publicity, prompted by the actions of law enforcement officials,

which falsely places him in a bad light." *Id.* at 1070; *see also Baker v. Howard*, 419 F.2d 376,

377 (9th Cir. 1969) (per curiam) (finding no violation of right to privacy where police suggested

the plaintiff had committed a crime, even though they already had concluded that he had not

done so).  These cases thus support the basic principle that law enforcement should not be held

liable for releasing information about an ongoing criminal investigation.  *See supra* Section I.C.

　　　Here, the Yale Defendants disclosed that Van de Velde was a suspect in a murder

investigation.  But Van de Velde does *not* have a right to confidentiality in this information.

Status as a suspect is not a highly personal interest analogous to health, sexual preference, or

financial status.  To the contrary, this information is more similar to an arrest, or publication of a

list of sex offenders, matters that deal not with personal information about the individual, but with criminal investigation or prosecution. As established in *Paul*, *Gonzalez*, and *Baker*, even if the defendants knew that Van de Velde did not commit the crime (which they certainly did not know here), they did not violate any constitutional right to privacy by stating that he was a suspect in the crime.

## V.    VAN DE VELDE FAILS TO STATE A FOURTH AMENDMENT CLAIM.

Van de Velde again alleges that the defendants violated his Fourth Amendment right to be free from "unreasonable searches and seizures." However he now presents that claim—either as a traditional Fourth Amendment claim, or under a "constructive arrest" theory that this Court already has rejected—he has alleged no facts that would entitle him to recovery.

### A.    The Complaint Alleges No Unreasonable Searches.

To state a claim under the Fourth Amendment, a plaintiff must allege that he has a reasonable expectation of privacy in the place searched. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Searches conducted with an individual's consent, however, are necessarily reasonable and do not violate the Amendment. *E.g.*, *Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

Van de Velde's Complaint again identifies three searches: (1) the search of his vehicle, ¶ 64; (2) the collection of his DNA sample, ¶ 145; and (3) the metal detector operators' search, ¶ 153. Van de Velde pleads that the search of his car and the collection of his DNA sample were consensual, ¶¶ 64, 145, so these searches were reasonable. *Schneckloth*, 412 U.S. at 219. As to the metal detector search, Van de Velde does not and cannot allege that he had any expectation of privacy in New Haven public streets. *E.g.*, *California v. Greenwood*, 486 U.S. 35, 40 (1988) (no reasonable expectation of privacy in curbside trash); *United States v. Williams*, 219 F. Supp. 2d 346, 360 (W.D.N.Y. 2002) ("There is no expectation of privacy in a driveway that is exposed

to the public."); *Rodriguez v. United States*, 878 F. Supp. 20, 24 (S.D.N.Y. 1995) ("[Defendant] had no reasonable expectation of privacy on the public street."). No search was improper.

**B.    The Complaint Fails to Allege a Seizure Under the Fourth Amendment.**

A Fourth Amendment seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "[M]ere police questioning does not constitute a seizure," so long as the individual is free to leave. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen . . . ."); *see also United States v. Lee*, 916 F.2d 814, 819 (2d Cir. 1990) ("Certainly, a police officer is free to approach a person in public and ask a few questions; such conduct, without more, does not constitute a seizure."). As with searches, consent to police questioning does not offend the Fourth Amendment. *See, e.g., Bostick*, 501 U.S. at 439; *Mendenhall*, 446 U.S. at 557-58.

In his Complaint, Van de Velde identifies two potential seizures: (1) his December 8, 1998 interview with the police, ¶¶ 61-65, and (2) his conversation with a Yale official that he believes was conducted on behalf of the New Haven police, ¶¶ 108-15. As to the former, Van de Velde emphasizes that he "voluntarily submitted to this interrogation" and "voluntarily answered every question put to him." ¶¶ 63, 65. The "interrogation" thus was not a seizure. *See Bostick*, 501 U.S. at 439. Similarly, his interview with a Yale official does not constitute a seizure; even assuming that this interview was on behalf of the police, Van de Velde does not allege that he did not feel free to leave the meeting or that his liberty was in any way restrained. ¶¶ 108-15. For these reasons, Van de Velde fails to allege a seizure or to state a Fourth Amendment claim.

