**EXHIBIT B**



Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.))

Page 1

**C**
Adams v. Adkins
N.D.Ill.,1998.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
Gregory C. ADAMS, Plaintiff,
v.
Dennis ADKINS, et al., Defendants.
No. 97 C 5981.

March 6, 1998.

### MEMORANDUM OPINION AND ORDER

KOCORAS, J.
*1 This matter comes before the Court on Defendants' motions to dismiss Plaintiffs' complaint. For the following reasons, the motions are granted with respect to Counts 3, 6-8, and 15-20, but denied with respect to Counts 1, 2, 4, 5, and 9-14.

### BACKGROUND

The following facts are gleaned from Plaintiff's lengthy complaint, the allegations of which must be assumed true for the purposes of this motion.

The cast of characters in this case includes the following persons. Plaintiff Gregory C. Adams ("Adams") is a resident of Lake County. Defendants Dennis Adkins and Scott Kotrba (collectively "the Police Defendants") were employed as police officers with, while Defendant Richard Welton is the mayor of, Defendant Village of Gurnee. Defendants William Monroe and Stuart Fronk (collectively "the FBI Defendants") were employed as members of the U.S. Federal Bureau of Investigation. Defendants Timothy Foote, Kevin Roth, Barbara Bock, Douglas Bock, and Kathy Granahan were employees of Defendant Six Flags Great America (collectively "the Six Flags Defendants").

On August 19, 1996, a bank robbery occurred at the Warren-Newport Credit Union in Gurnee. Three days after the robbery, a local newspaper, the News Sun, published a photo of the armed robber taken by a security camera in the credit union. The photo depicted a black male with yellow-tinted glasses.

On August 22, 1996, Defendant Foote, who was the Head of Internal Security at Six Flags, called Defendant Kotrba of the Gurnee Police Department to inform him that he had received information from several Six Flags employees that the photo printed in the News Sun beared a strong resemblance to another Six Flags employee-Plaintiff Adams. Foote also provided Kotrba an employee photograph of Adams, though this photo had been taken when Adams had more hair. Kotrba subsequently interviewed, on August 26, the Six Flags employees that had identified Adams. Defendants Roth, Barbara Bock, Douglas Bock, and Granahan all told Kotrba that, in their opinions, the picture in the News Sun looked like Adams.

Some of these Six Flags employees also related to Kotrba their recent observations of Adams' behavior at work. For example, Barbara Bock told Kotrba that she had seen Adams on August 23, when Adams came to pick up his pay check, and that she had noticed Adams had cut his long hair. Douglas Bock, the immediate supervisor of Adams, informed Kotrba that Adams had recently been late for work and missed several days. In addition, Roth told Kotrba that, on August 19, he had received a call from a security guard at Six Flags telling him that Adams' boss from his other employment was there looking for him. Finally, Granahan related that Adams had apparently borrowed $240 from a co-employee and, to her knowledge, had never repaid the debt.

Gurnee police later conducted a photo line-up involving six photographs; Adams contends that he was the only person wearing glasses, and the only person of his age and facial features, among the six photos. On August 28, 1996, Adkins and Kotrba aided in the procurement of an (allegedly invalid) arrest warrant, which was issued by Magistrate Judge Rebecca R. Pallmeyer. Adams asserts that this warrant was not signed by Judge Pall-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.))**

Page 2

meyer. In support of his contention that the arrest warrant was invalid, Adams notes that the law enforcement officials failed to take account of the following exculpatory evidence: that fingerprint evidence excluded Adams as the suspect; that Adams had an alibi of being at the Lake County Courthouse as well as at his probation officer's office at the time of the robbery; and that the photo line-up was suggestive. Defendant Monroe signed the criminal complaint against Adams, charging him with the bank robbery.

*2 On August 29, 1996, Adams was arrested by Defendants Adkins, Kotrba, Monroe and Fronk. Adams was placed into the custody of the Metropolitan Correctional Center. The Police and FBI Defendants later became aware of exculpatory evidence indicating that Adams had not committed the robbery. Based on this evidence, on September 4, 1996, the United States' Attorney moved to dismiss the complaint against Adams. This motion was granted, Adams was released from prison, and the prosecution was wholly terminated in Adams' favor.

