# EXHIBIT D

LEXSEE


Cited
As of: Jun 17, 2008

DALE GORDON MEADOR, Plaintiff, vs. NEW TIMES, INC., ET AL., Defendants.

CIV 92-1357 PHX ROS (SLV)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

1995 U.S. Dist. LEXIS 11201

August 2, 1995, Decided

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, newspaper, reporter, and chairman, filed a motion for summary judgment in plaintiff criminal suspect's action for invasion of his right to privacy and intentional infliction of emotional distress relating to an article that was published in the newspaper that referred to plaintiff's involvement in the murders of two children. Defendants also filed a motion for sanctions on the grounds of perjury and fraud.

**OVERVIEW:** Plaintiff, who was incarcerated for unrelated crimes, argued that the article threw a false light on him, accusing him of being a chief suspect in the murders. Plaintiff claimed that he had suffered irreparable injury in that he was assaulted by inmates and was label a child killer. The court granted defendants' motion for summary judgment. The court initially determined that Arizona law applied to the action because Arizona was where the article was published and where the alleged invasion occurred. Plaintiff failed to establish a genuine issue of material fact that defendants committed the tort of false light invasion of privacy. Except for a minor issue, defendants established that the information that they published was true, which included the detectives' statements regarding their suspicions that plaintiff committed the murder. The minor error in the article that stated that plaintiff was incarcerated in the same prison as an infamous killer, if it occurred, failed to offend a reasonable person in plaintiff's position. The court also found that plaintiff presented no evidence that showed that the alleged intrusion constituted an infliction of emotional distress.

**OUTCOME:** The court granted defendants' motion for summary judgment in plaintiff's action for false light invasion of privacy and infliction of emotional distress. The court denied defendants' motion for sanctions, as the motion was deemed moot.

**CORE TERMS:** genuine, issue of material fact, false light, summary judgment, interview, prison, deputy, sheriff's office, privacy, perjury, invasion of privacy, actual malice, offensive, portrayed, invasion, reasonable person, infliction, defamation, nonmoving, times, law enforcement officials, newspaper article, reckless disregard, admissible, newspaper, witnessed, emotional, assault, falsity, murder

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Nonmovants*
*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
[HN1]In evaluating a summary judgment motion, the inquiry is whether the pleadings and supporting materials show that there is no genuine issue of material fact with respect to any dispositive issue. After viewing all evidence and inferences in the light most favorable to the nonmoving party, the moving party is entitled to a judgment as a matter of law if there is no genuine issue of material fact. Fed. R. Civ. P. 56. The moving party must establish the absence of a genuine issue of material fact

by pointing out to the District Court that there is an absence of evidence to support the nonmoving party's case on issues where the nonmoving party bears the burden of proof. The district court's function at this stage is not to weigh the evidence and to determine the truth of the matter, but merely to determine if there is a genuine issue for trial. If the nonmoving party will bear the burden of proof at trial for any element essential to its case, that party can withstand a motion for summary judgment only by making a showing sufficient to establish a genuine issue of material fact regarding that element and a showing that only the fact finder may properly resolve the dispute because it could reasonably be resolved in favor of either party.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN2]When the moving party has carried its burden under Fed. R. Civ. P. 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

*Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview*
*Civil Procedure > Federal & State Interrelationships > Erie Doctrine*
*Torts > Procedure > Conflicts of Laws > General Overview*
[HN3]In diversity cases, federal courts must follow conflict of law rules prevailing in the states in which they sit.

*Civil Procedure > Federal & State Interrelationships > Choice of Law > Significant Relationships*
*Torts > Intentional Torts > Invasion of Privacy > False Light Privacy > General Overview*
*Torts > Intentional Torts > Invasion of Privacy > Public Disclosure of Private Facts > General Overview*
[HN4]In an action for an invasion of a right of privacy, the local law of the state where the invasion occurred determines the right and liabilities of the parties, unless some other state has a more significant relationship.

*Torts > Intentional Torts > Invasion of Privacy > False Light Privacy > Elements*
[HN5]False light invasion of privacy is defined as: one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Civil Procedure > Summary Judgment > Opposition > General Overview*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN6]There are three obstacles to succeeding on a false light claim. The defendant must have placed the plaintiff before the public in a false light, have had actual knowledge or reckless disregard for the truth, and have highly offended a reasonable person. In order to obtain a summary judgment motion, the defendants must show that there exists no genuine issue of material fact with respect to each of these conditions. There are a number of conditions that will defeat a false light claim, even if the plaintiff is able to prove all three factors at trial. First, where the plaintiff has become a "public character," the right of privacy does not exist. If defendants establish that there is no genuine issue of material fact that plaintiff is a public figure, the district court will grant the motion. Next, privacy rights are "absent or limited" in connection with a person in whom the public has a rightful interest, or where the information would be of public benefit.

