UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES VAN DE VELDE           :       CIVIL ACTION
                                      NO. 3:01 CV 02296 (RNC)

V.                                :

MELVIN WEARING, ET AL.        :       JUNE 23, 2008

## MEMORANDUM OF LAW IN SUPPORT OF THE NEW HAVEN DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

### I.    INTRODUCTION

The undersigned defendants, Melvin Wearing, Brian Sullivan, Thomas Trocchio, Edward Kendall, the Estate of Anthony Dilullo, (the "New Haven Defendants") hereby move for judgment on the plaintiff's Second Amended Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  The New Haven Defendants have essentially adopted and incorporated the arguments and exhibits set forth in the Motion to Dismiss filed by the Yale Defendants, but have tailored those arguments to specifically suit the factual allegations set forth against the New Haven Defendants.  Additionally, the New Haven Defendants are entitled to qualified immunity as they did not violate any of the plaintiff's clearly established constitutional rights, or in the alternative, it was objectively reasonable for them to believe that they did engage in any conduct that violated any of the plaintiff's clearly established constitutional rights.

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

## II.    FACTUAL ALLEGATIONS

### A.    THE ALLEGATIONS AGAINST THE NEW HAVEN DEFENDANTS

The New Haven Defendants submit the following factual allegations in support of their

Motion for Judgment of the Pleadings. These statements are offered in a light most favorable to

the plaintiff for the purposes of the present motion only and are not offered as judicial

admissions.

The present matter arises from the investigation of the murder of a Yale undergraduate

student, Suzanne Jovin, which occurred on the evening of December 4, 1998. On January 11,

1999, Yale issued a statement that identified that plaintiff as being in a "pool of suspects." ¶ 92.

This was the "first official public disclosure of the plaintiff's 'suspect' status." ¶ 94. When

"called upon by the media to confirm the plaintiff's 'suspect' status", the New Haven police

publicly confirmed that Van de Velde was among their "pool of suspects." ¶ 96. The police

have repeatedly emphasized, however, that there are additional, as yet unnamed, suspects in the

investigation, and that they are far from solving the crime. *See, e.g.*, ¶¶ 117-23, 135, 137.

Indeed, as Van de Velde alleges, the police have stated "that the investigation has 'exhausted all

avenues,' [and] that they have few if any leads, and little if any evidence identifying Ms. Jovin's

killer." ¶ 143.

Thus, for example, in April 1999, the police enlisted the help of a group of metal detector

operators to assist with a search for physical evidence in the East Rock neighborhood, the area

where Jovin's body was found. ¶¶ 153-56. Despite this search, the police later stated that what

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

little evidence they had in the crime did not implicate any particular suspect. Exh. 5. The police

conceded that Van de Velde "ha[d] not been ruled out" as a suspect, but also stated that

"[n]obody ha[d] been ruled out in the pool of suspects." ¶ 120 & Exh. 5; *see also* ¶ 121 & Exh. 6

(statement that Van de Velde was among a "pool of suspects"); ¶ 137 (statement that there were

other suspects in the murder). Similarly, in a December 3, 1999 press conference, the police

stated they were still investigating ten individuals (including Van de Velde) and "[had] a long

way to go" to solve the case. ¶¶ 122-24. In October 2001, local prosecutors announced that

DNA evidence recovered from Jovin's body did not match Van de Velde's DNA. ¶¶ 144-46. In

late 2007, the Connecticut State's Attorneys' Office announced that four retired detectives had

assumed responsibility for the investigation, approaching the case "as if it were brand new" with

"no persons [as] a suspect in the crime, and everyone [as] a suspect in the crime." ¶ 148.

    In sum, although the police neither described the evidence that placed Van de Velde

within the "pool of suspects" nor publicly revealed the identities of other suspects in that pool,

they continued to confirm that Van de Velde was a suspect. They have not arrested him,

however, and have repeatedly stated that they have "a long way to go" to solve the case. Today,

more than four years after Jovin's murder, the killer remains at large.

### B.    VAN DE VELDE'S ALLEGED INJURY

    According to Van de Velde's Complaint, the defendants' actions "triggered public

speculation" about whether he killed Suzanne Jovin, ¶ 76, leading to unfavorable publicity and

lost job opportunities, damage to his reputation, and emotional distress. ¶¶ 165-71. The plaintiff

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

alleges that his assignment with the National Infrastructure Protection Center at FBI

Headquarters was terminated after officials learned that he was a suspect in the Jovin homicide.

¶ 169. The also alleges that another assignment which he had obtained through the Naval

Reserves, at the Defense Intelligence Agency, was terminated and that his security clearance

with the Department of Defense was withdrawn. ¶ 170.

### C.    VAN DE VELDE'S SECOND AMENDED COMPLAINT

After reciting these allegations, Van de Velde's Second Amended Complaint concludes

with a laundry list purporting to identify the various constitutional and state law provisions the

defendants violated. In Count One, brought under 42 U.S.C. § 1983, Van de Velde alleges that

the defendants violated his rights under the United States Constitution. Specifically, Van de

Velde claims, with no elaboration, that the defendants violated his right to equal protection of the

laws under the Fourteenth Amendment, his right to privacy under the Fourth and Fourteenth

Amendments, his right to procedural *and* substantive due process under the Fourteenth

Amendment, and his right to be free from unreasonable searches and seizures under the Fourth

Amendment. ¶ 176. He also purports to state a claim under Section 1983 for violation of his

rights under the Connecticut Constitution. ¶ 177. In Counts Two and Three, Van de Velde

alleges that the defendants invaded his privacy by placing him in a false light before the public,

¶¶ 179-80, and committed the tort of "intentional infliction of emotional distress." ¶¶ 182-85.

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

## III.    ARGUMENT

### A.    STANDARD OF REVIEW

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Pursuant to that standard, the defendants' motions will be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether the plaintiffs have pled a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969, 167 L. Ed. 2d 929 (2007); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). Courts may also consider any documents attached as exhibits or incorporated by reference in the pleadings, and any other matters of which judicial notice may be taken. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). In addition, courts may "look to public records . . . in deciding a motion to dismiss." *Blue Tree Hotels Investment (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

**B.    VAN DE VELDE CANNOT STATE A CLAIM FOR A VIOLATION OF PROCEDURAL DUE PROCESS.**

The Due Process Clause of the Fourteenth Amendment protects against governmental actions that deprive an individual of liberty or property without due process of law. U.S. CONST. amend. XIV, § 1. To state a claim under this Clause, a plaintiff must allege both that the defendants deprived him of a constitutionally protected interest, and that this deprivation occurred without due process of law. *Taylor v. Rodriguez*, 238 F.3d 188, 191 (2d Cir. 2001). Here, even if Van de Velde had properly alleged that he was denied some procedure (which he did not), he does allege the deprivation of a constitutionally protected interest. For while Van de Velde's Complaint suggests that he seeks to recover for harm to his reputation, a line of cases dating to 1972 establishes that reputation alone is not protected by the Constitution.

In 1972, the Supreme Court decided *Board of Regents v. Roth*, 408 U.S. 564 (1972). In Roth, the Court held that there was no due process violation in the State's refusal to rehire a university teacher. In support of this holding, the Court stated that the State, *as an employer*, did not impose a sigma or other disability that foreclosed future employment because it "did not invoke any regulations to bar the respondent from all other public employment at state universities." *Id.* at 573. The Court further noted that "[m]ere proof, for example that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.' *Id.* at 574, n. 13, *citing Schware v. Board of Bar Examiners*, 353 U.S. 232.

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

In 1976, the Supreme Court decided *Paul v. Davis*, 424 U.S. 693 (1976), launching what

has come to be known as the "stigma plus" line of cases. In following Roth, the Paul Court notes

the following:

> While *Roth* recognized that governmental action defaming an individual in the course of
> declining to rehire him could entitle a person to notice and an opportunity to be heard as
> to the defamation, its language is quite inconsistent with any the notion that a defamation
> perpetrated by a government official but *unconnected with any refusal to rehire* would be
> actionable under the Fourteenth Amendment.

*Id.* at 418 (emphasis added).

