1                    UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF CONNECTICUT

3

4      - - - - - - - - - - - - - - - x
                                     :
5      JAMES VAN DE VELDE            :   No. 3:01CV2296(RNC)
                                     :
6                    Plaintiff,      :
                                     :
7               vs                   :
                                     :
8      MELVIN WEARING, ET AL,        :
                                     :   HARTFORD, CONNECTICUT
9                    Defendants.     :   SEPTEMBER 17, 2010
                                     :
10     - - - - - - - - - - - - - - - x

11

12

13                      TELEPHONE CONFERENCE

14

15

        BEFORE:
16
                   HON. ROBERT N. CHATIGNY, U.S.D.J.
17

18

19

20                               Darlene A. Warner, RDR-CRR
                                 Official Court Reporter
21

22

23

24

25

```
1    APPEARANCES:

2

3        FOR THE PLAINTIFF:

4            JACOBS, GRUDBERG, BELT, DOW & KATZ
                 350 Orange Street
5                P.O. Box 606
                 New Haven, Connecticut 06503-0606
6            BY:  DAVID T. GRUDBERG, ESQ.

7            JAMES J. MEYERSON, ESQ.
                 396 Broadway
8                Suite 601
                 New York, NY 10013
9            BY:  JAMES I. MEYERSON, ESQ.

10

         FOR THE DEFENDANT:
11
             WIGGIN & DANA
12               265 Church Streetd
                 P.O. Box 1832
13               New Haven, Connecticut 06510
             BY:  AARON S. BAYER, ESQ.
14
             HALLORAN & SAGE
15               315 Post Road West
                 Westport, Connecticut 06880
16           BY:  ROBERT AVERY RHODES, ESQ.
                 STEPHEN P. FOGERTY, ESQ.
17

18

19

20

21

22

23

24

25
```

1                          11:00 A.M.

2

3            THE COURT:  Good morning.  Would you please

4    state your appearances for the record?  I'm with Darlene

5    Warner, or court reporter.

6            MR. GRUDBERG:  For the plaintiff, Your Honor,

7    David Grudberg.  And James Meyerson is also on the line

8    for Mr. Van De Velde as well.

9            MR. MEYERSON:  Good morning, Your Honor.

10            MR. BAYER:  For the Yale defendants, it's

11    Attorney Bayer from Wiggin & Dana.

12            MR. FOGERTY:  And Stephen Fogerty and Robert

13    Rhodes for the New Haven defendants.

14            THE COURT:  Is that everybody?

15            SPEAKER:  Yes, Your Honor.

16            THE COURT:  Thank you very much.

17            I appreciate your being available to me this

18    morning and I apologize for not being able to do this as

19    scheduled earlier this week.  We have commenced a

20    six-defendant drug conspiracy case that took some time in

21    jury selection and the trial's expected to last a month,

22    and rather than keeping you waiting any longer, I wanted

23    to have an opportunity to tell you where I stand with

24    regard to the pending motions.

25            I think that everybody has had more than a

1    sufficient opportunity to present their views orally and

2    in writing and I trust that there's nothing new that

3    anybody has to say.  On that assumption, I propose to tell

4    you how I am ruling on the pending motions.

5         Back in 2004, I dismissed the case pursuant to a

6    written ruling that summarized my views on the

7    insufficiency of the federal claims and I invited the

8    plaintiff to refile the state law claims in Superior

9    Court.  At the time I failed to realize that we had

10   diversity jurisdiction.

11        The judgment was amended to restore the state

12   law claims based on diversity jurisdiction, and in 2008

13   the plaintiff was given an opportunity to file a second

14   amended complaint supplementing the allegations of his

15   previous pleading and setting forth all his theories of

16   liability against both groups of defendants under both

17   federal and state law.  I thought that this was in the

18   interest of all concerned.

19        The case is now before me on a motion to dismiss

20   filed by the Yale defendants and a motion for judgment on

21   the pleadings filed by the New Haven defendants.  I am

22   going to be dismissing the federal claims but I'm going to

23   deny the motions with regard to the state law claims.

24   That's the bottom line.  I'm going to be issuing a written

25   ruling probably after this criminal case is completed, but

1    I want to summarize today the basic reasons for these

2    rules.