C.    Van de Velde Has No "Constructive Arrest" or "Name Seizure" Claim.

While conceding that no defendant actually committed an unconstitutional search or seizure, Van de Velde previously has argued that the Yale Defendants "constructively arrested" him by "seizing his name" and "irreparably smear[ing] his good reputation." Opp. at 6, 23; *see id.* at 22-25. But he also has conceded—as he must—that mere reputational harm does not implicate § 1983. *Id.* at 21 (citing, *inter alia, Paul,* 424 U.S. at 701); *see Siegert,* at 233-34. Van de Velde thus cannot bootstrap his reputational damages into a Fourth Amendment claim.

Moreover, Van de Velde's past arguments in this regard misconstrue Second Circuit authority. Opp. at 16-19, 23-24 (citing *Caldarola v. County of Westchester,* 343 F.3d 570 (2d Cir. 2003); *Lauro v. Charles,* 219 F.3d 202 (2d Cir. 2000); *Ayeni v. Mottola,* 35 F.3d 680 (2d Cir. 1994)). As the Court has recognized, these authorities stand only for the uncontroversial proposition that the Fourth Amendment shields arrestees from police conduct that unreasonably aggravates the intrusiveness of an *actual* arrest. Ruling at 6 n.4. These cases involved the scope of *actual* searches and seizures, not "constructive arrests" and "name seizures." While the Fourth Amendment may cover seizures of "intangibles" such as video images, [11] no case covers truthful statements to the press identifying a suspect. Indeed, the Second Circuit has held that statements to the press regarding an arrestee do not constitute a Fourth Amendment seizure. *Cook v. Apple,* 145 Fed. Appx. 700, 701 (2d Cir. 2005) (summary order) ("Post-arrest oral descriptions of a suspect's arrest and even immaterial, extraneous information related to

---

[11] *See Ayeni,* 35 F.3d at 686 (police exceeded scope of search warrant by bringing news crew into home without court permission or legitimate purpose); *Lauro,* 219 F.3d at 212-13 (police exacerbated otherwise lawful seizure by taking arrestee on televised, staged perp walk, but *expressly* declining to rule that videotaping itself was seizure); *Caldarola,* 343 F.3d at 576 (upholding videotaping of actual arrest because it was not staged and had legitimate purpose); *Olivia v. Town of Woodbury,* 281 F. Supp. 2d 674, 686-87 (S.D.N.Y. 2003) (officer's providing ID card of arrestee for use by newspapers in reporting on arrest was lawful).

plaintiff's eccentricities which serve no useful law enforcement purpose are unlike 'perp walks' or media ride-alongs.") (citations omitted); *id.* ("An oral description given by an office to the media does not seize a suspect's image, as a photograph might be understood to do.").

Van de Velde's argument, if he were to repeat it and if the Court were to accept it, threatens to make *any* public statement regarding a criminal suspect, by the police or cooperating private parties, a constitutionally cognizable "arrest." No case or policy consideration supports such an expansion of the Fourth Amendment. *See Paul*, 424 U.S. at 698-99 ("It is hard to perceive any logical stopping place to such a line of reasoning.").

## VI.    VAN DE VELDE HAS NO CONNECTICUT CONSTITUTIONAL CLAIMS.

In the final paragraph of Count One, Van de Velde alleges that the defendants violated his rights under the Constitution of the State of Connecticut. ¶ 177. In briefing on the Yale Defendants' first motion to dismiss, he disclaimed these allegations, no doubt aware that they are not cognizable under § 1983. Opp. at 4 n.3; *see also Powers v. Coe*, 728 F.2d 97, 105 (2d Cir. 1984) ("It is axiomatic that violations of state law alone are insufficient to state a claim for section 1983 relief."); *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) ("[A] violation of state law alone does not give rise to a federal cause of action under § 1983."). The Yale Defendants assume that their inclusion in the Second Amended Complaint was an oversight; in any event, the Connecticut constitutional claims must be dismissed. [12]

## VII.    THE COURT SHOULD DISMISS VAN DE VELDE'S COMMON-LAW CLAIMS.

Because Van de Velde has pleaded diversity jurisdiction, the Court must address the sufficiency of his state-law claims for false light and intentional infliction of emotional distress.