From August 31 through September 5, 1996, several newspaper articles were printed identifying Adams as the suspect in the Warren-Newton Credit Union robbery. On September 17, 1996, the News Sun ran an article about Adams' arrest and how he was ultimately set free. However, on October 22, 1996, a News Sun article indicated that the FBI still considered Adams a suspect despite his release nearly two months earlier. It was not until January 1997 that Gurnee Police Chief Robert Jones stated publicly that Adams was "no longer a person of interest" in the investigation. In fact, a person by the name of Bennie Singleton was arrested on October 18, 1996 and later convicted of the robbery.

Plaintiff Adams has brought two previous complaints against Defendants, each of which were dismissed without prejudice for failing to comply with the Federal Rules of Civil Procedure. Adams now brings his Second Amended Complaint, asserting the following 20 counts against the Defendants:

| Count | Defendant | Claim |
|---|---|---|
| 1 | Adkins | §§ 1983 & 1988 claims for malicious prosecution, false arrest, and false imprisonment. |
| 2 | Adkins | Defamation/Libel/Slander |
| 3 | Adkins | Intentional Infliction of Emotional Distress ("IIED") |
| 4 | Kotrba | §§ 1983 & 1988 claims for malicious prosecution, false arrest, and false imprisonment. |
| 5 | Kotrba | Defamation/Libel/Slander |
| 6 | Kotrba | IIED |
| 7 | Welton | IIED |
| 8 | Village of Gurnee | IIED |
| 9 | Monroe | §§ 1983 & 1988 claim for malicious prosecution |
| 10 | Monroe | §§ 1983 & 1988 claim for false arrest |
| 11 | Monroe | §§ 1983 & 1988 claim for false |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.))**

Page 3

| | | imprisonment |
|----|----------|------------------------------------|
| 12 | Fronk | §§ 1983 & 1988 claim for malicious prosecution |
| 13 | Fronk | §§ 1983 & 1988 claim for false arrest |
| 14 | Fronk | §§ 1983 & 1988 claim for false imprisonment |
| 15 | Foote | Slander |
| 16 | Roth | Slander |
| 17 | B. Bock | Slander |
| 18 | D. Bock | Slander |
| 19 | Granahan | Slander |
| 20 | Six Flags | Slander |

The Police Defendants (including Mayor Welton and the Village) are implicated by Counts 1 through 8; the FBI Defendants are implicated by Counts 9 through 14; and the Six Flags Defendants are implicated by Counts 15 through 20. Each of these groups of defendants have moved to dismiss the respective counts against them, asserting various reasons for why these counts must fail as a matter of law. Before addressing the merits of these motions, however, it is first necessary to set forth the appropriate legal standard.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Defendants must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v. First National Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,*

355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Hartford Fire Insurance Co. v. California,* 509 U.S. 764, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993); *Sherwin Manor Nursing Center, Inc. v. McAuliffe,* 37 F.3d 1216, 1219 (7th Cir.1994), *cert. denied,* 516 U.S. 862, 116 S.Ct. 172, 133 L.Ed.2d 113 (1995). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.), *cert. denied,* 506 U.S. 893, 113 S.Ct. 267, 121 L.Ed.2d 196 (1992).

**\*3** In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court is limited to the allegations contained in the pleadings themselves. Documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. Fed.R.Civ.P. 10(c). In addition, "[d]ocuments that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir.1993). It is with these principles in mind that we turn to the motion before us.

## DISCUSSION

This Court has dismissed, without prejudice, Adams' two previous attempts at filing a complaint in this case,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.))**

Page 4

finding these complaints to be violative of the basic pleading requirements set forth in the Federal Rules of Civil Procedure. The Court specifically found Adams' First Amended Complaint, which consisted of 108 pages and 78 counts, to be an egregious violation of Fed.R.Civ.P. 8(a)(2) and 8(e)(1). *See* Fed.R.Civ.P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); Fed.R.Civ.P. 8(e)(1) (requiring "[e]ach averment of a pleading shall be simple, concise and direct"). Though allowing him to replead his claims, the Court ordered Adams to strictly conform to the Federal Rules of Civil Procedure, and threatened Adams' counsel with sanctions if his pleading irresponsibility was repeated.