*Torts > Intentional Torts > Invasion of Privacy > False Light Privacy > General Overview*
[HN7]The last requirement for a complaint alleging a false light invasion of privacy is that the false light in which the other was placed would be highly offensive to a reasonable person. This last requirement of being highly offensive is fulfilled when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements*
*Torts > Intentional Torts > Invasion of Privacy > False Light Privacy > Elements*
[HN8]In Arizona, the tort of intentional infliction of emotional distress is applicable to an action for the invasion of privacy based on an allegation that publicity has placed the plaintiff in a false light in the public eye. In order to state a claim for intentional infliction of emotional distress, the conduct in question must be so ex-

treme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Civil Procedure > Sanctions > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Perjury > Elements*
*Criminal Law & Procedure > Grand Juries > Evidence Before the Grand Jury > Perjured Testimony*
[HN9]A person commits perjury when in any proceeding before or ancillary to any court or grand jury in the United States he or she knowingly makes any false material declaration. 18 U.S.C.S. § 1623.

*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN10]In the absence of inconsistent representations to the district court or evidence which shows that there is no genuine issue of material fact, the truthfulness of statements is necessarily a question for the finder of fact, and not properly resolvable on a motion for summary judgment.

**COUNSEL:** [*1] For plaintiff: Gordon Dale Meador, PRO SE, California State Prison, Represa, CA.

For NEW TIMES INC, defendant: David Jeremy Bodney, Esq, Steptoe & Johnson, Phoenix, AZ. Michael J Meehan, Esq, Meehan & Associates, Tucson, AZ. For TERESE TERRY GREENE, Staff Writer for New Times, Inc, MICHAEL LACEY, Chief Editorial Officer for New Times Inc, defendants: Michael J Meehan, Esq, Meehan & Associates, Tucson, AZ.

For KPNX BROADCASTING CO, an Arizona corporation dba KPNX TV 12, objector: William J Reckling, III, Esq, Brown & Reckling, Phoenix, AZ.

**JUDGES:** HONORABLE ROSLYN O. SILVER, U.S. DISTRICT COURT JUDGE

**OPINION BY:** ROSLYN O. SILVER

**OPINION**

**ORDER**

**I. BACKGROUND**

Plaintiff is incarcerated in New Folsom State Prison in California, and is proceeding *pro se* and *in forma pauperis*. Plaintiff filed this Complaint against Defendants New Times, Inc., Terese Greene, and Michael Lacey in U.S. District Court, Northern District of California, on June 1, 1992. Defendant Terese Greene is a reporter for Defendant New Times, Inc., which publishes a weekly newspaper in Maricopa County, Arizona. (Amended Complaint at P 5, 7.) Defendant Michael Lacey is Co-Chairman and Chief Editorial Officer [*2] of New Times, Inc., and is responsible for the overall operation and publication of the newspaper. (Amended Complaint at P 6.) Plaintiff has alleged that a newspaper article published by the Defendants invaded his right to privacy and caused others to assault him. The District Court transferred the action to this Court, because the individual Defendants reside in Arizona and because the events that form the basis of the action occurred in Arizona. This Court has jurisdiction based on diversity of citizenship, pursuant to 28 U.S.C. § 1391(a). Plaintiff subsequently identified deficiencies in his original Complaint, and filed an Amended Complaint (doc.#46) on February 25, 1993. On March 1, 1993, Defendants filed a Motion for Summary Judgment (doc.#48). On November 22, 1993, Defendants filed a Motion for Sanctions on Grounds of Perjury and Fraud (doc.#95). On July 3, 1995, Plaintiff filed a Motion Requesting Status of the Case and Whether or Not the Court Has Ruled on the Defendants Motion for Summary Judgment or Their Motion for Sanctions on Grounds of Fraud and Perjury (doc.#111).