In *Paul v. Davis*, the Court held that while damage to reputation might support a state law

claim for defamation, it does not become a constitutional violation merely because a state actor

caused the damage. *Id.* at 702; *see also Siegert v. Gilley*, 500 U.S. 226, 233 (1991)

("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional

deprivation."). Under *Paul v. Davis*, damage to reputation by a state actor is only actionable if

the plaintiff properly alleges that the defendant made false statements about him that injured his

reputation ("stigma"), and that he suffered some tangible alteration of his rights or status under

state law ("plus"). *Id.* at 701-02, 710-12; *Doe v. Department of Public Safety*, 271 F.3d 38, 47

(2d Cir. 2001), *rev'd on other grounds*, 123 S. Ct. 1160 (2003). Van de Velde cannot meet this

standard because the New Haven Defendants were not his employer and did not make any

statements about the plaintiff in the course of termination, none of the defendants made any false

statements about him, and as a matter of public policy, Van de Velde cannot challenge the public

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

release of information about an ongoing criminal investigation. Finally, Van de Velde has not

suffered any tangible alteration of his rights or status under law.

### 1.    The Defendants Did Not Make Any False Statements About Van de Velde.

A plaintiff cannot maintain a due process action for harm to his reputation if the allegedly

stigmatizing statements are true. As explained by the Second Circuit, "[t]he gravamen of

'stigma' as part of a due process violation is the making under color of law of a reputation-

tarnishing statement that is *false.*" *Doe*, 271 F.3d at 47-48; *see also Smith v. Garretto*, 147 F.3d

91, 95 (2d Cir. 1998). In *Smith*, for example, the plaintiff alleged that a prosecutor framed him

on false criminal charges and notified the media about his arrest, all in retaliation for his past

actions in exposing corruption and racism in a municipal agency. The Second Circuit held that

the prosecutor was entitled to qualified immunity for the public announcement of the plaintiff's

arrest because the plaintiff failed to allege the deprivation of any constitutional right. The fact

that the allegedly defamatory statement was true – the plaintiff *was* arrested – defeated any

constitutional claim: "The injury [plaintiff] endeavors to assert, presumably defamation, does

not support a claimed violation of constitutional right where the stigmatizing information is

true." *Id.*

Here, Van de Velde cannot allege the deprivation of a constitutionally protected right

because the allegedly stigmatizing statements were all true. Van de Velde claims harm from the

defendants' statements identifying him as a suspect in the Jovin murder, *see, e.g.*, ¶¶ 2-3, 161-64,

but he concedes the truth of those statements. As he repeatedly alleges, the New Haven

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

Defendants – the official authority with responsibility for investigating the Jovin murder –

considered him a suspect. *E.g.*, ¶¶ 91, 96, 117, 123. Although Van de Velde contests the

*substantive* judgment made by the police, arguing that there was no basis for labeling him a

suspect,[1] *e.g.*, ¶¶ 6, 77, Van de Velde does not contest that the New Haven Defendants, in fact,

considered him a suspect. Indeed, by arguing that the police should not have considered him a

suspect, he necessarily concedes he *was* a suspect.

In this respect, Van de Velde's claim is directly analogous to the plaintiff's claim in

*Smith*. There, the plaintiff alleged that he should never have been arrested on bribery charges,

yet this was irrelevant to whether he had a constitutional claim against a prosecutor for publicly

announcing his arrest. The plaintiff could not sustain an action against the prosecutor because

the prosecutor's statement – that the plaintiff had been arrested – was true. Similarly, that Van

de Velde believes he should never have been a suspect in the Jovin murder is irrelevant to his

claim against the defendants for publicly stating that he was a suspect in the investigation. Just

as in *Smith*, those statements were true, and thus they cannot support a due process claim.

Because Van de Velde cannot base his constitutional claim on statements identifying him

as a suspect in the Jovin murder, he is left to argue that the defendants harmed his reputation by

identifying him as Jovin's likely killer. *See, e.g.*, ¶ 4. This argument fails because the

---

[1] Van de Velde's own allegations defeat this claim, for he alleges evidence that could make him a suspect: *e.g.*, his preexisting relationship with Jovin, his meeting with Jovin on the day of her death, and his residence near where her body was found. ¶¶ 55-57, 63. Moreover, the articles appended to his Complaint indicate he had a unique relationship with Jovin. *See* Exh. 4; Exh. 13. Van de Velde alleges this evidence does not link him to the crime, ¶ 77, but that determination is a judgment for the police to make.

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

defendants *never* said he committed the crime. As a matter of common sense, a statement that an individual is a "suspect" in a crime, made in the course of an ongoing investigation, does not suggest that that person *in fact* committed the crime. *See, e.g.*, *Martin v. Griffin*, 2000 WL 872464, at \*14 (Conn. Super. Ct. June 13, 2000) (statement that individual was arrested for crime does not communicate that individual was guilty of that crime); *Jones v. Schaeffer*, 332 N.W.2d 423, 424 (Mich. Ct. App. 1983) (rejecting argument that statement about ongoing investigation suggested plaintiff had committed a crime and holding that "[a] statement indicating that an investigation was underway clearly does not rise to the level of defamation").

This is especially true where, as pleaded here by Van de Velde, the defendants negated any suggestion that they had identified Van de Velde as the killer. From the beginning, Yale and the New Haven Defendants emphasized that the police had not yet solved the crime, thereby defeating any claim that they had identified Van de Velde, or anyone else, as responsible. ¶ ¶ 117-23, 135 and 137. The police repeatedly stated that they were investigating multiple suspects, that they had no leads in the investigation, and that they were still a long way from solving the crime. ¶ 124. These public statements and actions, which consistently emphasized that the investigation was ongoing and was focused on multiple suspects, simply did not identify Van de Velde as a murderer.

Because the defendants made no false statements about Van de Velde, he cannot allege that the defendants stigmatized him in any way and thus cannot sustain a claim for the deprivation of any constitutionally protected interest.

HALLORAN
& SAGE LLP

315 Post Road West
Westport, CT 06880

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

2.    **Van de Velde's Claim Must be Rejected As a Matter of Public Policy.**

That Van de Velde cannot state a claim for deprivation of a constitutionally protected

interest is fully consistent with sound public policy, because public officials should not be held

liable for releasing specific information about an ongoing criminal investigation. The public has

a legitimate interest in knowing about the operation of police and other official bodies, and the

fact that police have identified a suspect in a criminal investigation is thus a matter within the

public interest. *See, e.g.*, *Schultz v. Newsweek, Inc.*, 481 F. Supp. 881, 887 (E.D. Mich. 1979)

("The fact that law enforcement officials name someone as connected with an incident or as a

suspect is by itself a fact within the public interest."), *aff'd*, 668 F.2d 911 (6th Cir. 1982); *Hagler*

*v. Democrat-News, Inc.*, 699 S.W.2d 96, 99 (Mo. Ct. App. 1985) ("Where the operation of laws

and activities of the police or other public bodies are involved, the matter is within the public

interest."); *Strutner v. Dispatch Printing Co.*, 442 N.E.2d 129, 133 (Ohio Ct. App. 1982)

("Despite the possible harm to an innocent suspect, it is a legitimate concern to the public to

know the name of a person who is being questioned as a suspect in a vicious rape-murder . . . .").

Aside from the public's interest in knowing whether paid public servants are making

progress in an investigation, law enforcement officials themselves have legitimate reasons for

releasing information about suspects in an ongoing investigation. Investigators release

information about suspects to obtain public assistance in apprehending those individuals (*e.g.*,

the FBI's "10 Most Wanted"), or more generally, to obtain public assistance in solving the crime.

*See, e.g.*, *Rosenberg v. Martin*, 478 F.2d 520, 524 (2d Cir. 1973) (recognizing public interest in

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

release of information about fugitive suspects in order to secure their apprehension). Here, for example, the police repeatedly asked the public to contact them with information about the crime, and specifically asked the public to come forward with any information about Van de Velde. *E.g.*, ¶¶ 75, 131-32; Exh. 2. Alternatively, law enforcement officials release information to assure the public that the crime is being investigated and thus quell public fears. *See Paul*, 424 U.S. at 698. To allow a claim for damage to reputation based merely on the public identification of a suspect would force police to withhold information from the public, stifle public discussion and debate, and hinder law enforcement. *Id.* (noting that it would be surprising if an individual could maintain a due process action against police "who announce that they believe such person to be responsible for a particular crime in order to calm the fears of an aroused populace"). Thus, Van de Velde's claim based on the defendants' statements about the Jovin investigation fails as a matter of public policy.

### 3. Van de Velde Suffered No Tangible Alteration in his Rights or Status Under State Law.

Even if Van de Velde could allege that the defendants made false stigmatizing statements about him, and even if public policy considerations did not bar his claim, his procedural due process claim must fail because he does not allege any "plus" factor sufficient to qualify under the "stigma plus" line of cases. In brief, Van de Velde's claim fails because he was not terminated from any employment by the City of New Haven or the New Haven defendants. Nor have the New Haven Defendants altered the plaintiff's status or passed any laws or ordinances that would bar or limit his employment in any field.