3              I know that the plaintiff feels strongly that

4    what happened here should be deemed a violation of his

5    constitutional rights.  I understood that back in 2004 and

6    I understand that now, but I don't think that the

7    constitution provides him with a remedy.

8              It may be that the United States Supreme Court

9    has denied a remedy to people like the plaintiff in the

10   belief individualized remedy might well be available under

11   state law, and I conclude that in this case the

12   Connecticut Supreme Court likely would want me to permit

13   the plaintiff to proceed.

14             Let me talk a bit about the key facts in my

15   opinion, and here I'm going to be saying things that are

16   well-known to you but I think it's important to focus on

17   the key facts.

18             The second amended complaint, in essence,

19   alleges that the plaintiff is an honorable person who was

20   successfully building a good life, one that included

21   public service as well as teaching, and he alleges, in

22   essence, that the defendants used him for their own

23   selfish purposes with reckless disregard for his

24   legitimate interests and in the process managed to

25   foreseeably inflict grave and lasting harm on his

1    reputation.

2         He alleges in substance that the only facts

3    available to the police and Yale that would conceivably

4    bring him under suspicious, were facts that he himself

5    publicly acknowledged, facts that were publicly known,

6    facts that were undisputed, specifically the fact that he

7    had a relationship with Ms. Jovin, a teacher/student

8    relationship; the fact that he saw her on the day she was

9    murdered; and the fact that her body was found

10   approximately a half a mile from his home.

11        He alleges that the police had nothing more than

12   that, yet leaked information to the press suggesting that

13   they did have more than that and indeed that the

14   information in their possession unknown to the public made

15   him the lead suspect in the case.  If that's true, then I

16   think that it satisfies the requirements of a cause of

17   action for false light under the principles of the

18   restatement which the Connecticut Supreme Court has

19   embraced.

20        Looking more specifically, we see that on

21   December 7, the plaintiff met briefly with members of the

22   investigative team and provided them with a copy of the

23   documents he had received from Jovin on the 4th.  Next

24   day, December 8, the *Register* quoted defendant Wearing's

25   statement that the police did not have a suspect but

1      believed the victim knew her assailant.  The article also

2      presented the plaintiff's views which he had previously

3      stated publicly, that Jovin had lived a laudable life and

4      that her murder was of course tragic.

5             That night the plaintiff was interrogated at

6      length and accused of killing Jovin.  He did not assert

7      his right to counsel but instead submitted to the

8      questioning unaided by counsel.  He denied the

9      allegations, he volunteered to take a polygraph, he

10     offered the officers access to his home, he offered to

11     submit to a blood test, and he offered the officers access

12     to his car.  The officers searched the car but declined

13     the other offers.

14            The complaint alleges, as I interpret it, that

15     the defendants found no evidence to support a belief or

16     suspicion that the plaintiff was involved in the murder.

17     There is, in particular, no forensic evidence, no evidence

18     of an improper relationship, no evidence of motive and no

19     evidence that this individual was capable of doing such a

20     heinous thing.  Nonetheless, lacking any evidence, the

21     defendants represented to the *Register* that the plaintiff

22     was the prime suspect in the murder.

23            A member of the public could reasonably

24     understand that this meant that the police had in their

25     possession information that went well beyond the facts

1    that were publicly known and undisputed and that this

2    information pointed significantly to the plaintiff as the

3    killer, otherwise why would he be referred to as the prime

4    or lead suspect?

5              It could be that they had no suspects as they

6    were stating officially and thus could look upon this

7    individual as the lead suspect simply because of the facts

8    that were publicly known.  If that's the case, then I

9    think a false light claim lies.

10             Let me turn to the intentional infliction of

11   emotional distress claim.

12             I think that this is a difficult claim for any

13   plaintiff to successfully litigate.  The threshold is very

14   high and I think it is possible that this plaintiff could

15   have a legally viable false light claim without having a

16   legally viable IIED claim, but I see no reason to dismiss

17   the IIED claim.  I don't know what actually happened.  The

18   rules governing pleading contemplate that I should err on

19   the side of allowing the plaintiff to proceed on this

20   theory since he's going to be allowed to proceed on a

21   false light claim, and this is an undeveloped area of the

22   law.