---

[12] Further, the rights guaranteed by the Connecticut Constitution are coextensive with their federal counterparts. *See* Yale 12(b)(6) Br. at 33-34. As a result, even if Van de Velde could replead these allegations as separate counts, he would fail to state a claim for the same reasons he cannot state a claim under the United States Constitution.

*See Pilarczyk v. Morrison-Knudsen Corp.*, 965 F. Supp. 311, 321 n.9 (N.D.N.Y. 1997) (addressing sufficiency of state-law claims on motion to dismiss, even though federal law claims had already been dismissed, because plaintiff had properly alleged diversity jurisdiction), *aff'd*, 162 F.3d 1148 (2d Cir. 1998). The law on these claims remains unchanged from that argued in the Yale Defendants' original motion to dismiss, and under the facts as Van de Velde pleads them (and which he cannot deny), he again fails to state any claim against the Yale Defendants. Accordingly, the Court should dismiss Van de Velde's common-law claims with prejudice.

### A.  Van de Velde Cannot State a Claim for False Light Invasion of Privacy.

In *Goodrich v. Waterbury Republican-American, Inc.*, 448 A.2d 1317 (Conn. 1982), the Connecticut Supreme Court recognized a tort for "false light." *Id.* at 1328-29. False light remedies emotional and mental suffering from "interfere[nce] with the right of the plaintiff to be let alone." *Id.* at 1329 & n.19 (internal quotation marks and citations omitted). The "essence" of a false light claim is similar to that of defamation: The published material must be false. *See id.* at 1330. A plaintiff must show that (1) the defendant placed him a false light that would be "highly offensive to a reasonable person," and (2) the defendant acted with knowledge or reckless disregard of the falsity of the publicized matter and the false light in which the public would view the plaintiff. *Id.* Van de Velde cannot satisfy these requirements.

### 1.  The Defendants Made No False Statements About Van de Velde.

Van de Velde cannot sustain a claim for false light unless he can show that the defendants made false statements about him. *Jonap v. Silver*, 474 A.2d 800, 806 (Conn. App. Ct. 1984) ("It is essential to this theory of liability that the material published concerning the plaintiff *is not true*.") (emphasis added). As described above, *see supra* Section I.A, Van de Velde cannot sustain this burden. The Yale Defendants identified him as a suspect, and he was in fact a suspect. Although Van de Velde has argued that the Yale Defendants publicly branded him as

Jovin's murderer, his Complaint establishes that they did no such thing.  On the contrary, Yale expressly stated its presumption that he was innocent.  *See* ¶ 92; Exh. A (Yale press release).

That Van de Velde believes he should not have been a suspect in the first place is irrelevant as a matter of law to a claim of false light.  In *Strutner v. Dispatch Printing Co.*, 442 N.E.2d 129 (Ohio Ct. App. 1982), the plaintiff sued a publisher for false light after its newspaper identified him as the father of a man questioned as a suspect in a brutal rape and murder of a young girl.  Although sympathetic to the plaintiff's anguish, "especially . . . if the son be erroneously suspected," the court held as a matter of law that there could be no false light claim against the publisher because "there are no allegations of falsity as to salient matters.  [Plaintiff's son] was a suspect questioned by the police . . . . [and] Plaintiff is [his] father." *Id.* at 134-35.  The situation here is similar:  As much as Van de Velde believes he has been wrongly suspected, he *was* among the pool of suspects identified by the police.  That fact is inescapable, dooming any false light claim against the Yale Defendants.  *See Goodrich*, 448 A.2d at 1330-31.