The Second Amended Complaint now at issue is Adams' effort to comply with the Court's previous order. This latest edition has been pared down to a mere 20 counts and 49 pages (sarcasm intended). Despite Adams' efforts, Defendants renew their objections to the complaint on the grounds that it still fails to comply with the pleading requirements of the Federal Rules of Civil Procedure. Defendants assert that Adams' Second Amended Complaint continues to contain redundant and duplicative counts, and thus violates the strictures of Fed.R.Civ.P. 8(a) and (e). Citing Seventh Circuit authority, Defendants argue that this Court can and should dismiss this case with prejudice because of Adams' repeated failures to file a sufficient pleading. *See Vicom, Inc. v. Harbridge Merchant Serv., Inc.,* 20 F.3d 771, 776 (7th Cir.1994) ("given the fact that Vicom had already amended its complaint once, we think the District Court should have given more serious consideration to dismissing Vicom's amended complaint with prejudice"); *see also Hartz v. Friedman,* 919 F.2d 469, 471 (7th Cir.1990) ("The District Court might well have dismissed the Plaintiffs' complaint on the grounds that it was an egregious violation of Rule 8(a) of the Federal Rules of Civil Procedure.").

The Court agrees with Defendants that Adams' Second Amended Complaint remains far from a model of exemplary pleading, and serious consideration has been given to dismissing this case with prejudice. Upon such consideration, however, the Court believes that Adams has

presented a complaint which barely clears the bar of adequacy. Adams has made a good-faith, albeit ungainly, effort to comply with our previous orders. The length and complexity of the complaint has been reduced to a manageable level, and the Court is now able to discern what Adams is trying to allege. Though the Second Amended Complaint is still more ponderous and unwieldy than it could be, the interests of justice dictate that we allow this passable pleading to stand. Thus, the Court will proceed to consider the substantive merit of these claims.

I. § 1983 Claims

*4 In Counts 1, 4 and 9 through 14, Adams asserts claims under 42 U.S.C. § 1983 for malicious prosecution, false arrest, and false imprisonment against Adkins, Kotrba, Monroe and Fronk. As their primary opposition to these claims, Defendants assert that, as government officials, they enjoy a qualified immunity which shields them from liability for these claims. Adams disputes whether such qualified immunity is appropriate for these Defendants, and further argues that any consideration of immunity in this case should be undertaken at the summary judgment stage of the case.

"Qualified" (or "good-faith") immunity is an affirmative defense which provides that government officials "are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Seventh Circuit has set forth a two-step approach for analyzing a qualified immunity defense: " 'Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?' " *Forman v. Richmond Police Dept.,* 104 F.3d 950, 957 (7th Cir.1997) (*quoting Kernats v. O'Sullivan,* 35 F.3d 1171, 1176 (7th Cir.1994)). Furthermore, the Supreme Court has erected the following procedural guidelines to be applied when a government official raises the qualified immunity defense:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.))**

Page 5

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. [*See Harlow*, 457 U.S. at 818]. Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts."

*Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). On the present motions to dismiss, therefore, the Court must only consider whether Adams' § 1983 claims assert violations of clearly established law.

The Court finds that the allegations in Adams' complaint could support a violation of a clearly established constitutional principle. It has long been established that an arrest of an individual without probable cause to believe he committed the crime violates that person's Fourth Amendment rights. *See Beck v. Ohio*, 379 U.S. 89, 90-91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Adams has alleged that the Police and FBI Defendants had no probable cause in seeking his arrest, and specifically that they decided to proceed with the arrest despite the existence of exculpatory evidence indicating Adams' innocence. Though it is true that an arrest warrant issued upon probable cause is valid and does not violate the Fourth Amendment, *see Graham v. Conner*, 490 U.S. 386, 389, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), Adams has alleged facts which support his argument that probable cause did not exist in this case-namely, that the police and FBI disregarded exculpatory evidence that would have erased any suspicion as to Adams' complicity in the robbery. The Court understands that not much is required to demonstrate probable cause. *See, e.g., Hughes v. Meyer*, 880 F.2d 967 (7th Cir.1989) (probable cause does not require showing that officer's belief that a crime was committed is more likely true than false); *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir.1991) (identification by a single witness is sufficient to supply probable cause); *Smith v. City of Chicago*, 913 F.2d 469, 473 (7th Cir.1990) (photo identifications suf-

ficient to establish probable cause). However, being constrained on this motion to the allegations of Adams' complaint, the Court is unable to conclude as a matter of law that the Defendants had probable cause in arresting Adams in this case.