**II. FACTS**

This case encompasses more than twenty years of events. In 1974, two young children [*3] died in Bullhead City, Arizona when they perished in a burning shed. (Statement of Undisputed Facts Relied on in Support of Defendant's Motion for Summary Judgment ("DSOF") at P 5.) In the absence of any evidence to the contrary, the deaths were ruled accidental. (DSOF at P 6.) In 1978, the Plaintiff, Dale Gordon Meador, while incarcerated in New Mexico on an unrelated matter, voluntarily gave an interview to Jack Nelson and Robert Melton, Deputy Sheriffs of Mohave County.[1] (DSOF at P 7; Nelson Aff. at P 3, Plaintiff's Statement of Facts ("PSOF") at P 15.) In this interview, Plaintiff told the deputies that he had witnessed the deaths of the two children, and that another man had killed them because they witnessed a narcotics transaction. *Id.*

> 1 Plaintiff disputes that he talked to Melton and Nelson, instead arguing that he talked to Charles Cox, a New Mexico law enforcement officer. (Plaintiff's Statement of Disputed Facts in Opposition to Defendant's Motion for Summary Judgment at P 4.) However, Defendants have submitted a transcript of the interview, in which two individuals named Melton and Nelson ask the Plaintiff questions. (DSOF, Exhibit 2-A.) Oddly,

the Plaintiff has submitted the identical transcript, relying on it to show that he passed a polygraph test. (PSOF, Exhibit J.) Because Plaintiff's submission supports the Defendants' version, the Court accepts Defendant's version, as reflected in the transcript presented by both parties.

[*4] In 1991, Defendant Greene researched and wrote a story about the two deaths, entitled "The Eternal Fire." (DSOF at P 9.) Defendant New Times, Inc. published the story in its January 1, 1992, issue. (DSOF at P 9.) In the course of her research, Greene contacted the Plaintiff by mail about the comments that he made to the deputies in 1978. In a letter dated November 26, 1991, Defendant asked Plaintiff to call her collect regarding the case. (Amended Complaint at P 8.) Defendant responded by mail, in a letter dated December 3, 1991, confirming that he had personal knowledge of the case, writing, "I have a story for you," and noting that he could not make phone calls until May. (DSOF, Exhibit C.) Defendant wrote several more letters, trying to meet with him, and requesting that he grant her permission to interview him. (Amended Complaint at P 10, 11.) Defendant traveled to the prison on December 20, 1991 to meet with the Plaintiff, but the prison officials refused to allow a confidential interview, and Plaintiff refused to meet with the Defendant. (Amended Complaint at P 12.) On January 28, 1992, Plaintiff wrote Defendant again, reiterating his desire to meet with the Defendant. (DSOF, [*5] Exhibit D.) On February 8, 1992, the Plaintiff received a copy of the newspaper article that Defendants had published. (PSOF at 13.)

The article contains a history of the case and interviews with many of the key people involved, including family members of the victims, witnesses, and former and current law enforcement officials. (DSOF, Exhibit C.) Importantly, it notes that "according to sheriff's officials," the Plaintiff is one of two "chief suspects" in the unsolved case. (Id. at page 24.) The article also claims that the former sheriff's deputies, Nelson and Melton, believe that the children were murdered and that the Plaintiff was "involved." There is also a quote from a letter that the Plaintiff sent to Defendant Greene: "Both kids were locked inside and caught on fire, but both were unconscious prior to." (Id. at page 26.)

It notes that the Plaintiff's 1978 interview in New Mexico "started investigators thinking about the case as a homicide" and that both the Plaintiff and the other suspect "deny they had any part in the killing." (Id. at page 24.) In the interview, Plaintiff claimed that he saw two men pushing two children into the shack and then setting fire [*6] to the shack. The article quotes from the transcript of the interview, where the Plaintiff notes that he asked one of the alleged perpetrators what they were doing. When the man responded that the two children planned to "tell on" him and the other man for "smokin' pot." The Plaintiff replied, "Well, do what you gotta do, man, I'll catch you later." (Id. at page 26.) The article again emphasizes that Plaintiff claims that he "just witnessed" the fire and did not participate, and also that the Plaintiff had passed a lie detector test. (Id.) The article also relates some details of Plaintiff's life, including the fact that he "is in a California prison serving a life sentence without possibility of parole for [an unrelated] murder" and that he "has spent time in mental institutions." (Id. at page 24.)

The Plaintiff argues that "the article threw a false light on the plaintiff which accused him of being a chief suspect in the case, some 18 years later." (Amended Complaint at P 13.) He claims that as "a direct result of the article published by the defendants, plaintiff has suffered irreparable injury, to wit: Three separate assaults by other inmates because the plaintiff [*7] was labeled as a child killer, has lost numerous friends and family members, and has been subjected to ridicule and is having to undergo psychiatric therapy and counseling." (Amended Complaint at P 13.)

In his Amended Complaint, the Plaintiff alleges two causes of action: invasion of his right to privacy, and "Infliction of Mental Stress and Physical Damages." (P 16, 19.) For relief, he seeks punitive, compensatory, and special damages totaling $ 475,000 per each defendant, as well as "such other and further relief that this court deems just and proper." (Amended Complaint at P 19.)