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

The Supreme Court first indicated in *Board of Regents v. Roth*, 408 U.S. 564, 573-74 (1972), that when a state employee is discharged two constitutionally protected liberty interest might be indicated: first, an interest in reputation and; second and interest in avoiding a "stigma or other disability" which forecloses other employment opportunities. "[O]ur reference to a governmental *employer* stigmatizing and employee in *Board of Regents v. Roth*, 408 U.S. 564, 33 L. Ed. 2d 584, 92 S. Ct. 2701 (1972), was made in the context of the employer discharging or failing to rehire a plaintiff who claimed a liberty interest under the Fourteenth Amendment. Defamation by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991)

This holding was further refined by *Paul v. Davis*, which held that that injury to reputation alone is not enough to state a cognizable claim for deprivation of a constitutionally protected interest. *Id.* at 710-12. There, the Supreme Court held that the plaintiff did not have a constitutional claim against police for circulating an allegedly defamatory flyer to local merchants that identified him as an active shoplifter. The Court held that any harm to the plaintiff's reputation, no matter how serious, "does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law," where it does not "distinctly alter[] or extinguish[]" a "right or status previously recognized by state law." *Id.* at 711-12. As in this case, the plaintiff in *Paul* was not an employee of the defendant and the statements concerning the plaintiff were obviously not made in the course of his employment. Therefore, there was no type of hearing or other procedures that could be offered to the plaintiff. In *Roth*, "it was not

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

thought sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment." *Paul* at 710.

In *Siegert*, the Supreme Court reaffirmed *Paul v. Davis* and emphasized that any damages flowing merely from reputational harm cannot state a constitutional claim. There, the plaintiff left his job at a federal hospital and began working for an Army hospital in West Germany. To become "credentialed" in the new job, he asked his former employer to provide job performance information to his new employer. When his former supervisor sent a defamatory letter to his new employer, the plaintiff was denied credentials and lost his job. 500 U.S. at 228-29. The plaintiff sued his former supervisor, but the Supreme Court held the supervisor was entitled to qualified immunity because the plaintiff "failed not only to allege the violation of a constitutional right that was clearly established at the time of Gilley's action, but also to establish the violation of any constitutional right at all." *Id.* at 233. In *Siegert*, the defamatory statement "was not uttered incident to the termination" and held that there was no violation of any constitutional rights despite the fact that "[t]he statements contained in the letter would undoubtedly damage the reputation of one in his position and impair his future employment prospects." *Id.* at 234. The Court further explained:

> The statements contained in the letter would undoubtedly damage the reputation of one in [plaintiff's] position, and impair his future employment prospects. But the plaintiff in *Paul v. Davis* similarly alleged serious impairment of his future employment opportunities as well as other harm. Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But *so long as such damage flows from injury*

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

> *caused by the defendant to a plaintiff's reputation*, it may be recoverable under
> state tort law but is not recoverable [as a constitutional claim.]

*Id.* at 234 (emphasis added). In other words, because the alleged injuries arose solely from the

damage to the plaintiff's reputation, and not some direct act by the defendant which changed the

plaintiff's job status, they did not state a claim for deprivation of a constitutional right. *See also*

*Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994) (holding that a plaintiff does not state a

constitutional claim by alleging "the impact that defamation might have on job prospects, or for

that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a

bad reputation").

  Because the New Haven Defendants were not acting as supervisors or employers of Van

de Velde and because he only alleges harms that are the "typical consequence of a bad

reputation," *id.*, he cannot maintain a claim for deprivation of due process. Van de Velde

alleges, for example, that he "lost, and continues to lose, employment opportunities," and has

"suffered damage to his future earning capacity." ¶ 162. As the Court held in *Siegert*, this harm

to employment opportunities is insufficient to state a claim. 500 U.S. at 234. He further alleges

that he has received unfavorable publicity, that the resulting harm to his reputation has caused

him "humiliation, disgrace, mental anguish, psychological trauma, and severe emotional

distress," and that he was suspended from a graduate degree program at Quinnipiac University, a

private university. ¶¶ 161, 164. Again, these are the ordinary consequences of a bad reputation

and do not state a claim for deprivation of due process. *Valmonte*, 18 F.3d at 1001.

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

While Van de Velde alleges that his job status with Yale and the United States Navy Reserves was "altered," ¶ 167, these alleged alterations fail to qualify as plus factors because Van de Velde does not identify the "right or status previously recognized by state law [that] was distinctly altered or extinguished." *Paul*, 424 U.S. at 711. Even if his job status with Yale or the Navy Reserves was altered, Van de Velde does not plead that his prior job status was protected by law or even that the alteration resulted from some statutory mandate. *Compare Valmonte*, 18 F.3d at 1001-02 (statutory impediment to future employment qualifies as plus factor); *Doe*, 271 F.3d at 57 (holding that "imposition on a person of a new set of legal duties that, if disregarded, subject him or her to felony prosecution" qualifies as plus factor). Without such allegations, Van de Velde's Complaint alleges nothing more than the consequences of a bad reputation. These are insufficient as a matter of law.

Moreover, the New Haven Defendants did not alter the plaintiff's status with the United States Navy or the Department of Defense. The New Haven Defendants had no control over any decisions made by the Navy or the Department of Defense. The New Haven Defendants could not provide the plaintiff with any due process or procedures concerning the actions taken by the Navy or the Department of Defense. Even if the New Haven Defendants could alter Van de Velde's rights or status under law, these allegations are insufficient under *Siegert*. There, where the plaintiff alleged that the defamation caused him to *lose* his government job, the Supreme Court held that this was merely the consequence of a bad reputation and not the deprivation of a constitutionally protected interest. 500 U.S. at 228-29, 234. Here, Van de Velde does not allege

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

that he was fired from employment with the City of New Haven or that the statements attributed

to the New Haven defendants were made during the course of termination – but only that his job

status was somehow "altered." *See* ¶ 38 (Van de Velde had one-year contract with Yale); ¶ 89

(Yale changed his job responsibilities but did not terminate his employment); ¶ 108 (Van de

Velde remained a Yale employee). The plaintiff alleges that his assignment with the National

Infrastructure Protection Center at FBI Headquarters was terminated after officials learned that

he was a suspect in the Jovin homicide. ¶ 169. The also alleges that another assignment which

he had obtained through the Naval Reserves, at the Defense Intelligence Agency, was terminated

and that his security clearance with the Department of Defense was withdrawn. ¶ 170.

The plaintiff has not alleged that his status with the Navy or Department of Defense was

a status that was protected or recognized by state law. The New Haven Defendants did not

control the decisions made by the Navy or the Department of Defense. The New Haven

Defendants could not provide the plaintiff with any due process or procedures concerning the

actions taken by the Navy or the Department of Defense. The lose of any employment

opportunities with the Navy or Department of Defense, if any, were was merely the consequence

of a bad reputation and not the deprivation of a constitutionally protected interest.

In sum, because the defendants made no false statements, because he cannot challenge

police statements about the investigation as a matter of public policy, and because he suffered no

alteration of his rights under law, Van de Velde cannot state a procedural due process claim.

17

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

**C.    VAN DE VELDE HAS NO CLAIM THAT THE NEW HAVEN DEFENDANTS VIOLATED ANY COGNIZABLE SUBSTANTIVE DUE PROCESS RIGHT.**

In light of the foregoing, Van de Velde's due process claim cannot be a true procedural claim but must instead concern the substantive component of the Due Process Clause. That is, Van de Velde's real claim must be that the defendants took some action that was impermissible regardless of the procedure used. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986). But nowhere does Van de Velde identify the substantive due process right that the defendants allegedly violated, and for good reason: Under the facts he has pleaded, the defendants did not infringe his right to substantive due process.