23             The plaintiff has pleaded a host of theories,

24   understandably, because we have found only a handful of

25   cases in the country that involved claims for defamation

1    and false light and intentional infliction of emotional

2    distress in the context of the use of the media by law

3    enforcement in connection with criminal investigations.

4         As we discussed at oral argument, the genius of

5    the common law is to focus attention very specifically on

6    the particular facts and circumstances of the case, and in

7    that context I'm going to deny the motions as against the

8    IIED claim pending further developments.

9         I recognize that this means the plaintiff will

10   have an opportunity to engage in discovery.  It is unusual

11   for a suspect in a criminal case to be able to engage in

12   discovery with regard to an open investigation in which he

13   allegedly remains a suspect, but that's not unprecedented

14   and that's a different question from the one presented by

15   the motions, and it's a question that I'll have to address

16   with you.  But I do think that we can manage that in a way

17   that avoids undue prejudice to any legitimate interest of

18   the defendants or the public.

19        With regard to the federal claims, I want to

20   keep you a bit longer, if I may.

21        One of the reasons this case has been pending so

22   long is because the plaintiff has made it clear to me that

23   he regards the federal claims as his best claims and the

24   state claims have received less attention.  Respecting

25   counsel as I do, I've tried to understand that not wanting

1    to miss something that could account for what has been a

2    difference of opinion between us.

3         When I dismissed the case in 2004, I made it

4    clear that I didn't think the federal claims could be

5    successful, and in light of that I would have thought that

6    plaintiff's counsel would have focused more on the state

7    law claims without giving up on the federal claims while

8    preserving a right to appeal my ruling.  But my point here

9    is simply that trying to understand how plaintiff's

10   counsel evaluates the case, wanting to understand that,

11   I've permitted the filing of a second amended complaint

12   and I've taken a lot of time, I've spent many, many hours

13   looking very closely at these various theories and all of

14   the case law pertaining to them, and I come out as I did

15   before for reasons that I will now briefly summarize.

16        I understand that the plaintiff used the equal

17   protection claim as a particularly good one.  This is a

18   class of one claim.  The plaintiff asserts that he was

19   treated differently than other suspects.  To state a class

20   of one claim, the plaintiff must identify similarly

21   situated individuals who were treated differently for no

22   legitimate reason.  In other words, he needs to show that

23   there was no rational basis for the difference in

24   treatment.  The plaintiff hasn't done this.

25        Looking at the facts of the case, the first and

1    by far the most damaging misrepresentation, if you will,

2    was made in early December when the defendants leaked

3    information to the press identifying the plaintiff as the

4    lead suspect in the Jovin murder.  I think the plaintiff

5    has acknowledged that this was an extremely harmful leak.

6    The amended complaint does not allege that there were any

7    other suspects, let alone any similarly situated ones at

8    that time.

9            As I understand it, looking at the plaintiff's

10   second amended complaint, he asserts that there were other

11   suspects by January, some weeks after this terribly

12   damaging leak occurred.  The December leak cannot be

13   addressed with an equal protection claim because there

14   were no similarly situated suspects at that time.

15           With regard to the subsequent public disclosures

16   of the plaintiff's identity, there is no allegation that

17   another suspect was a Yale instructor.  This difference is

18   material as a matter of law because the investigation of a

19   Yale instructor would disrupt the Yale community in a way

20   that would provide a legitimate basis for publishing the

21   plaintiff's identity.

22           Beyond all of that, the plaintiff encounters the

23   intervening Supreme Court decision in Engquist,

24   intervening since the last time I ruled on the sufficiency

25   of this claim.  Engquist tells us that the equal

1    protection clause is not violated by discretionary police

2    conduct, that is to say conduct not governed by clear

3    standards.  Use of the media in connection with an ongoing

4    criminal investigation is not subject to clear standards,

5    as all of you have repeatedly emphasized in your

6    submissions to me.

7              The Second Circuit has yet to apply Engquist in

8    the law enforcement context, but it's reasoning is

9    applicable here.