### 2. Van de Velde's Allegations Negate the Required Element of Malice.

A false light plaintiff also must allege facts showing that the defendants acted with knowledge or reckless disregard of the falsity of the publications at issue.  *Goodrich*, 448 A.2d at 1330.  This standard derives from *Time, Inc. v. Hill*, 385 U.S. 374 (1967), where the Supreme Court held that, on matters of public interest, a false light plaintiff must show "actual malice." *Id.* at 387-88.  In Connecticut, this standard applies to *all* false light claims regarding matters of public concern, even where the plaintiff is not a public person.  *Goodrich*, 448 A.2d at 1329; *Reaves v. Hartford Courant Co.*, 2003 WL 1090699, at *7 (Conn. Super. Ct. Feb. 28, 2003).

In his Complaint, Van de Velde offers the conclusory allegation that the Yale Defendants acted with knowledge or reckless disregard of "the falsity of the matters published"—even though it was undeniably true that he was a murder suspect.  ¶ 180.  Even accepting this bald

allegation of "falsity," however, Van de Velde's other allegations defeat this claim. Van de Velde specifically alleges that the Yale Defendants presumed Van de Velde innocent, hired a private investigator, and offered an increased reward for information about the crime—conduct demonstrating that, far from disregarding the truth as to Van de Velde's guilt or innocence, the Yale Defendants were keenly intent on discovering the truth. ¶¶ 98, 128-32. As alleged by Van de Velde, the police demonstrated a similar commitment to continuing the investigation and uncovering any new information about the murder. *See supra* at 4-5. These allegations, which are binding upon Van de Velde, *Soo Line*, 125 F.3d at 483, reflect not malice or recklessness, but rather a considered regard by the defendants for Van de Velde's possible innocence.

Because the defendants made no false statements and because Van de Velde cannot allege that the defendants acted with actual malice, his false light claim must be dismissed.

**B.      Van de Velde Cannot State a Claim Against the Yale Defendants for Intentional Infliction of Emotional Distress.**

To make out a claim for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant intended to inflict emotional distress, or knew or should have known that his conduct would likely cause emotional distress; (2) the defendant's conduct was "extreme and outrageous"; (3) the defendant's conduct caused the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was "severe." *Appleton v. Board of Educ.*, 757 A.2d 1059, 1062 (Conn. 2000). Such claims are disfavored under Connecticut law. *See Whitaker v. Haynes Constr. Co.*, 167 F. Supp. 2d 251, 255 (D. Conn. 2001); *see also Grigorenko v. Pauls*, 297 F. Supp. 2d 446, 448 (D. Conn. 2003) ("Intentional infliction of emotional distress claims are often pleaded but rarely get very far . . . ."). As a result, a plaintiff making such a claim under Connecticut law not only must allege each of the above elements, "but also must allege facts

sufficient to support them." *Whitaker*, 167 F. Supp. 2d at 254; *see also Goldstein*, 516 F.3d at 58

(requiring pleading of facts sufficient to make prospect of relief plausible, not speculative).

Van de Velde fails to state a claim against the Yale Defendants because his allegations

establish, as a matter of law, that their conduct was not "extreme and outrageous." In addition,

he has not pleaded sufficient facts to make his claims for emotional distress plausible.

### 1.     The Yale Defendants' Alleged Conduct Was Not Outrageous.

In keeping with the disfavor shown to emotional distress claims, "[t]he standard in

Connecticut to demonstrate extreme and outrageous conduct is stringent." *Huff v. West Haven*

*Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998). A plaintiff must show that the

defendants' conduct "exceed[s] all bounds usually tolerated by decent society." *DeLaurentis v.*

*City of New Haven*, 597 A.2d 807, 828 (Conn. 1991). Indeed,

> [l]iability for intentional infliction of emotional distress has been found *only*
> *where the conduct has been so outrageous in character, and so extreme in degree,*
> *as to go beyond all possible bounds of decency, and to be regarded as atrocious,*
> *and utterly intolerable in a civilized community.* Generally, the case is one in
> which the recitation of the facts to an average member of the community would
> arouse his resentment against the actor, and lead him to exclaim, Outrageous!