*5 Adams has made damning allegations of police and FBI misconduct in this case, charges that this Court takes very seriously. While at this time it remains necessary to allow these claims to develop factually, the Court must remind Adams that law enforcement officials enjoy broad discretion in deciding how to do their jobs. When Adams' § 1983 claims are subjected to the more glaring light of a summary judgment motion, and he can no longer hide behind his pleadings and must proffer evidence in support of his claims, it would seem very possible that the Police and FBI Defendants could qualify for immunity from these claims. At this stage of the game, however, taking all of Adams' allegations as true, the Court cannot determine as a matter of law that these claims are legally precluded. Therefore, Defendants' motions to dismiss are denied as to Counts 1, 4, and 9 through 14.

**II. Defamation/Libel/Slander Claims Against the Police Defendants**

As Counts 2 and 5 of his complaint, Adams asserts that Defendants Adkins and Kotrba have committed the torts of defamation, libel and slander against him. Specifically, Adams alleges that Defendants Adkins and Kotrba verbally accused Adams of having committed the robbery, accused him in writing in their official and unofficial reports, and caused these accusations to be published in the newspapers and the Gurnee police report. The Police Defendants respond by arguing that their speech was protected by a qualified privilege under Illinois law. In addition, the Police Defendants contend that the allegations do not sufficiently provide how it was that the Police Defendants caused the accusations of Adams to be published in the local papers.

The Illinois Supreme Court has recently defined the scope of the qualified privilege as it exists in Illinois defamation law. *See Kuwik v. Starmark Star Mktg. and*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.))**

*Admin., Inc.,* 156 Ill.2d 16, 188 Ill.Dec. 765, 619 N.E.2d 129 (Ill.1993). A privileged communication, even though otherwise potentially defamatory and actionable, is shielded from liability because of the circumstances under which it is made. *Id.* at 133 (*citing Zeinfeld v. Hayes Freight Lines, Inc.,* 41 Ill.2d 345, 243 N.E.2d 217 (1968)). A qualified privilege exists when the following elements are present: (1) the defendant made the statement in good faith; (2) there was a duty or interest to uphold; (3) the statement was limited in scope to that interest; (4) the statement was made at a proper occasion; and (5) publication was made in a proper manner and to appropriate parties only. *Kuwik,* 188 Ill.Dec. 765, 619 N.E.2d at 133 (citations omitted). "[O]nce a defendant establishes a qualified privilege, a plaintiff must prove that the defendant either intentionally published the material while knowing the matter was false, or displayed a reckless disregard as to the matter's falseness." *Kuwik,* 188 Ill.Dec. 765, 619 N.E.2d at 133 (*citing Mittleman v. Witous,* 135 Ill.2d 220, 142 Ill.Dec. 232, 552 N.E.2d 973 (Ill.1989)).

In this case, the Court finds that Adams has pled facts which preclude a finding of qualified privilege at this time. Even if the Police Defendants could demonstrate the elements necessary to invoke a qualified privilege, Adams has alleged in his complaint that Defendants "[k]new that the information [[[they] stated concerning plaintiff was untrue" or "acted in reckless disregard or utter indifference to the truth"-precisely what Adams must prove to overcome an assertion of qualified privilege. Thus, the allegations in Adams' complaint satisfy even the heightened standard of proof which applies when a qualified privilege has been established. Though the Court may ultimately find that the Police Defendants' statements are protected by a qualified privilege as a matter of law, this conclusion is not appropriate on the present motion to dismiss.

**\*6** The Police Defendants alternatively argue that the defamation claims against them cannot stand because the complaint fails to clarify who made the alleged statements which were published in the newspapers. The Court finds this argument unpersuasive for several reasons. First, Adams' defamation, slander and libel claims do not rest on the newspaper articles alone, as the allegations also reference statements made verbally as well as in official and unofficial police reports. Second, the Court is persuaded that Adams has pled sufficient facts to satisfy the pleading requirements regarding these claims; Adams will need discovery to figure out exactly what each defendant said to whom. Third, it is clear that Adams is not relying on a respondeat superior theory to hold the Police Defendants liable for the alleged defamatory statements, and thus Defendants reference to § 10/2-204 of the Local Government Tort Immunity Act, 745 ILCS § 10/2-204, is also unavailing.