## III. SUMMARY JUDGMENT

[HN1]In evaluating a summary judgment motion, the inquiry is whether the pleadings and supporting materials show that there is no genuine issue of material fact with respect to any dispositive issue. After viewing all evidence and inferences in the light most favorable to the nonmoving party, the moving party is entitled to a judgment as a matter of law if there is no genuine issue of material fact. Fed. R. Civ. Pro. 56; *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied, 484 U.S. 1006, 98 [*8] L. Ed. 2d 650, 108 S. Ct. 698 (1988).

The moving party must establish the absence of a genuine issue of material fact by pointing out to the District Court that "there is an absence of evidence to support the nonmoving party's case" on issues where the nonmoving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The Court's function at this stage is not to weigh the evidence and to determine the truth of the matter, but merely to determine if there is a genuine

issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

If the nonmoving party will bear the burden of proof at trial for any element essential to its case, that party can withstand a motion for summary judgment only by making a showing sufficient to establish a genuine issue of material fact regarding that element and a showing that only the fact finder may properly resolve the dispute because it could reasonably be resolved in favor of either party. *Celotex*, 477 U.S. at 321; *Anderson*, 477 U.S. at 249. As the Supreme Court has explained:

> [HN2]When the moving party has carried its burden [*9] under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) (footnotes and internal citations omitted).

## IV. LEGAL STANDARD

[HN3]In diversity cases, federal courts must follow conflict of law rules prevailing in the states in which they sit. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941). Arizona state courts apply the principles of the Restatement (Second) of Conflict of Laws (1971) to determine the controlling law for multistate torts. *Bates v. Superior Court*, 156 Ariz. 46, 749 P.2d 1367, 1369 (Ariz. 1988) (citing *Schwartz v. Schwartz*, 103 Ariz. 562, 447 P.2d 254, 257 (Ariz. 1968)). The Restatement of Conflict of Laws provides that [HN4]in "an action for an invasion of a right of privacy, the local law of the state where the invasion occurred determines the right and liabilities of the parties," [*10] unless "some other state has a more significant relationship . . ." Restatement (Second) of Conflict of Laws § 152 (1971). [2] In the present case, the disputed article was published in Arizona, though Plaintiff resides in California and the assaults which the article allegedly prompted also occurred in California. Because the alleged invasion, as well as the events which the article describes, occurred in Arizona, the Court will follow the substantive law of Arizona. Neither party disputes this choice. (Motion, page 5, lines 15-17; Response, page 11, lines 20-27.)

   2  Defendants point to § 149, which deals with defamation actions, because "the invasion of privacy claim is most closely analogous to a claim of defamation . . ." (Motion, page 5, lines 23-26.) The distinction between the two for choice of law purposes is immaterial, because "essentially the same choice-of-law rules are applicable to the two torts." Restatement (Second) of Conflict of Laws § 152, comment d.

The Arizona Supreme Court recognized [*11] the tort of false light invasion of privacy in *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 783 P.2d 781 (Ariz. 1989). In *Godbehere*, the Court obtained guidance from the Restatement (Second) of Torts § 652E (1977), which defined the tort as follows:

> [HN5]One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
>   (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
>   (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Godbehere*, 783 P.2d at 786. Thus, [HN6]there are three obstacles to succeeding on a false light claim. The Defendant must have placed the plaintiff before the public in a false light, have had actual knowledge or reckless disregard for the truth, and have highly offended a reasonable person. In order to obtain a summary judgment motion, the Defendants must show that there exists no genuine issue of material fact with respect to each of these conditions.

There [*12] are a number of conditions which will defeat a false light claim, even if the Plaintiff is able to prove all three factors at trial. First, where the Plaintiff has become a "public character," "the right of privacy does not exist." 783 P.2d at 789 (citing *Reed v. Real Detective Publishing Co.*, 63 Ariz. 294, 162 P.2d 133, 138 (Ariz. 1945)). If Defendants establish that there is no genuine issue of material fact that Plaintiff is a public figure, the Court will grant the motion. Next, privacy rights are "absent or limited" in connection with a person "in whom the public has a rightful interest, [or] where the information would be of public benefit." *Godbehere*, 783 P.2d at 789 (citing *Reed*, 162 P.2d at 138).