**1.    The Substantive Reach of the Due Process Clause Does Not Encompass Any of Van de Velde's Possible Liberty Interests.**

Under the doctrine of substantive due process, States are prohibited from infringing fundamental liberty interests unless the infringement is narrowly tailored to serve a compelling state interest. *See Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). As the Supreme Court has repeatedly held, only "fundamental" rights "deeply rooted in this Nation's history and tradition" qualify for such protection. *Id.* at 720-21; *accord Reno v. Flores*, 507 U.S. 292, 303 (1993); *Michael H. v. Gerald D.*, 491 U.S. 110, 122, (1989) ("[W]e have insisted not merely that the interest denominated as a 'liberty' be 'fundamental' . . . , but also that it be an interest traditionally protected by our society."). The asserted fundamental liberty interest must be "'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if [it] were sacrificed.'" *Glucksberg*, 521 U.S. at 721 (quoting *Palko v. Connecticut*, 302 U.S. 319,

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

325, 326 (1937)). Applying this stringent standard, the Supreme Court has recognized only a handful of longstanding liberty interests as fundamental, such as the right to marry, *Loving v. Virginia*, 388 U.S. 1 (1967), to have children and direct their upbringing, *Skinner v. Oklahoma*, 316 U.S. 535 (1942); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), and to marital privacy and the use of contraception, *Eisenstadt v. Baird*, 405 U.S. 438 (1972); *Griswold v. Connecticut*, 381 U.S. 479 (1965).

"[B]ecause guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended," the expansion of substantive due process rights beyond these interests is disfavored. *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). Accordingly, substantive due process analysis requires a "careful description" of the asserted liberty interest. *Flores*, 507 U.S at 302. Furthermore, the Court has consistently held that liberty interests already implicated by other constitutional safeguards *cannot* support a substantive due process claim. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.).

Here, Van de Velde has provided *no* description at all of his asserted liberty interest. With no guidance from the Complaint, the most that can be said for his claim is that it must concern something *other* than his claims for procedural due process, equal protection of the laws,

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

and protection against unreasonable searches or seizures, each of which implicates other constitutional provisions and is treated elsewhere in this brief. *See* Parts I, III, & V. Nor, for the reasons set forth below, can it concern any right to privacy. *See* Part IV, *infra. See generally County of Sacramento*, 523 U.S. at 842. As best the New Have Defendants can determine, therefore, Van de Velde's unstated liberty interest must concern a purported right not to be publicly identified as a criminal suspect when he believes that he should not be a suspect at all. *See, e g ,* ¶¶ 6, 77. As the Court has already recognized in its prior Ruling, there is no right to confidentiality regarding ones status as a suspect in a criminal investigation. Ruling at 4. Although our Constitution has long required that arrests or detentions be supported by probable cause or reasonable suspicion, *see generally Terry v. Ohio*, 392 U.S. 1 (1968), there is simply no basis for concluding that the identification of suspects in a criminal investigation, without more, implicates a fundamental liberty interest. *See* Part I.B., *supra* (noting sound policy reasons for public identification of suspects).

2. **Even if Van de Velde Can Assert a Fundamental Liberty Interest, Which He Cannot, The New Haven Defendants' Actions Did Not "Shock the Conscience."**

Even assuming that Van de Velde has some fundamental liberty interest at stake in this action, his allegations nevertheless defeat any claim that the New Haven Defendants infringed that interest. It is well-settled that substantive due process operates only to protect an individual from government power that is arbitrarily and oppressively exercised. *See Daniels*, 474 U.S. at 331. In the context of executive action, only official conduct that "shocks the conscience" is

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

"arbitrary in the constitutional sense." *County of Sacramento*, 523 U.S. at 846-47 (quotation omitted). Thus, even official conduct actionable under general tort law does not give rise to a substantive due process claim unless it violates the "decencies of civilized conduct," *id.* at 846-49, and is so "'brutal' and 'offensive' that it [does] not comport with traditional ideas of fair play and decency," *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957); *see also Paul*, 424 U.S. at 701 (holding that the Fourteenth Amendment is not a "font of tort law").

Here, Van de Velde simply cannot satisfy this standard. As Van de Velde himself alleges, after he had already been "effectively identified" by the media as a suspect, the Yale Defendants announced that the plaintiff was considered a suspect in the case. ¶ 94. When "called upon by the media to confirm the plaintiff's 'suspect' status", the New Haven police publicly confirmed that Van de Velde was among their "pool of suspects." ¶ 96. Thereafter, the New Haven Defendants continued to work with the Yale Defendants in an attempt to solve the crime and even shared information with a private investigator hired by the Yale Defendants to solve the crime. ¶¶ 124, 129 and 131. In March 2001, the defendants held a press conference to announce an increase in the reward for information leading to the identification of the perpetrator. ¶ 131. Such actions, even if based on erroneous evidence as to Van de Velde's connection to the Jovin murder, simply do not shock the conscience.

In *Benzman v. Whitman*, 523 F.3d 119, (2d Cir. 2008) the Second Circuit upheld the dismissal of a substantive due process claim where it was alleged that the defendant knowingly issued a false statement that the air near the World Trade Center was safe to breathe shortly after

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

September 11. The Court noted that "no court has ever held a government official liable for

denying substantive due process by issuing press releases or making public statements. Id. at

125. *See also, County of Sacramento*, 523 U.S. at 854-55 (holding high-speed chase that killed

an escaping motorcyclist's passenger did not shock the conscience, even if police recklessly

disregarded the chance of an accident); *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489

U.S. 189, 197-203 (1989) (holding, where a father beat his child to the point of brain damage,

that it did not shock the conscience for county staff not to take custody of the child even when

informed the child was being abused); *cf. Adams v. Adkins*, 1998 WL 111632 (N.D. Ill. Mar. 6,

1998) (holding, in an emotional distress context, that it was not "extreme and outrageous" for

police to identify plaintiff as a suspect in a robbery, even where they had arrested another

individual for the crime and knew of evidence exonerating the plaintiff). Van de Velde's

substantive due process claim must therefore be dismissed.

### D.    VAN DE VELDE FAILS TO STATE AN EQUAL PROTECTION CLAIM.

Van de Velde also alleges that the defendants violated his rights under the Equal

Protection Clause of the Constitution by treating him differently than other suspects in the

investigation. Specifically, according to Van de Velde, there was no rational basis for

identifying him while failing to identify the rest of the "pool of suspects." ¶ 100.

With these allegations, Van de Velde purports to state a claim for a "class of one" equal

protection violation. Although the Equal Protection Clause is more typically invoked to protect

against governmental discrimination based on an individual's membership in a vulnerable class,

HALLORAN
& SAGE LLP

315 Post Road West
Westport, CT 06880

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

the Second Circuit has recognized "that the equal protection guarantee also extends to individuals who allege no specific membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). To succeed on such a claim, the Second Circuit has historically required a plaintiff to allege (1) that he was treated differently as compared to others who were similarly situated, (2) that this selective treatment was intentional, and (3) that the "selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Giordano v. City of New York*, 274 F.3d 740, 750-51 (2d Cir. 2001) (ultimately quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

The Second Circuit has acknowledged that the Supreme Court's decision in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam) could be read to eliminate the third, "malice" element for class-of-one equal protection claims, but has expressly and repeatedly declined to decide whether it should be read in that manner. *See DeMuria v. Hawkes*, 328 F.3d 704, 707 n.2 (2d Cir. 2003); *Giordano*, 274 F.3d at 751; *Harlen Assocs.*, 273 F.3d at 499-500. In this case, this Court should continue to apply the traditional Second Circuit standard and find that Van de Velde has alleged facts that defeat any argument that the New Haven Defendants acted with an improper motive. But even if this Court were to conclude that Van de Velde merely must allege that the defendants' actions lacked any rational basis, this claim must be dismissed

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

because it is readily apparent the New Haven Defendants' actions were rationally related to a

legitimate purpose.

1.    **This Court Should Dismiss Van de Velde's Claim Because the Complaint Establishes that the New Haven Defendants Did Not Act with Malice.**

Under traditional standards for analysis of class-of-one equal protection claims, the

plaintiff must allege that the defendant acted with malice or some other impermissible motive.

*Giordano*, 274 F.3d at 750-51; *see also Burke v. Town of East Hampton*, 2001 WL 624821, at *8

(E.D.N.Y. Mar. 16, 2001) (dismissing claim partly because the complaint failed to allege that the

government classification was based on improper motive); *ReSource N.E. of Long Island, Inc. v.*

*Town of Babylon*, 80 F. Supp. 2d 52, 59 (E.D.N.Y. 2000) (dismissing claim because the

complaint "fail[ed] to contain any facts suggesting that such treatment resulted from the Town's

malicious intent to injure"). *Olech* did not expressly eliminate this traditional "motive"

requirement, but noted only that a plaintiff could proceed with a class-of-one claim if the

government's actions were "irrational and wholly arbitrary." 528 U.S. at 565. As one court has

noted, *Olech* left the "role of motive . . . unclear." *Hilton v. City of Wheeling*, 209 F.3d 1005,

1008 (7th Cir. 2000).