10             The plaintiff's allegations are troubling

11   because they raise the concern that the police might

12   single out anybody in the way the plaintiff was singled

13   out, not because the police might single out people like

14   him.  The plaintiff's reputation would still be damaged if

15   the defendants had overstated the evidence against other

16   suspects too.

17             Turning to the due process claims, I understand

18   the plaintiff's position that the constitution should be

19   interpreted to provide protection for people in this

20   situation, and perhaps one day it will, but that's not the

21   law now, it wasn't the law in 2004, and I guess I can't

22   wait any longer.

23             Under the Paul case, the right to procedural due

24   process may be violated when an official defames a

25   plaintiff and alters his legally recognized rights or

status in a manner that confers legal significance upon

the stigma carried by the defamatory publication.  When

this occurs and the plaintiff is not given an adequate

opportunity to contest the action, a stigma plus claim can

provide a remedy.

The classic example of a stigma plus claim is

when a government employer defames an employee in

connection with terminating the employment relationship.

Similarly, a stigma plus claim can arise when a public

official uses defamatory statements to petition a higher

authority to remove a person from employment and the

higher authority adopts the defamatory statement in

removing the person.  In these examples the stigma is

given legal significance by an official who relies on the

stigma in the exercise of official discretion to remove

the person from his or her employment or to rescind some

other existing entitlement.  In this scenario, the

plaintiff may be entitled to recover if he was not given

an adequate opportunity to challenge the adverse exercise

of official discretion.

A stigma plus claim also can provide relief when

a public agency maintains a record of a defamatory

classification and employers in the plaintiff's chosen

field of employment are required by law to consult those

agency records before hiring employees or when others are

1    required to consider the records in the administration of

2    other entitlements.  That's the Valmonte case.  In these

3    circumstances, the stigma is given legal significance

4    jointly by the official who records the defamatory

5    statement and the regulations that require employers or

6    other entitlement administrators to consult the record.

7           The plaintiff is entitled to recover if he can

8    show that the stigma was recorded without adequate

9    procedural safeguards.  If we credit the plaintiff's

10   allegation that he was stigmatized by the publications at

11   issue here, the question is whether the stigma is legally

12   significant.

13          Consistent with the analysis I've just

14   summarized, the plaintiff must either point to an official

15   who published or adopted the stigma when exercising

16   official discretion or to regulations that through force

17   of law require others to consider the stigma.  We don't

18   have that.

19          The plaintiff might argue that Yale, acting in a

20   quasi official capacity, adopted the stigma when the

21   university canceled the plaintiff's classes, but any claim

22   along that line fails because there is no allegation that

23   the plaintiff's interest in lecturing was legally

24   protected or that the plaintiff was entitled to any

25   procedure to challenge the cancellation of his classes.

1          Alternatively the plaintiff might argue that the

2     Navy, and maybe other employers, are required to consider

3     the fact that the defendants have labeled him and only him

4     as a suspect in the Jovin case.  But there is no

5     allegation that his classification as a suspect is

6     formally recognized and so the plaintiff advances a broad

7     preclusion theory urging that his status as a suspect,

8     although not formally recognized, has the effect of

9     precluding others from hiring him.

10          Here we have considered carefully the Trifax

11     case out of the D.C. Circuit where the court recognized

12     that a government contractor can be broadly precluded from

13     future government contracts if defamed by a government

14     agency.

15          This broad preclusion theory has yet to be

16     recognized in the Second Circuit.  Moreover, even assuming

17     that this theory not yet recognized in our circuit could

18     be stretched beyond the government/contractor scenario in

19     Trifax, the plaintiff does not make a plausible claim that

20     there is a de facto law requiring potential employers to

21     consider his status.  In fact, he lost his security

22     clearance in 2003 nearly four years after he was initially

23     branded as a suspect in the Jovin case.