*Morrissey v. Yale Univ.*, 844 A.2d 853, 854 (Conn. 2004) (emphasis added) (internal quotation

marks and citation omitted). Accordingly, a plaintiff must allege "specifically how the

challenged actions were done in a manner that was so egregious or oppressive as to rise to the

level of extreme and outrageous conduct." *Franco v. Yale Univ.*, 161 F. Supp. 2d 133, 142 (D.

Conn. 2001). Moreover, the question of outrageousness is for the *court*. Only where reasonable

minds disagree can a claim go to the jury. *Appleton*, 757 A.2d at 1062; *see Tracy v. New Milford*

*Public Schs.*, 922 A.2d 280, 286-87 (Conn. App. Ct. 2007) (noting court's "gatekeeping"

function and finding that complaint failed to state claim because alleged conduct—initiating

disciplinary proceedings without proper investigation—was not outrageous as a matter of law).

Here, Van de Velde offers only the utterly conclusory allegation that "[t]he actions of the defendants with respect to the plaintiff . . . were extreme and outrageous." ¶ 184. At no point does he specify how their conduct was "utterly intolerable in a civilized community," leaving the Court to fill in the blanks. For that reason alone, the Court should dismiss his claim. *Franco*, 161 F. Supp. 2d at 142; *see Goldstein*, 516 F.3d at 58.

Even if the Court were to construct the strongest possible claim on Van de Velde's behalf, it still could not find factual allegations to support a colorable emotional distress claim. Courts expressly have found that publicly identifying a criminal suspect is not "extreme and outrageous," even where the speaker is aware of the plaintiff's innocence. In *Adams v. Adkins*, 1998 WL 111632 (N.D. Ill. Mar. 6, 1998), the plaintiff was arrested for armed robbery even though fingerprint evidence excluded him as a suspect and he could prove he was elsewhere during the crime. The plaintiff was released and all charges were dismissed, but one month later (and four days after another person was arrested for the robbery), a local newspaper reported that the FBI still suspected the plaintiff. He sued the police and FBI agents, alleging that their wrongful identification of him as a suspect intentionally caused him emotional distress. The court dismissed the suit, holding that the assertion that defendants "somehow had a duty to affirmatively clear [plaintiff's] name is completely without merit." *Id.* at *6. Even accepting that the defendants had information exonerating the plaintiff, the court held further that "to suggest that their inaction was outrageous enough to base an [emotional distress] claim on it borders on frivolity." *Id.* Similarly, in *Clark v. Township of Falls*, 890 F.2d 611 (3d Cir. 1989), the court found no claim for intentional infliction of emotional distress where the defendants falsely reported the plaintiff to the district attorney for embezzling funds and publicly announced that he had violated state campaign laws. The court held as a matter of law that the defendants' actions, "while deplorable, [did] not constitute extreme and outrageous conduct." *Id.* at 624.

More recently, in *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210 (10th Cir. 2007), the Tenth Circuit held that the public identification of suspects in a sexual assault did not give rise to an emotional distress claim, even where the suspects were later exonerated. Noting that "[c]ourts regularly hold that upsetting but true news reports do not constitute conduct so extreme and outrageous as to permit recovery," *id.* at 1222, the court held that accurate reporting "usually does not give rise to an action for intentional infliction of emotional distress," *id.* at 1225; *see Wigfall v. Society Nat'l Bank*, 669 N.E.2d 313, 318-19 (Ohio Ct. App. 1995) (no claim for intentional infliction where plaintiff was misidentified as suspect in robbery). Connecticut trial courts similarly have recognized that, where a defendant believes its reports are true, an emotional distress claim fails as matter of law. *See, e.g., Snyder v. Cedar*, 2006 WL 539130, at *20-21 (Conn. Super. Ct. Feb. 16, 2006) (rejecting emotional distress claim where plaintiff's ex-wife encouraged her daughter to file sexual abuse charges against him, holding that ex-wife's actions were not outrageous given her honest belief in her daughter's statements).