Defendants Adkins and Kotrba have failed to persuade the Court that the defamation counts against them are legally deficient in any respect. Therefore, the motions to dismiss are denied as to Counts 2 and 5.

III. Intentional Infliction of Emotional Distress Claims

As Counts 3, 6, 7 and 8, Adams asserts claims for intentional infliction of emotional distress ("IIED") against Defendants Adkins, Kotrba, Welton, and the Village of Gurnee, respectively. Apparently, Adams has alleged that the actions of these individuals in continuing to treat Adams as a suspect in the robbery investigation even after his exoneration provide the predicate for IIED claims in this case. Defendants respond by arguing that Adams has failed to properly allege the necessary elements to support such claims.

In Illinois, the tort of IIED requires the following elements be shown: (1) the conduct complained of must be truly extreme and outrageous; (2) the actor must either intend or know that there is a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *See McGrath v. Fahey,* 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806, 809 (Ill.1988). Furthermore, the conduct must go beyond all bounds of human decency such that no reasonable man could be expected to endure it. *Id.*

In this case, the Court finds that Adams has utterly failed to allege facts supporting the elements of an IIED

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.))**

claim. Adams has not even technically alleged that Defendants' conduct was extreme and outrageous, much less asserted facts to that end. Moreover, Adams' assertion that Mayor Welton and the other defendants somehow had a duty to affirmatively clear Adams' name is completely without merit; to suggest that their inaction was outrageous enough to base an IIED claim on it borders on frivolity. Adams' IIED claims also fail to allege that the Defendants intended or knew that their inaction in clearing Adams' name would cause him severe emotional distress. Finally, Adams has not even alleged that he suffered from emotional distress, much less distress of the severity required to support an IIED claim.

*7 The Court thus finds Adams' IIED claims wholly without merit. Defendant's motions to dismiss Counts 3 and 6-8 are granted.

IV. Slander Claims Against the Six Flag Defendants

Counts 15 through 19 assert that each of the Six Flags Defendant employees-Foote, Roth, Barbara Bock, Douglas Bock, and Granahan-committed the tort of slander against Adams by identifying him as the suspect whose picture appeared in the News Sun. Count 20 asserts a slander claim against Six Flags Great America on the basis of respondeat superior for having ratified the acts of these employees. The Six Flags Defendants now move to dismiss these counts, asserting several bases as to why these claims fail as a matter of law.

It is unnecessary to consider whether Adams has properly alleged the elements of slander, however, because the Court finds the statements made by the Six Flags Defendants to be absolutely privileged from civil prosecution. "In Illinois informal reports to law enforcement officials of suspected criminal activity are protected from liability or discovery by an absolute privilege." *Vantassell-Matin v. Nelson,* 741 F.Supp. 698, 705 (N.D.Ill.1990) (*citing Starnes v. International Harvester Co.,* 184 Ill.App.3d 199, 132 Ill.Dec. 566, 539 N.E.2d 1372, 1374-75 (Ill.App. 4 Dist.1989)); *see also Bradley v. Avis Rental Car System, Inc.,* 902 F.Supp. 814, 820 (N.D.Ill.1995). The public policy behind this privilege is that society wants to encourage citizens to come for-

ward with information concerning possible criminal activity. *Starnes,* 132 Ill.Dec. 566, 539 N.E.2d at 1374. In this case, the Six Flag Defendants are accused of incorrectly informing law enforcement officials that Adams resembled the suspect pictured in the News Sun. In the Court's mind, this type of communication clearly falls within the scope of the absolute privilege. Therefore, since all of the statements ascribed to the Six Flags Defendants are absolutely privileged, Counts 15 through 20 must be dismissed.

### CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted with respect to Counts 3, 6-8, and 15-20, but denied with respect to Counts 1, 2, 4, 5, and 9-14.

N.D.Ill.,1998.
Adams v. Adkins
Not Reported in F.Supp., 1998 WL 111632 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.