Also, it is unclear if the Plaintiff needs to prove actual malice to succeed on his claim. The Supreme Court has broadly applied an actual malice standard to any tort

action relating to free speech, particularly "in the area of public debate about public figures." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53, 99 L. Ed. 2d 41, 108 S. Ct. 876 (1988). However, the Restatement has taken no Position on whether a private plaintiff may recover for false light invasion [*13] of privacy in the absence of actual malice, and the Arizona Supreme Court has similarly declined to take a position on application of the heightened standard with respect to private individuals. *Godbehere*, 783 P.2d at 798 n.6. If actual malice needs to be proven, the Plaintiff would have to prove it with clear and convincing evidence. *New York Times v. Sullivan*, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964). If the Court applies this heightened standard, the Plaintiff's claim will fail at trial if he cannot raise a genuine issue of material fact with respect to this higher level. *See Anderson*, 477 U.S. at 256-257 (noting that "the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding . . . that the plaintiff has shown actual malice by clear and convincing evidence. . . .").

## V. APPLICATION OF THE TEST

### A. FALSE INFORMATION OR FALSE LIGHT

Once the Defendants have met their burden pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Plaintiff must controvert with admissible evidence showing that there exists a genuine issue of material fact regarding each of the tests [*14] contained in *Godbehere*. First, the Plaintiff must show that there is a material, factual issue whether a reasonable fact finder could find that the Defendant presented him in a false light. With respect to this issue Plaintiff argues that the Defendants "falsely accused plaintiff of killing two individuals in 1974, and disclosed private facts about plaintiff's life." (Memorandum in Support of Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment ("Response") at P 12.)

### 1. THE CRIME

A careful examination of the article shows that the Defendants did not accuse the Plaintiff of murder; instead, they noted that sheriff's officials considered him to be a suspect.[3] To support this statement, the Defendants have produced an affidavit from Lt. Dale Lent, Chief Detective in the Mohave County Sheriff's Office. (DSOF, Exhibit 2.) In the affidavit, Lt. Lent states that the deaths of the two children, initially classified as accidents, have now "been classified by the Sheriff's office as homicides." (DSOF, Exhibit 2 at P 3.) He also notes that "during that interview, I informed Ms. Greene that Dale Gordon Meador and Mark Stubblefield were still considered [*15] as suspects in the homicides . . ." (DSOF at P 17, Exhibit 1 at P 5.) Defendants also produce affidavits from former deputy sheriff Nelson and Defendant Greene that show that Nelson and Melton, also a former deputy sheriff, told Greene that the Plaintiff was considered a suspect at the time that they interviewed the Plaintiff in 1978. (DSOF at 15, 16, Exhibits 1, B.)

> 3   The article describes the Plaintiff as a suspect three times, with each description identifying the accuser: ". . . according to sheriff's officials"; "Former sheriff's deputies Nelson and Melton still claim. . ."; "Nelson says he believed. . ." (DSOF, Exhibit C, pages 24-25.)

As the Defendants correctly observe, the "law enforcement officials with responsibility for the investigation are in a position to identify the suspects in the investigation -- plaintiff is not." (Motion, page 9, line 17; page 10, lines 1-2.) Whether or not the Plaintiff is a suspect is a function of the beliefs of law enforcement officials, not the Plaintiff. To suspect [*16] is "to think (a person) guilty without proof: The police suspect her of murder." American Heritage Dictionary (Third Edition) 1809 (1992). For a person to become a suspect in a crime, the police must think him guilty; there is no requirement of proof.

With respect to the interviews with Melton and Nelson, Plaintiff charges that "Greene was specifically told that the only evidence that they had on Plaintiff was 'A Gut Feeling.'" (Response Memo at P 19.) This argument does not raise a genuine issue of material fact with respect to the Plaintiff being a suspect. Instead, he seeks to establish that the deputies suspected him for poor reasons. However, the Plaintiff has not called into question his actual status as a suspect. Moreover, Plaintiff fails to explain why this "gut feeling" is insufficient to form the basis of a suspicion that Plaintiff committed the crimes. These interviews do not contradict the affidavits.

Also, Plaintiff attempts to cast doubt on the affidavit of Lt. Lent, stating that Nelson had told Defendant Greene that Lt. Lent previously "had provided false testimony to a court of law." (Response at P 21.) Plaintiff argues that this accusation

> clearly cancel[s] [*17] out any chance that Lent's affidavit could be reliable (he provided false testimony to the courts' [sic] already in an unrelated case) but must therefore be assumed that Lent's affidavit was submitted in bad faith and defendants were aware of the false testimony from the outset.