While the Second Circuit has expressly declined to decide whether an allegation of

malice is required after *Olech*, at least two other circuit courts have concluded that *Olech* did *not*

eliminate the malice requirement. *See Bryan v. City of Madison*, 213 F.3d 267, 277 n.17 (5th

Cir. 2000); *Hilton*, 209 F.3d at 1008; *but see Padilla v. Harris*, 2002 WL 750856 (D. Conn. Apr.

24, 2002) (Arterton, J.) (suggesting disapproval of rule adopted in Seventh and Fifth Circuits but

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

declining to decide whether malice required). As these courts recognized, any other reading of *Olech* would transform practically any government decision into a possible constitutional claim. In *Hilton*, then-Chief Judge Posner wrote that if "*merely unexplained difference* in police treatment of similar complaints made by different people established a prima facie case of denial of equal protection of the laws, the federal courts would be drawn deep into the local enforcement of petty state and local laws." 209 F.3d at 1008 (emphasis added). But neither *Olech* nor the Constitution supports such an expansive reading of the Equal Protection Clause. *Id*.; *see also Olech*, 528 U.S. at 565 (Breyer, J., concurring) (noting that the Court's decision did not "transform many ordinary violations of city or state law" into constitutional claims, because the plaintiff had, in fact, alleged and shown an illegitimate animus); *Lakeside Builders, Inc. v. Planning Bd.*, 2002 WL 31655250, at *3 (D. Mass. Mar. 21, 2002) (noting that if *Olech* removed the malice requirement, "disgruntled applicants for permits, licenses, zoning waivers and the like could turn virtually every denial into a federal constitutional claim").

For these reasons, Van de Velde must allege that the defendants' selective treatment of him was motivated by malice. But far from alleging any impermissible purpose, the Complaint alleges only that Van de Velde was treated differently than other suspects and that there was no rational basis for this treatment. ¶ 100. Mere difference in treatment from persons similarly situated, however, does not establish malicious intent to injure. *Zahra v. Town of Southold*, 48 F.3d 674, 684 (2d Cir. 1995). Moreover, the Complaint includes facts demonstrating that the New Haven Defendants did not act with an impermissible motive in identifying Van de Velde as

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

a suspect in the Jovin investigation. Specifically, according to the Complaint, the plaintiff alleges "that information [reported by the media] regarding the plaintiff's interviews, and the statement that the plaintiff had been interviewed on Monday and Tuesday night and was the 'prime suspect' or 'lead suspect,' could only have come, directly or indirectly from one or more of the New Haven defendants." ¶ 67. The plaintiff does not cite to any facts in support of this claim. On January 11, 1999, Yale issued a statement that identified that plaintiff as being in a "pool of suspects." ¶ 92. This was the "first official public disclosure of the plaintiff's 'suspect' status." ¶ 94. When "called upon by the media to confirm the plaintiff's 'suspect' status", the New Haven police publicly confirmed that Van de Velde was among their "pool of suspects." ¶ 96. The police have repeatedly emphasized, however, that there are additional, as yet unnamed, suspects in the investigation, and that they are far from solving the crime. *See, e.g.*, ¶¶ 117-23, 137. In fact, Defendant Wearing "acknowledged that other unnamed suspects ['a pool of suspects of several people'] 'could have had the opportunity to commit the murder." ¶ 135. This does not reflect any impermissible purpose or intent to injure Van de Velde, and thus Van de Velde's equal protection claim must be dismissed.

### 2. Alternatively, Van de Velde's Equal Protection Claim Fails Because the Defendants' Actions Were Rationally Related to a Legitimate Purpose.

Even if this Court were to conclude that *Olech* eliminated the "malice" requirement, a class-of-one plaintiff still must allege that there was no rational basis for the defendants' actions. *Harlen Assocs.*, 273 F.3d at 500. Under rational basis review, the court affords government decisions a "strong presumption of validity" and will uphold a decision "if there is any

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

reasonably conceivable state of facts that could provide a rational basis for the classification."

*Heller v. Doe*, 509 U.S. 312, 319-20 (1993) (quotation omitted). The burden falls upon the party

challenging the classification "'to negative *every conceivable basis* which might support it.'" *Id.*

at 320 (emphasis added) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364

(1973)).

 Because rational basis review is so deferential, a court may dismiss an equal protection

claim on a motion to dismiss if it finds even one reason that justifies the difference in treatment.

*See, e.g., Weinstein v. Albright*, 261 F.3d 127, 139-42 (2d Cir. 2001) (affirming dismissal of

rational basis claims because the government could reasonably have justified differential

treatment); *Connolly v. McCall*, 254 F.3d 36, 42-43 (2d Cir. 2001) (per curiam) (affirming

dismissal of rational basis claim and noting that under rationality review, "it can be appropriate

to dismiss an equal protection challenge on the pleadings and prior to discovery"); *Knapp v.*

*Hanson*, 183 F.3d 786, 789 (8th Cir. 1999) (affirming 12(b)(6) dismissal where appellees

identified a rational basis for the statute).

 Here, Van de Velde offers the conclusory assertion that the defendants acted with no

rational basis, ¶ 100, but the Complaint itself identifies rational reasons why the defendants

specifically identified Van de Velde as a suspect in the pool of suspects. According to the

Complaint, on January 11, 1999, Yale issued a statement that identified that plaintiff as being in

a "pool of suspects." ¶ 92. This was the "first official public disclosure of the plaintiff's

'suspect' status." ¶ 94. When "called upon by the media to confirm the plaintiff's 'suspect'

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

status", the New Haven police publicly confirmed that Van de Velde was among their "pool of suspects." ¶ 96.  Further, Van de Velde notes that he had been identified as the "prime" suspect in the case in an effort to quell public fears and demonstrate progress in the investigation. ¶ 80. The New Haven Defendants also had asked the public to come forward with information about him. ¶ 75. Thus, even apart from any additional reasons that law enforcement might release selected information about a criminal investigation, Van de Velde has specifically alleged facts demonstrating that the defendants had legitimate reasons to do so in this case. As a matter of law, where there are legitimate law enforcement reasons for revealing information about a criminal investigation, such public statements cannot violate the equal protection clause. *See Zavatsky v. Anderson*, 130 F. Supp. 2d 349, 357 (D. Conn. 2001) ("A complaint's conclusory assertion that [a classification] is 'without rational basis' is insufficient to overcome [the presumption of rationality] where the justification for the policy is readily apparent.") (quotation omitted).

### E.     VAN DE VELDE CANNOT STATE A CLAIM THAT THE DEFENDANTS VIOLATED HIS RIGHT TO PRIVACY.

The Complaint alleges that the defendants violated Van de Velde's right to privacy under the Fourth and Fourteenth Amendments. *See* ¶ 176(b). Van de Velde's Fourth Amendment privacy claim is easily dismissed: The Fourth Amendment only protects against invasions of privacy in the form of governmental "searches and seizures." *County of Sacramento*, 523 U.S. at 843 ("The Fourth Amendment covers only 'searches and seizures.'"). Thus, Van de Velde's

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

Fourth Amendment privacy claim must be dismissed for the same reasons that mandate dismissal of his claims alleging unreasonable searches and seizures.

Van de Velde's Fourteenth Amendment privacy claims similarly require dismissal. The Fourteenth Amendment protects two different types of individual privacy interests: (1) the "interest in independence in making certain kinds of important decisions" (right to autonomy) and (2) the "individual interest in avoiding disclosure of personal matters" (right to confidentiality). *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977); *Barry v. City of New York*, 712 F.2d 1554, 1558-59 (2d Cir. 1983). Van de Velde's privacy claim must be dismissed because the Complaint has failed to provide even one assertion that would implicate either the right to autonomy or the right to confidentiality.

### 1.    The Complaint Does Not Implicate the Autonomy Interest of the Fourteenth Amendment Right to Privacy.

"The autonomy branch of privacy protects personal choice in 'matters relating to marriage, procreation, contraception, family relationships, and child rearing and education.'" *Barry*, 712 F.2d at 1559 (quoting *Paul*, 424 U.S. at 713); *see also Vega-Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 183 (1st Cir. 1997) (noting that right to autonomy "is limited to decisions arising in the personal sphere – matters relating to marriage, procreation, contraception, family relationships, child rearing, and the like"). Van de Velde does not allege – nor could he – that the defendants restricted his ability to make important life choices about any of these fundamental interests and, thus, he fails to state an autonomy claim.