24          I do not question the plausibility of the

25     plaintiff's allegations that he has in fact suffered a

```
1    significant loss of liberty as a result of the shroud of

2    suspicion cast upon him by the defendants, but because

3    this results from damage to his reputation rather than by

4    operation of law without due process, under Paul and cases

5    arising after Paul, he has not stated a viable claim for a

6    violation of his right to procedural due process.

7              I think that his other claims are also

8    unavailing.  I do not think that the alleged conduct

9    shocks the conscience in a manner that gives rise to a

10   substantive due process claim.  The plaintiff does not

11   allege that the defendants' purpose was to injure him.

12   Instead the alleged purpose was to mislead the public, and

13   specifically to convince the public that progress was

14   being made when that was not so.  Thus this is not a case

15   where a state actor undertook to hurt the plaintiff for

16   that very reason, that is to satisfy a desire to hurt the

17   plaintiff.

18             Moreover, although the plaintiff alleges that

19   the magnitude of the harm caused by the defendants'

20   conduct greatly outweighed any legitimate interest

21   advanced by their alleged misconduct, the harm was not so

22   brutal in nature as to shock the conscience.

23             The plaintiff's attempt to characterize the

24   defendants' conduct as a seizure in violation of the

25   Fourth Amendment is not successful.  This is a novel claim
```

1    and I think one that is unsupported by the law defining a

2    seizure for Fourth Amendment purposes.  I don't think that

3    I can stretch the legally recognized understanding of a

4    Fourth Amendment seizure to encompass what we have before

5    us here.

6              So I thank you for listening to me this morning.

7    I wanted to give you the basic reasons.  I look forward to

8    issuing a written ruling that would provide more detail,

9    but I'm not going to be in a position to do that because

10   of the other pressing matters that I face, and rather than

11   keep you waiting for that, I wanted to speak with you and

12   give you this ruling today.

13             As a final word, I would say that in 2004 when I

14   dismissed the federal claims and pointedly noted that the

15   state law claims raised significant questions, I had hoped

16   that the ruling might lead to a fair resolution of the

17   case without further litigation, and failing that, an

18   opportunity for a state judge to rule on these issues of

19   state law.

20             It has not turned out that way and I'm doing my

21   best to predict what the State Supreme Court would say on

22   these issues of state law.

23             That said, I continue to hope that a fair

24   resolution might be reached here.  I have given you time

25   to try to work out a resolution.  I don't know if the

1    ruling today would have any bearing on that, but if it

2    does and you'd like some time to do that, then that's okay

3    with me.  At the same time I realize this is one of the

4    oldest cases on my docket and it's time to move forward.

5    I'd like to hear from you with regard to how you would

6    like to proceed.

7             I would ask you to consider the possibility of

8    resolving it, and if it can't be resolved, then I'd like

9    to have a proposed schedule that would enable us to get

10   down to looking at what actually happened.

11            Okay?

12            SPEAKER:  Thank you, Your Honor.

13            THE COURT:  You're all most welcome.

14            I think that it would be best if you spoke in

15   the near future.  Perhaps after you've had a chance to

16   confer with your clients sometime next week so that you

17   could get back to me with some sense of how you'd like to

18   proceed.

19            I am on trial but available in the morning

20   before the jury comes in and in the evening after the jury

21   goes home, and I'd be happy to speak with you by phone.

22            Alternatively, if you just want to give me a

23   letter, that would be fine.

24            Or if you should decide that what you really

25   want now is a tailored scheduling order, just let us know

1    that that's what you're doing and we'll expect to receive

2    a proposed scheduling order from you.

3              So thank you all and I'll leave it at that for

4    now and wish you all the best for the weekend.

5              SPEAKER:  Likewise, Your Honor.

6              SPEAKER:  We'll talk to our clients and get back

7    to you guys next week sometime.

8                   (Proceedings adjourned at 12:00 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3                In Re: VAN DE VELDE  vs. WEARING

4

5

6          I, Darlene A. Warner, RDR-CRR, Official Court

7    Reporter for the United States District Court for the

8    District of Connecticut, do hereby certify that the

9    foregoing pages are a true and accurate transcription of

10   my shorthand notes taken in the aforementioned matter to

11   the best of my skill and ability.

12

13

14

15

16              /s/_____

17              DARLENE A. WARNER, RDR-CRR
                   Official Court Reporter
                  450 Main Street, Room #223
18              Hartford, Connecticut 06103
                     (860) 547-0580
19

20

21

22

23

24

25