Under these precedents, Van de Velde cannot possibly state a claim. Taking his Complaint in its best light, Van de Velde alleges that the Yale Defendants publicly identified Van de Velde as a suspect even though they knew there was no evidence linking him to the crime and that DNA evidence could exculpate him. But as *Adams* makes clear, the defendants had no duty to clear Van de Velde's name. 1998 WL 111632 at *6. And if the *Clark* defendants could defeat an emotional distress claim for their public vilification of the plaintiff, the Yale Defendants' statements, making clear Van de Velde's presumed innocence, cannot be considered "extreme and outrageous." Rather, the case is analogous to *Alvarado*, in that Yale made an "upsetting but true" public statement that Van de Velde was a suspect, or to *Snyder*, in that Yale stated its sincere (and correct) belief that Van de Velde was a suspect. As a matter of law, Yale's statement was not outrageous, and the Court should dismiss Van de Velde's Third Count.

### 2.     Van de Velde's Emotional Distress Claim Is Speculative.

Finally, in light of Connecticut's stringent requirements for emotional distress claims and the new "plausibility" standard for pleadings in this Circuit, *see supra* at 8-9, the conclusory nature of Van de Velde's allegations renders his claim insufficient as a matter of law. Van de Velde must offer facts sufficient to make his claim for relief more than merely speculative, *Goldstein*, 516 F. 3d at 58; *Iqbal*, 490 F.3d at 157-58, and he must specifically support each element of the tort to overcome its disfavored status under Connecticut law, *Whitaker*, 167 F. Supp. 2d at 254. But Van de Velde makes no effort to identify how the Yale Defendants allegedly exceeded all bounds of decency in a civilized community. Nor does he offer any facts to support his conclusory allegation that he has suffered severe emotional distress. ¶ 185. His cause of action is speculative and should be dismissed. *Goldstein*, 516 F.3d at 58.

### CONCLUSION

For the foregoing reasons, the Court should dismiss Van de Velde's Second Amended Complaint with prejudice.

Dated: June 20, 2008
       New Haven, Connecticut

Respectfully submitted,

WIGGIN and DANA LLP

By:     _____
       Aaron S. Bayer (ct 12725)
       Kenneth D. Heath (ct 23659)
       One Century Tower
       P.O. Box 1832
       New Haven, CT 06508-1832
       Tel: (203) 498-4400
       Fax: (203) 782-2889
       E-mail: kheath@wiggin.com

       *Attorneys for Defendants Richard Levin,*
       *Linda Lorimer, Richard Brodhead, Thomas*
       *Conroy, and James Perrotti*

\490\177\716584.3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CERTIFICATE OF SERVICE

| | | |
|---|---|---|
| James Van De Velde | ) | Case No. 3:01cv02296 (RNC) |
|           Plaintiff, | ) | |
| | ) | |
| | ) | |
| Melvin Wearing, Brian Sullivan, | ) | |
| Thomas Trocchio, Edwin Kendall, | ) | |
| Estate Of Anthony Dilullo, by Lisa | ) | |
| Bull DiLullo, Legal Representative, John Does, | ) | |
| Richard Brodhead, Thomas Conroy, | ) | |
| and James Perrotti, | ) | |
|           Defendants. | ) | |

      I hereby certify that on June 20, 2008, a copy of foregoing Memorandum in Support of the Yale Defendants' Motion to Dismiss the Second Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      /s/ Kenneth D. Heath
      Kenneth D. Heath (ct23659)
      kheath@wiggin.com
      Wiggin and Dana LLP
      One Century Tower
      P.O. Box 1832
      New Haven, CT 06508
      (203) 498-4400
      (203) 782-2889 (fax)