(Response at P 26.) However, the Plaintiff appears to misapprehend the nature of Defendant Greene's enter-

Page 6

prise. She was not sitting in judgment to determine the Plaintiff's ultimate guilt or innocence, but instead was reporting on the beliefs of those in the Sheriff's Office. The Defendants have submitted affidavits showing that the article accurately reflected the comments of those in the Sheriff's Office, while the Plaintiff attempts to show that the comments were made in bad faith and that the Defendants should have known that Lt. Lent was untrustworthy. However, there is no genuine issue of material fact that the Defendants inaccurately reported what Lt. Lent said, or that his statement inaccurately reflects the beliefs of the Sheriff's Office. The Sheriff's Office is not a party to this action, and their motives and reasons for suspecting someone of a crime are beyond the scope of this Complaint.

[*18] The Defendants have presented affidavits showing that the article was accurate, and that the Plaintiff has failed to set forth admissible evidence to raise a genuine issue of material fact with respect to this issue. There appears to be virtual unanimity that Plaintiff was a suspect, even among officials in the sheriff's office who have substantial disagreements and personal dislikes of one another. (DSOF at P 8, 15-18.) Plaintiff repeatedly argues that the police lack proof of his involvement, but they require none to consider him a suspect. There is no dispute in the record that all of the officials from the sheriff's office whom Defendant Greene interviewed agreed that he was a suspect. The Defendants then published this fact, and the Plaintiff has not undermined the validity of this conclusion. [4]

> 4  This finding also prevents a successful defamation complaint. Even though the Plaintiff expressly complained of a false light invasion of privacy, his Complaint has also been interpreted as a defamation suit in various documents in this action. "To be defamatory, a publication must be false . . ." Godbehere, 783 P.2d at 787 (citing Phoenix Newspapers, Inc. v. Choisser, 82 Ariz. 271, 312 P.2d 150 (Ariz. 1957)). Because Plaintiff has not raised a genuine issue of material fact with respect to the publication's truthfulness, he cannot succeed on a defamation action.

[*19] However, even if the information were true, the Defendants could be liable if they portrayed Plaintiff in a false light. That is, "the highly offensive presentation of a true fact" may create "false innuendo." Godbehere, 783 P.2d at 787. Although there is no allegation in the Complaint of such an impression (As discussed previously, Plaintiff instead alleges that the Defendants directly accused him of the crimes), Plaintiff argues in his Response that "it is clear that an average citizen intreperted [sic] the Eternal Fire Article to mean that Meador actually committed these crimes . . ." (Response, page 11, lines 27-28.) However, Plaintiff fails to direct the Court to parts of the article which give this impression. The Defendants have supported all statements with affidavits, which plainly establish the distinction between accusing him of a crime and reporting that the officials in the Mohave County Sheriff's Office have accused him. Even after construing all inferences in light most favorable to the Plaintiff, the Court cannot find that reporting that the Plaintiff is a suspect is comparable to accusing him of the crime and tantamount to creating a genuine issue of material [*20] fact that Plaintiff was portrayed in a false light. Were this construction to succeed, newspapers would never report on any crime, for fear that identifying possible suspects would be legally identical to accusing them directly. The Defendants have not portrayed the Plaintiff as the murderer; they have portrayed him as a suspect. In the absence of evidence of the publication of misleading statements, the Court cannot find that a report based on reliable information that Plaintiff is a suspect in a crime raises a genuine issue of material fact that the Defendants have falsely portrayed Plaintiff as guilty of this crime.

## 2. PRIVATE LIFE

The Plaintiff also argues that the Defendants presented facts about his private life in the newspaper article. Plaintiff argues that "these private facts were totally unnecessary, and the use of plaintiff's name was without justification." (Response, page 10, lines 1-2.) Among the private facts disclosed are Plaintiff's prior hospitalization in a mental institution, his previous use of drugs, his current sentence of life imprisonment without parole for murder, his confinement in the same prison as Charles Manson, his hatred of police, his [*21] family's poverty, and his status as a "prisoner-informant." (Response, page 9, lines 18-28.)

Of these alleged facts, Plaintiff only alleged that one of them, that he resided in the same prison as Charles Manson, is false. (PSOF at P 19.) However, Plaintiff earlier stated that he recently moved from another prison, so it is not clear if Plaintiff is alleging that he has moved from the prison where Mr. Manson lived, or that he never lived in the same prison as Mr. Manson. In any case, the Plaintiff contests only the allegations regarding the location of Mr. Manson, so the Court will accept the remaining allegations as true.