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

2.    **The Defendants Did Not Violate Van de Velde's Right to Confidentiality.**

Further, the Complaint does not allege a violation of the right to confidentiality, as the

"right to nondisclosure" found in the Fourteenth Amendment only protects against disclosures of

*personal matters. Barry*, 712 F.2d at 1559; *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996)

("[The] protection against public dissemination of information is limited and extends only to

highly personal matters representing the most intimate aspects of human affairs.") (quotation

omitted). Thus, the Second Circuit has found a right to nondisclosure only with respect to

medical information, *Doe v. New York*, 15 F.3d 264, 267 (2d Cir. 1994), information regarding

sexual matters, *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999), and, in some situations,

financial information, *Barry*, 712 F.2d at 1559-64. Courts have consistently refused to extend

the right to confidentiality beyond medical, financial, and other intimately personal data. *See*

*Vega-Rodriguez*, 110 F.3d at 183 (noting the right to privacy has "not extended beyond

prohibiting profligate disclosure of medical, financial, and other intimately personal data"); *see*

*also Paul*, 424 U.S. at 712-14 (disclosure of an arrest); *Stoianoff v. Commissioner of Motor*

*Vehicles*, 107 F. Supp. 2d 439, 447 (S.D.N.Y. 2000) (social security number); *Spetalieri v.*

*Kavanaugh*, 36 F. Supp. 2d 92, 108-109 (N.D.N.Y. 1998) (taped racially derogatory comments).

As specifically relevant to this case, the right to confidentiality does not protect against

the public disclosure of information by law enforcement about an individual, even if that

information is false and places the plaintiff in a bad light. Thus, in *Paul v. Davis*, *supra*, the

plaintiff argued that his "right to privacy" prohibited the state from publicizing information about

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

his prior arrest on shoplifting charges. The Court soundly rejected this argument, stating that

"[n]one of our substantive privacy decisions hold this or anything like this, and we decline to

enlarge them in this manner." 424 U.S. at 713. Similarly, in *Gonzalez v. Leonard*, 497 F. Supp.

1058 (D. Conn. 1980), this Court considered a claim that law enforcement invaded the plaintiff's

right to privacy by distributing false information about him. The Court rejected this argument,

interpreting *Paul v. Davis* to hold that the right to privacy "does not extend to the protection of

an individual's reputation from unfavorable publicity, prompted by the actions of law

enforcement officials, which falsely places him in a bad light." *Id.* at 1070; *see also Baker v.*

*Howard*, 419 F.2d 376, 377 (9th Cir. 1969) (per curiam) (finding no violation of right to privacy

when the police suggested the plaintiff had committed a crime, even though they had already

investigated and concluded that he had not done so); *Rosenberg*, 478 F.2d at 524-25 (rejecting

claim that law enforcement had violated plaintiff's right to privacy by making public statements

about him and his involvement in a crime before his arrest). These cases thus support the basic

principle that law enforcement should not be held liable for releasing information about an

ongoing criminal investigation.

 Here, the defendants disclosed that Van de Velde was a suspect in a murder investigation.

But Van de Velde simply does *not* have a Fourteenth Amendment right to confidentiality in this

information. Status as a suspect is not a highly personal interest analogous to health, sexual

preference or financial status. To the contrary, this information is more similar to an arrest, or

publication of a list of sex offenders, matters that deal not with personal information about the

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

individual, but with criminal investigation or prosecution. As established in cases such as *Paul v. Davis*, *Gonzalez*, and *Baker*, even if the defendants knew that Van de Velde did not commit the crime, they did not violate any constitutional right to privacy by stating that he was a suspect in the crime. Put simply, the Fourteenth Amendment's right to confidentiality does not protect against the disclosure of Van de Velde's status as a suspect in a criminal investigation.

### F.    VAN DE VELDE FAILS TO STATE A FOURTH AMENDMENT CLAIM.

The Complaint alleges that the defendants violated Van de Velde's Fourth Amendment right to be free from "unreasonable searches and seizures." This claim must fail because the Complaint does not allege any facts that constitute a violation of that Amendment.

#### 1.    The Complaint Does Not Allege That Defendants Conducted Any Unreasonable Searches.

Read liberally, Van de Velde's Complaint challenges three searches: (1) the search of Van de Velde's vehicle, ¶ 64; (2) the collection of Van de Velde's DNA sample, ¶ 145; and (3) the metal detector operators' search, ¶ 153. As a matter of law, however, all of these searches were fully consistent with the Fourth Amendment.

The text of the Fourth Amendment dictates that governmental searches be analyzed by the standard of "reasonableness." *See Illinois v. McArthur*, 531 U.S. 326, 330 (2001). Thus, to state a claim for violation of the Fourth Amendment, a plaintiff must allege that he has an expectation of privacy in the place searched and that such expectation is reasonable. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Searches conducted with an individual's voluntary consent,

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

however, are necessarily reasonable under the Fourth Amendment. *See, e.g., Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

Applying these standards, all of the challenged searches were reasonable. Van de Velde expressly pleads that the search of his car and the collection of his DNA sample were consensual. ¶¶ 64, 145. According to the Complaint, "plaintiff offered the defendant officers the opportunity to search his vehicle, his residence, subject him to a polygraph examination, and take blood and/or other DNA evidence from him. The officers searched the plaintiff's vehicle with his consent..." ¶ 64. Both of these searches were thus reasonable under the Fourth Amendment. *See Schneckloth*, 412 U.S. at 219; *see also Soo Line*, 125 F.3d at 483 (plaintiff may plead facts that demonstrate he has no claim). And with respect to the metal detector search Van de Velde does not even attempt to allege that he had an expectation of privacy – much less a reasonable one – in the public streets of the East Rock neighborhood of New Haven. And for good reason. A plaintiff cannot claim an expectation of privacy, reasonable or otherwise, in a public street when he cannot even claim an expectation of privacy in his own driveway or in the trash he leaves on his curb. *See, e.g., California v. Greenwood*, 486 U.S. 35, 40 (1988) (no reasonable expectation of privacy in trash deposited for curbside pickup); *United States v. Williams*, 219 F. Supp. 2d 346, 360 (W.D.N.Y. 2002) ("There is no expectation of privacy in a driveway that is exposed to the public."); *Rodriguez v. United States*, 878 F. Supp. 20, 24 (S.D.N.Y. 1995) ("[Defendant] had no reasonable expectation of privacy on the public street.").

HALLORAN
& SAGE LLP

315 Post Road West
Westport, CT 06880

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

2.    **The Complaint Fails to Allege a Seizure Under the Fourth Amendment.**

Again read liberally, the Complaint recites two fact patterns that might be challenged as unlawful "seizures" under the Fourth Amendment: (1) Van de Velde's December 8 interview with the police, ¶¶ 61-65, and (2) Van de Velde's conversation with a Yale official that he believes was conducted on behalf of the New Haven police, ¶¶ 108-15. As with the alleged searches, neither of these alleged seizures violates the Fourth Amendment.

A Fourth Amendment seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also Terry*, 392 U.S. at 19 n.16 (noting that a seizure occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of the citizen"). This basic principle makes clear that "mere police questioning does not constitute a seizure," so long as the individual is free to leave. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen . . . ."); *see also United States v. Lee*, 916 F.2d 814, 819 (2d Cir. 1990) ("Certainly, a police officer is free to approach a person in public and ask a few questions; such conduct, without more, does not constitute a seizure.").

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

Moreover, as with searches, voluntary consent to police questioning does not offend the Fourth Amendment. *See, e.g., Bostick*, 501 U.S. at 439 ("The Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation."); *Mendenhall*, 446 U.S. at 557-58 (upholding finding that respondent had not been seized because she voluntarily accompanied federal agents to their office).

In the Complaint, Van de Velde never claims he was seized for purposes of the Fourth Amendment. As to the police interrogation, Van de Velde emphasizes that he "voluntarily submitted to this interrogation" and "voluntarily answered every question put to him." ¶¶ 63, 65. But voluntary submission to questioning does not constitute a seizure under the Fourth Amendment. *See Bostick*, 501 U.S. at 439.    Therefore, the voluntary interrogation by the New Haven Defendants was not a seizure under the Fourth Amendment.

For these reasons, Van de Velde fails to state a Fourth Amendment claim.

## G.     THE NEW HAVEN DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

The New Haven Defendants are entitled to qualified immunity for the plaintiff's claims brought pursuant to 42 U.S.C. § 1983 because their conduct, as alleged in the Second Amended Complaint, did not violate any clearly established rights or, in the alternative, was objectively reasonable.