## B. ACTUAL KNOWLEDGE OR RECKLESS DISREGARD FOR THE TRUTH

Of the many pieces of information about the Plaintiff that the article conveys, Plaintiff has failed to present a genuine issue of material fact of their truth or falsity, except for the allegation of living near Charles Manson. Except for the living arrangements of Mr. Manson, there

Page 7

is no genuine issue of material fact that any of the information is false or was presented in a false light. Therefore, the Court cannot say that there exists a genuine issue of material fact that the Defendants had [*22] "knowledge of or acted in reckless disregard as to the *falsity* of the publicized matter and the *false light* in which the other would be placed," except for the information concerning Mr. Manson. Restatement (Second) of Torts § 652E (b) (1977) (emphasis added).

### C. HIGHLY OFFENSIVE TO REASONABLE PERSON

[HN7]The last requirement for a complaint alleging a false light invasion of privacy is that "the false light in which the other was placed would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652E (a) (1977). Of the many pieces of information that Plaintiff alleges that the Defendants communicated to the public, the only matter about which there exists a genuine issue of material fact regarding its truth or falsity is that the Plaintiff lived in the same Prison as Charles Manson. According to the Restatement, this last requirement of being highly offensive is fulfilled when "there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position. . . ." Restatement (Second) of Torts § 652E, comment c (1977). In this case, the [*23] Court must examine the record for evidence of damage to Plaintiff's character, history, activities or beliefs. The admissible evidence in the record indicates that Plaintiff is a convicted murderer, currently serving a life sentence without parole. (DSOF at P 2.) See also Meador v. Bunnell, 978 F.2d 715 (9th Cir. 1992), cert. denied 123 L. Ed. 2d 164, 113 S. Ct. 1602 (1993). While Plaintiff correctly notes that he has a right to his privacy even though he is incarcerated, the Court must examine his particular circumstances in order to assess the harm to his character and reputation. In the present case, the Court is unable to say, assuming an erroneous publication that Charles Manson and the Plaintiff occupied the same prison, that there is a genuine issue of material fact that the story was highly offensive to the Plaintiff in his position. Also, Plaintiff repeatedly complains that he has suffered physical, emotional, and reputational harm as a result of the article which allegedly asserted that Plaintiff "is a child killer." (Response, page 6, line 20.) Plaintiff has not alleged that he has been harmed in any way as a result of being described as living near Charles Manson, [*24] nor has he provided evidence of any harm.

### D. CONCLUSION

The Court is unable to find that Plaintiff has established a genuine issue of material fact that the Defendants committed the tort of false light invasion of privacy. Except for a minor issue, the Defendants have established that the information they published was true, and the minor error, if it occurred, fails to offend a reasonable person in the Plaintiff's position. Having resolved that summary judgment is appropriate, the Court does not need to reach the issues of the Plaintiff's status as a public figure or the necessity of showing actual malice.

### VI. DAMAGES

Although Plaintiff lists as a Second Cause of Action the "Infliction of Mental Stress and Physical Damages," his allegation does not appear to actually state a separate claim. (Page 6, line 11.) Instead, he details the specific injuries he has allegedly endured as a result of the article's publication, including assault, harassment, and the loss of family and friends. (Amended Complaint, page 6, lines 14-20.) He also specifies the damages that he requests, which consist of an injunction to prevent the Defendants from using the Plaintiff's name [*25] in conjunction with the deaths of two children, as well as punitive, compensatory, and special damages totaling $ 475,000 per each Defendant. However, there can be no damages without liability, and Plaintiff has failed to create a genuine issue of material fact regarding damages because he has not alleged a separate cause of action. Moreover, there are significant constitutional problems with an injunction enjoining future publication. See, e.g., New York Times Co. v. United States, 403 U.S. 713, 29 L. Ed. 2d 822, 91 S. Ct. 2140 (1971); Near v. Minnesota, 283 U.S. 697, 75 L. Ed. 1357, 51 S. Ct. 625 (1931).

However, given an extremely liberal construction, Plaintiff may have unwittingly stated a claim for intentional infliction of emotional distress. He asserts that it is "common knowledge" that inmates "take care" of child abusers in their midst, and that the Defendants knew that the Plaintiff would suffer grievous harm upon the article's publication. (Amended Complaint, page 6, lines 22-26.) [HN8]Arizona courts have stated that the tort of intentional infliction of emotional distress is "applicable to an action for the invasion of privacy based on an allegation that publicity [*26] has placed the plaintiff in a false light in the public eye." Rutledge v. Phoenix Newspapers, Inc., 148 Ariz. 555, 715 P.2d 1243, 1244 (Ariz.App. 1986). In order to state a claim for intentional infliction of emotional distress, the conduct in question must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 1244-45 (quoting the Restatement (Second) of Torts § 46, comment d). The Plaintiff has presented no evidence that shows that the alleged intrusion has come even close to meeting this high standard. There is no genuine issue

of material fact that the newspaper story fell outside these boundaries.