> To establish [qualified] immunity, a defendant must demonstrate that his conduct did not violate any of the plaintiff's ... clearly established rights, ... that would have been known to a reasonable person or that it was objectively reasonable for him to believe that his ... actions did not violate any of those clearly established rights.

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

*Lennon v. Miller*, 66 F.3d 416, 422 (2nd Cir. 1995). "However, the availability of qualified

immunity does not turn on whether the defendants violated the plaintiff's rights; qualified

immunity is a defense ..." *Id.* at 423. The analysis of whether a right is clearly established "must

be undertaken in light of the case's specific context, not as a broad general proposition."

*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). For example, it does no good to allege that a

public official violated the right to free speech, and then conclude that the right to free speech

has been "clearly established" since 1791. *International Action Ctr. v. United States*, 365 F.3d

20, 25 (D.C. Cir. 2004). Instead, courts consider:

> (1) whether the right in question was defined with 'reasonable
> specificity;' (2) whether the decisional law of the Supreme Court
> and the applicable circuit court support the existence of the right in
> question; and (3) whether under preexisting law a reasonable
> defendant official would have understood that his or her acts were
> unlawful.

*Pena v. Deprisco*, 432 F.3d 98, 115 (2d Cir. 2005).

Any right had to be defined with specificity and identified within Supreme Court or

Second Circuit decisions. *Pabon v. Wright*, 459 F.3d 241, 255 (2d Cir. 2006). Those decisions

had to involve factual circumstances that corresponded to the circumstances at issue. *McKee v.*

*Hart*, 436 F.3d 165, 173 (3d Cir. 2006).

As discussed above, there are no clearly established rights under the Due Process Clause

or the Equal Protection Clause or any other provisions of the Constitution which prohibit the

identification of an individual as a suspect in a crime. The defendants have found no case law

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

which establishes any such right. In *Siegert*, the Supreme Court affirmed the trial court's finding

that no clearly established constitutional right had been violated when a defendant supervisor

sent an allegedly defamatory letter concerning the plaintiff's job performance. 500 U.S. 226 at

233. The New Haven Defendants have been unable to find any case law which clearly

establishes any rights under the Due Process Clause or the Equal Protection Clause which would

prohibit the disclosure of a suspect's identity or require the disclosure of the identity of all

suspects.

Further, there are no procedures or due process which a police department could afford a

suspect prior to publicly commenting on his status as a suspect. The Constitution does not

require a police department to provide a suspect with a hearing prior to commenting on his status

as a suspect. No such procedures exist under state or federal law. Any such hearing would

obviously interfere with the ongoing investigation of a crime and would undoubtedly

compromise the investigation if confidential information were disclosed to a suspect.

Additionally, there is no state or federal law which requires the disclosure of all suspects

in the event that the identity of one or more suspects is disclosed to the public. Therefore, it

would have been objectively reasonable for the New Haven Defendants to believe that they were

not violating any of the plaintiff's clearly established rights while engaged in the conduct alleged

in the Second Amended Complaint.

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

**H.    VAN DE VELDE'S CLAIMS UNDER THE CONNECTICUT CONSTITUTION MUST BE DISMISSED.**

In the final paragraph of Count One, Van de Velde alleges that "[t]he defendants' conduct also violated plaintiff's rights under the Constitution of the State of Connecticut." ¶ 177. Van de Velde provides no further specification of his Connecticut constitutional claims, no doubt aware that these claims are not cognizable under Section 1983. *See Powers v. Coe*, 728 F.2d 97, 105 (2d Cir. 1984) ("It is axiomatic that violations of state law alone are insufficient to state a claim for section 1983 relief."); *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) ("[A] violation of state law alone does not give rise to a federal cause of action under § 1983."). On this basis alone, Van de Velde's Connecticut constitutional claims must be dismissed.

Further, this Court should not permit Van de Velde to replead his Connecticut constitutional claims as separate counts. Van de Velde presumably hopes to invoke state constitutional provisions concerning unreasonable searches or seizures, due process, and equal protection of the law. CONN. CONST. art. I, §§ 7, 8, 20. While mindful of its authority to interpret these provisions broadly, the Connecticut Supreme Court has nevertheless construed them as coextensive with their federal counterparts or governed by similar legal standards. Thus, "[t]he equal protection and due process clauses of the United States and Connecticut constitutions have the same meanings and the same limits." *Brunswick Corp. v. Liquor Control Comm'n*, 440 A.2d 792, 797 n.4 (Conn. 1981); *Miller v. Heffernan*, 378 A.2d 572 (1977). Recent cases note that the Connecticut Constitution *might* provide more substantive due process protection than the federal Constitution in certain circumstances, but such protection still guards

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

against only "the most arbitrary and conscience shocking governmental intrusions into the personal realm," and only for rights "recognized at common law . . . prior to 1818 [the year of adoption]." *Ramos v. Town of Vernon*, 761 A.2d 705, 728 (Conn. 2000) (quotation omitted); *see also Falco v. Institute of Living*, 718 A.2d 1009, 1014 (Conn. App. Ct. 1998) (under a similar analysis, holding that "privacy is not a constitutionally incorporated common-law right" in Connecticut), *rev'd on other grounds*, 757 A.2d 571 (Conn. 2000). Finally, just as with the Fourth Amendment, voluntary consent defeats any Connecticut constitutional claim for an unreasonable search or seizure, *Connecticut v. James*, 678 A.2d 1338, 1347 (Conn. 1996); *Connecticut v. Reagan*, 546 A.2d 839, 842 (Conn. 1988), and a plaintiff can have no reasonable expectation of privacy in the public streets, *cf. Connecticut v. DeFusco*, 620 A.2d 746, 751 (Conn. 1993) (finding no reasonable expectation of privacy in curbside trash).

As a result, even if he were allowed to replead his state constitutional allegations as separate counts, Van de Velde would fail to state a claim for the same reasons he cannot state a claim under the United States Constitution. *See* Parts I-V, *supra*.

## I.    VAN DE VELDE'S COMMON LAW CLAIMS MUST BE DISMISSED.

In addition to his claims under federal law, Van de Velde offers two state law claims that he hopes to shoehorn into his case through this Court's diversity or supplemental jurisdiction: invasion of privacy by false light, ¶¶ 178-80, and intentional infliction of emotional distress, ¶¶ 181-85. Under the facts as Van de Velde pleads them (and which he cannot deny), Van de Velde again fails to state a claim against the New Haven Defendants.

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

1.    **Van de Velde Has Not Stated – and Cannot State – a Claim for Invasion of Privacy by False Light.**

In *Goodrich v. Waterbury Republican-American, Inc.*, 448 A.2d 1317 (Conn. 1982), the Connecticut Supreme Court recognized a tort for "false light," along with several other claims loosely grouped under the tort for invasion of privacy. *Id.* at 1328-29 (citing RESTATEMENT (SECOND) TORTS § 652A [hereinafter RESTATEMENT]). While defamation redresses injury to reputation, false light remedies emotional and mental suffering from "interfere[ence] with the right of the plaintiff to be let alone." *Id.* at 1329 & n.19 (quotations omitted).

Notwithstanding its different remedial focus, the "essence" of a false light claim is similar to that of defamation: The published material must be false. *See id.* at 1330. A plaintiff must show that (1) the defendant placed him a false light that would be "highly offensive to a reasonable person," and (2) the defendant acted with knowledge or reckless disregard of the falsity of the publicized matter and the false light in which the public would view the plaintiff. *Id.* at 1330. Van de Velde cannot satisfy these requirements.

i.    **The Defendants Made No False Statements About Van de Velde.**

Van de Velde cannot sustain a claim for false light unless he can show that the defendants made false statements about him. *Jonap v. Silver*, 474 A.2d 800, 806 (Conn. App. Ct. 1984) ("It is essential to this theory of liability that the material published concerning the plaintiff *is not true*.") (emphasis added). But as described above, Van de Velde cannot sustain this burden. The defendants identified him as a suspect in the Jovin investigation, and he was in fact a suspect. And although Van de Velde claims that the defendants publicly branded him as Jovin's

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

murderer, the Complaint establishes that the defendants did no such thing. In fact, according to the complaint, the police have repeatedly emphasized, however, that there are additional, as yet unnamed, suspects in the investigation, and that they are far from solving the crime. ¶¶ 117-23, 135, 137. Indeed, as Van de Velde alleges, the police have stated "that the investigation has 'exhausted all avenues,' [and] that they have few if any leads, and little if any evidence identifying Ms. Jovin's killer." ¶ 143.