## VII. SANCTIONS

The Defendants have filed a Motion for Sanctions on Grounds of Perjury and Fraud (doc.#95), urging the Court to invoke its inherent power to dismiss abusive and deceptive complaints with prejudice. While the current action has been pending, the Plaintiff mailed a letter, dated August 11, 1993, to the Mohave County Sheriff, in which he expressed his "need to put to rest once and for all the guilt and pain in my heart in regards to my actual [*27] involvement in the deaths." (Motion for Sanctions on Grounds of Perjury and Fraud ("Sanctions"), Exhibit 2A.) In the letter, the Plaintiff expressed his willingness to provide a "confession" to the Sheriff. (Sanctions, Exhibit 2A.) The letter prompted the Sheriff to travel to California to interview the Plaintiff, who allowed the Sheriff to copy an unsigned affidavit in which he admitted playing a role in the 1974 deaths of the two children. (Sanctions, Exhibit 3C.) If Plaintiff indeed expressed a willingness to confess to the crimes, he has thus admitted that the current action is almost completely meritless. If the Plaintiff desired to confess to this crime, then it would be inconsistent for him to allege that the Defendants falsely portrayed him as a participant in the crimes.

Plaintiff concedes that he submitted a "phony statement" to the Sheriff but did so in order to "obtain discovery the best way possible, given the legal circumstances of his case." (Reply [sic] to Defendants Motion for Sanctions ("Response"), page 2, lines 3-5, 14-15.) He further asserts that the fact that the Sheriff "could not still classify the plaintiff as a suspect" even when provided with a false confession [*28] serves as "conclusive proof that plaintiff could never have been a suspect." (Response, page 3, lines 17-20.) Plaintiff claims that Sheriff Joe Cook and Deputy Investigator Sam Howe informed him that the affidavits from former Deputies Nelson and Melton are false, that Plaintiff was never a suspect in the deaths, and that Howe would be willing to testify on behalf of the Plaintiff. (Sanctions, Exhibit 1.) However, these statements are inadmissible hearsay, and directly at odds with the declarations of Cook and Howe, in which they assert that all three of Plaintiff's claims about their statements are false. (Sanctions, Exhibits 2-3.)

First, it is clear that Plaintiff has failed to resurrect a genuine issue of material fact with respect to his claim for damages resulting from a false light invasion of privacy by the Defendants. He has failed to show that the statements of law enforcement officials asserting that Plaintiff was a suspect in the deaths are false. Furthermore, Plaintiff has not demonstrated that this "new evidence" is admissible, and the comments of the others as recollected by the plaintiff are hearsay. *See* Fed. R. Evid. 801. The officials whom he lured to the prison [*29] under false pretenses have not controverted the statements in the newspaper article in any manner.

Second, with respect to the sanctions, Defendants request dismissal with prejudice to punish the Plaintiff's misconduct and false actions. However, it is not clear that Plaintiff has committed perjury. [HN9]A person commits perjury when "in any proceeding before or ancillary to any court or grand jury in the United States [he or she] knowingly makes any false material declaration . . ." 18 U.S.C. § 1623. Plaintiff has consistently asserted to the Court that he merely witnessed the crime and did not participate. Defendants claim that the Plaintiff committed perjury on the basis of events which took place outside the scope of pleadings, affidavits, and statements to the Court. [HN10]In the absence of inconsistent representations to the Court or evidence which shows that there is no genuine issue of material fact, the truthfulness of statements is necessarily a question for the finder of fact, and not properly resolvable on a motion for summary judgment. *See United States v. Cravero*, 530 F.2d 666, 670 (5th Cir. 1976) ("One of the oldest established rules of Anglo-American jurisprudence is that [*30] the jury is the arbiter of credibility of witnesses."). Also, the Ninth Circuit has cautioned against hasty dismissals in cases involving litigants proceeding *pro se. McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992).

Moreover, this motion for sanctions is moot because the motion for summary judgment will be granted in full.

Accordingly,

**IT IS ORDERED** granting Defendant's Motion for Summary Judgment (doc.#48).

**IT IS ORDERED** denying Defendant's Motion for Sanctions on Grounds of Perjury and Fraud (doc.#95).

DATED this 2 day of AUGUST 1995.

HONORABLE ROSLYN O. SILVER

U.S. DISTRICT COURT JUDGE