That Van de Velde believes he should not have been a suspect in the first place is irrelevant as a matter of law to a claim of false light. In *Strutner*, the plaintiff sued a publisher for false light after its newspaper identified him as the father of a man questioned as a suspect in a brutal rape and murder of an eight-year-old girl. Although sympathetic to the plaintiff's anguish, "especially . . . if the son be erroneously suspected," the court held as a matter of law that there could be no false light claim against the publisher because "there are no allegations of falsity as to salient matters. [Plaintiff's son] was a suspect questioned by the police . . . . [and] Plaintiff is [his] father." 442 N.E.2d at 134-35. Similarly here, as much as Van de Velde believes he has been wrongly suspected, he *was* among the pool of suspects identified by the police. That fact is inescapable, rendering the defendants' statements true and dooming any false light claim against them. *See Goodrich*, 448 A.2d at 1330-31.

### ii.    A False Light Plaintiff Must Allege Actual Malice, Which Van de Velde Negates by His Own Allegations.

A false light plaintiff must show not only that the publications at issue were false and highly objectionable, but also that the defendants acted with knowledge or reckless disregard of

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

their falsity. *See Goodrich*, 448 A.2d at 1330. As the Connecticut Supreme Court recognized in *Goodrich*, this standard derives from First Amendment principles recognized by the United States Supreme Court in *Time, Inc. v. Hill*, 385 U.S. 374 (1967). There, the Court held that, on matters of public interest, a false light plaintiff must demonstrate "actual malice" on the part of the defendant. *See id.* at 387-88. In Connecticut, this "actual malice" standard applies to all false light claims regarding matters of public concern, even where the plaintiff is not a public person. *Goodrich*, 448 A.2d at 1329; *Reaves v. Hartford Courant Co.*, 2003 WL 1090699, at *7 (Conn. Super. Ct. Feb. 28, 2003).

In his Complaint, Van de Velde offers the conclusory allegation that the New Haven Defendants acted with knowledge or reckless disregard of "the falsity of the matters published" – even though it was undeniably true that he was a murder suspect. Even accepting "falsity of the matters published," however, Van de Velde's other allegations defeat this claim. As described more completely above, Van de Velde specifically alleges that the New Haven Defendants took that demonstrated that far from disregarding the truth as to Van de Velde's connection to Jovin's death, the New Haven Defendants were keenly intent on discovering the truth. Specifically alleged by Van de Velde, the New Haven Defendants continued to work with the Yale Defendants in an attempt to solve the crime and even shared information with a private investigator hired by the Yale Defendants to solve the crime. ¶¶ 124, 129. In March 2001, the defendants held a press conference to announce an increase in the reward for information leading to the identification of the perpetrator. ¶ 131. These allegations, which are binding upon Van de

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

Velde, reflect not malice or recklessness, but rather a considered regard by the defendants for the fact that Van de Velde might be innocent.

Because the defendants made no false statements and because Van de Velde cannot allege that the defendants acted with actual malice, his false light claim must be dismissed.

**2.    Van de Velde Cannot State a Claim Against the New Haven Defendants for Intentional Infliction of Emotional Distress.**

To make out a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show that (1) the defendant intended to inflict emotional distress, or knew or should have known that his conduct would likely cause emotional distress; (2) the defendant's conduct was "extreme and outrageous"; (3) the defendant's conduct caused the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was "severe." *Appleton v. Board of Educ.*, 757 A.2d 1059, 1062 (Conn. 2000). Such claims are disfavored under Connecticut law. *See Whitaker v. Haynes Constr. Co.*, 167 F. Supp. 2d 251, 255 (D. Conn. 2001). To state a claim, therefore, a plaintiff not only must allege each of the above elements, "but also must allege facts sufficient to support them." *Id.* at 254. Van de Velde fails to state a claim against the New Haven Defendants because his allegations establish that their conduct was not "extreme and outrageous."

"The standard in Connecticut to demonstrate extreme and outrageous conduct is stringent." *Huff v. West Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998). A plaintiff must show that the defendants' conduct "exceed[s] all bounds usually tolerated by

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

decent society," *DeLaurentis v. New Haven*, 597 A.2d 807, 828 (Conn. 1991), and liability will

be found "only where the conduct has been so outrageous in character, and so extreme in degree,

as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community," *Appleton*, 757 A.2d at 1062 (quoting RESTATEMENT § 46

cmt d). This determination is initially a question for the court, and only where reasonable minds

disagree can a claim go to the jury. *Id.* Accordingly, a plaintiff must allege "specifically how

the challenged actions were done in a manner that was so egregious or oppressive as to rise to the

level of extreme and outrageous conduct." *Franco v. Yale University*, 161 F. Supp. 2d 133, 142

(D. Conn. 2001). Here, while Van de Velde offers the conclusory allegation that "[t]he actions

of the defendants with respect to the plaintiff . . . were extreme and outrageous," ¶ 177, at no

point does he specify how their conduct was "utterly intolerable in a civilized community,"

leaving the Court to fill in the blanks. His claim must therefore be dismissed. *See Franco*, 161

F. Supp. 2d at 142.

  Even if this Court were to indulge Van de Velde and construct the strongest possible

claim on his behalf, it still could not find a colorable IIED claim. Courts have expressly found

that publicly identifying a criminal suspect is not "extreme and outrageous," *even where the

speaker is aware of the plaintiff's innocence.* In *Adams v. Adkins, supra*, the plaintiff was

arrested for armed robbery even though fingerprint evidence excluded him as a suspect and he

could establish his presence elsewhere at the time of the crime. The plaintiff was subsequently

released and all charges against him were dismissed, but one month later (and four days after

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

another person was arrested for the robbery), a local newspaper ran a story noting that the FBI still suspected the plaintiff of the crime. The plaintiff sued the police and FBI agents alleging that their wrongful identification of him as a suspect intentionally caused him emotional distress. Applying the Restatement standards, the court granted the defendants' motion to dismiss, holding that the assertion that defendants "somehow had a duty to affirmatively clear [plaintiff's] name is completely without merit." 1998 WL 111632, at *6. Even accepting that the defendants knew of information exonerating the plaintiff, the court held further that "to suggest that their inaction was outrageous enough to base an IIED claim on it borders on frivolity." *Id.* Similarly, in *Clark v. Township of Falls*, 890 F.2d 611 (3d Cir. 1989), the Third Circuit found no claim for IIED where the defendants falsely reported the plaintiff to the district attorney for embezzling funds and publicly announced that he had violated state campaign laws. The court held as a matter of law that the defendants' actions, "while deplorable, [did] not constitute extreme and outrageous conduct." *Id.* at 624.

Under these precedents, Van de Velde cannot possibly state an IIED claim against the New Haven Defendants. Taking his Complaint in its best light, Van de Velde's claim is no stronger than that of the *Adams* plaintiff: He alleges that the defendants publicly identified Van de Velde as a suspect even though they knew there was no evidence linking him to the crime, and even though DNA evidence is arguably exculpatory as to him. But as *Adams* makes clear, the New Haven Defendants have no duty to clear Van de Velde's name. *See* 1998 WL 111632 at *6. Moreover, if the *Clark* defendants could defeat an IIED claim for their public vilification of

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No 412195

the plaintiff, the alleged conduct of the New Haven Defendants simply cannot be considered "extreme and outrageous." Accordingly, judgment must enter in favor of the New Haven Defendants on the Third Count of the Second Amended Complaint.

## IV.    CONCLUSION

For the foregoing reasons, the Court should enter judgment in favor of the New Haven Defendants.

THE DEFENDANTS:
MELVIN WEARING, BRIAN SULLIVAN,
THOMAS TROCCHIO, EDWARD KENDALL
and the ESTATE OF ANTHONY DILULLO

By: _____

Robert A. Rhodes of
HALLORAN & SAGE LLP
Fed. Bar #ct13583
315 Post Road West
Westport, CT 06880
(203) 227-2855

315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No. 412195

CERTIFICATION

This is to certify that on this 23rd day of June, 2003, a copy of the foregoing
Memorandum in Support of the New Haven Defendants' Motion for Judgment on the Pleadings
was filed electronically and served upon by mail on anyone unable to accept electronic filing.
Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic
filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the
Court's CM/ECF System.

Robert A. Rhodes

455373 1(HSFP)

1170086v 1
315 Post Road West
Westport, CT 06880

HALLORAN
& SAGE LLP

Phone (203) 227-2855
Fax (203) 227-6992
Juris No  412195